IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WESTPORT INSURANCE CORPORATION, )
)
      Plaintiff, )
  vs. )  Civil Action No.: AMD-02-1774
)
ST. PAUL FIRE & MARINE INSURANCE )
COMPANY, )
)
      Defendant. )
)

**DEFENDANT ST. PAUL FIRE & MARINE INSURANCE COMPANY'S
MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant St. Paul Fire & Marine Insurance Company ("St. Paul"), by and through its attorneys Ross, Dixon & Bell, LLP, for its Memorandum in Support of its Motion for Summary Judgment pursuant to Federal Rules of Civil Procedure 56, states as follows:

**I.    INTRODUCTION**

The issue before this Court is to determine the responsible party for the payment of defense and acocunting fees incurred in defending the underlying claims. Westport chose to undertake the defense of the Insured prior to the filing of a lawsuit against the Insured. Now, Westport is seeking to recover from St. Paul defense fees and accounting fees it incurred prior to the filing of the lawsuit against the Insured. Westport is not entitled to recover pre-complaint fees in view of Paragraph 6.A. of the St. Paul occurrence policy which provides a defense obligation only for a ***suit against the Insured***.

Under Maryland law it is a condition precedent to the duty to defend that an actual suit be filed where the policy provides coverage for "any suit against the Insured", as in the instant policy. See <u>Haines v. St. Paul Fire and Marine Ins. Co.</u>, 428 F.Supp. 435 (D. Md. 1977) (insurer appropriately denied coverage for defense expenses in a SEC action where no

suit was filed).  See also, <u>Maryland Cas. Co. v. Armco, Inc.</u>, 822 F.2d 1348 (4th Cir. 1987); <u>Provident Bank of Maryland v. Travelers Property Casualty Corp.</u>, 236 F.3d 138 (4th Cir. 2000).  Accordingly, St. Paul is not liable for any defense costs or accountants fees incurred prior to the actual filing of the <u>Waller</u> lawsuit.

With respect to defense costs and accountants fees incurred after the tender of the <u>Waller</u> lawsuit to St. Paul, there must be an "injury-in-fact" pro rata allocation by the policy years covered by each policy. Because St. Paul only provided coverage to Mr. Cohn from 1972 through 1975 on an occurrence basis, St. Paul is only responsible for defense costs attributable to injury occurring within the three years of the 45-year malfeasance committed by Mr. Cohn.  In the alternative, a 50/50 split of post-tender defense fees and accountants fees would be appropriate as between the Company and Westport.

**II.    STATEMENT OF FACTS**

1. This underlying matter arises from allegations of the mismanagement of trust accounts over the course of approximately 45 years by trustee Irving F. Cohn ("Cohn"), an attorney previously associated with the law firm of Burke, Gerber & Wilen.

2. It is undisputed that Irving Cohn, while a partner in the firm of Burke, Gerber & Wilen, was the Trustee for numerous trusts created by members of the Shapiro family. *See* St. Paul's Counterclaim and Answer thereto at ¶ 7. A copy of St. Paul's Answer and Counterclaim is attached as Exhibit A.  A copy of Westport's Answer to St. Paul's Counterclaim is attached as Exhibit B.

3. It is undisputed that when the Shapiro trusts were first established, Mr. Cohn practiced law at the law firm of Burke, Gerber & Wilen ("Burke, Gerber") of Baltimore, Maryland. *See* Complaint at ¶ 8. A copy of the Complaint is attached as Exhibit C.

930583 v2

4. It is undisputed that Burke, Gerber dissolved and Mr. Cohn joined the law firm of Blum Yumkas, Mailman, Goodman & Denick ("Blum, Yumkas") and continued handling the Shapiro trusts as sole trustee. Mr. Cohn retired in February, 2000. *See* St. Paul Counterclaim and Answer thereto at ¶ 8; Complaint at ¶ 9.

5. It is undisputed that various beneficiaries of the Shapiro trusts contacted Cohn threatening litigation for Cohn's alleged mishandling and mismanagement of the Shapiro trusts and requesting accountings of the various Shapiro trusts. *See* St. Paul Counterclaim and Answer thereto at ¶ 9.

6. It is undisputed that in the Spring of 2000 Westport retained an accounting firm to reconstruct what occurred with regard to the trusts and further offered Mr. Cohn his choice of panel defense counsel or independent counsel to "represent his interests" in connection with the draft complaint. *See* Complaint at ¶ 17 and 22; St Paul's Counterclaim and Answer thereto at ¶ 10; and Deposition of Martin W. Terpstra at p. 4. A copy of the relevant portions of the Deposition Transcript of Martin W. Trepstra is attached as Exhibit D.

7. It is undisputed that on or about March 27, 2001, a complaint was filed in the Circuit Court for Baltimore City, Maryland, entitled <u>Eric F. Waller v. Blum, Yumkas, Mailman, Gutman & Denick, P.A., et al.</u>. Named defendants include the law firm of Blum, Yumkas, Irving Cohn and Westport. The <u>Waller</u> lawsuit alleges mishandling of the Shapiro-Flex Trust 3 by Cohn. It also alleges that by early 2000, Westport, with the participation of Mr. Cohn and Blum, Yumkas, undertook to retain America n Express PBS Tax and Business Services in Chicago, Illinois, to audit the Flex Trusts. The <u>Waller</u> lawsuit contains a number of counts, including breach of trust against Cohn and Blum, Yumkas

(Count I); breach of contract against Cohn and Blum, Yumkas (Count II); negligence against Cohn and Blum, Yumkas (Count III); conspiracy against Cohn and Blum, Yumkas and Westport (Count IV); and breach of contract against Westport (Count V).

8. It is undisputed that pursuant to its policy, and subject to a full reservation of rights, Westport agreed to defend Cohn and Blum, Yumkas against these matters. *See* Counterclaim and Answer thereto at ¶ 10.

9. The Waller lawsuit was not tendered for defense and/or indemnity to St. Paul until April 6, 2001.

10. It is undisputed that St. Paul paid defense fees in connection with the defense of the Waller lawsuit. *See* Counterclaim at ¶ 17.

11. Ultimately, St. Paul and Westport settled the underlying claims on behalf of their co-insured.

12. It is undisputed that on May 22, 2002, Westport filed a complaint (the "Complaint") against St. Paul in the United States District Court for the District of Maryland. The Complaint alleges that St. Paul issued policy no. 619NA0039, an occurrence policy to Burke, Gerber & Wilen for the policy period of April 1, 1972 to April 1, 1975 (the "St. Paul Policy"). *See* Complaint.

13. It is undisputed that Westport issued to Blum, Yumkas claims-made lawyers professional liability policy no. MDL-022344-3 for the policy period of January 1, 1999 to January 1, 2000 ("the Westport Policy"). *See* Complaint and Answer at ¶ 7.

14. It is undisputed that the Westport Policy contains a Limitation of Individual Prior Acts Endorsement setting a retroactive date for Irving Cohn of July 1, 1988. *See*

Westport Policy, Limitation of Individual Prior Acts Endorsement. A copy of the Westport Policy is attached as Exhibit E.

  15. It is undisputed that St. Paul issued an occurrence-based policy no. 619NA0039 to Named Insured Burke, Gerber & Wilen for the policy period of April 1, 1972 to April 1, 1975, which contained several coverage parts, one of which is entitled "Lawyers Professional Liability", found at Section II of the Policy ("the St. Paul Policy"). *See* Complaint and Answer at ¶ 5. A copy of the St. Paul policy is attached as Exhibit F.

  16. It is undisputed that the St. Paul Policy contains the following "Other Insurance" clause:

> 35. OTHER INSURANCE. The insurance afforded by this Policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the Insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the Company's liability under this Policy shall not be reduced by the existence of such other insurance.
>
> When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the Company shall not be liable under this Policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

* * *

*See* St. Paul's Counterclaim and Answer thereto at ¶ 15; *See also* the St. Paul Policy.

  17. It is undisputed that the Westport Policy contains the following "other insurance" clause:

> VI. OTHER INSURANCE OF A PRIOR LAW FIRM
> If a Prior Firm has other insurance applicable to a Claim against the Insured(s) covered by this Coverage Unit, this Policy is specifically issued as excess insurance over and above the applicable limits of liability of all such other insurance regardless of whether such other insurance is written as primary, contributory, excess, contingent or otherwise.

*See* St. Paul's Counterclaim and Answer thereto at ¶ 16; *See also* the Westport Policy.

930583 v2

5

### III.   ARGUMENT

#### A.   St. Paul Is Not Obligated to Pay Any Defense Costs Incurred Prior to the Filing of the Waller Lawsuit.

Under Maryland law it is a condition precedent to the duty to defend that an actual suit be filed where the policy provides coverage for "any suit against the Insured", as in the instant policy. See Haines v. St. Paul Fire and Marine Ins. Co., 428 F.Supp. 435 (D. Md. 1977) (insurer appropriately denied coverage for defense expenses in an SEC action where no suit was filed). See also, Maryland Cas. Co. v. Armco, Inc., 822 F.2d 1348 (4th Cir. 1987); Provident Bank of Maryland v. Travelers Property Casualty Corp., 236 F.3d 138 (4th Cir. 2000). Moreover, the "existence of the duty presupposes that a complaint has been filed and a suit commenced – or that the functional equivalent of a complaint-cum-suit has emerged. Ryan v. Royal Ins. Co., 916 F.2d 731, 737 (1st Cir. 1990) (holding that correspondence received by insured from New York Department of Environmental Conservation was not the functional equivalent of a "suit" sufficient to trigger the duty to defend).

Paragraph 6.A. of the St. Paul occurrence policy specifically states that "the Company shall (a) defend in his name and behalf any suit against the Insured alleging damages, even if such suit is groundless, false, or fraudulent…" Accordingly, St. Paul cannot be liable for any defense costs or accounting fees incurred prior to the actual filing of the Waller lawsuit.

Each of the various parties asserting claims against Cohn reached tolling agreements and other agreements, to refrain from filing suit against Cohn and Blum, Yumkas in exchange for Cohn's and Blum, Yumkas' continued agreements to investigate the negligence allegations, and attempt to audit the trusts. At that time, and prior to the filing of

930583 v2

any suit, Westport retained an accounting firm to reconstruct what occurred with regard to the trusts and further offered Mr. Cohn his choice of panel defense counsel or independent counsel to "represent his interests" in connection with the draft complaint.

No suit was filed until on or about March 27, 2001, when a complaint was filed in the Circuit Court for Baltimore City, Maryland, entitled <u>Eric F. Waller v. Blum, Yumkas, Mailman, Gutman & Denick, P.A., et al.</u>. The named defendants included the law firm of Blum, Yumkas, Irving Cohn and Westport. St. Paul first received a copy of the <u>Waller</u> lawsuit from Westport's coverage counsel on April 6, 2001.

Thus, the expert fees and defense counsel fees incurred by Westport prior to the filing of the <u>Waller</u> lawsuit are not the responsibility of St. Paul. St. Paul first received a copy of the <u>Waller</u> lawsuit from Westport's coverage counsel on April 6, 2001 and it should not be held accountable for pre-tender defense fees or the accounting fees.

There is Maryland authority for the proposition that pre-tender fees and costs are not reimbursable and that an insurer's obligation to defend arises when the Complaint is filed. Specifically, in <u>Nationwide Mutual Insurance Company v. Lefarge Co.</u>, 910 F. Supp. 1104 (Maryland 1996) Judge Harvey deducted pre-tendered defense expenses from the insurer's obligation.

Additionally, in <u>Sherwood Brands Inc. v. Hartford Accident and Indemnity Co.</u>, 347 Md. 32, 698 A.2d 1078 (1997) the Court recognized that "the right to control the defense necessarily attaches as soon as there is something to defend." Furthermore, in a holding distinguishable from the Cohn situation because St. Paul did not breach its duty to defend, the <u>Sherwood</u> Court held that because Hartford breached its duty to defend, Hartford was responsible for pre-notice fees.

Here St. Paul did not breach its duty to defend and accordingly under Judge Harvey's decision in <u>Nationwide</u>, St. Paul is not responsible for pre-tender fees.

  **B.**   **<u>St. Paul is Entitled to an Allocation of Defense Fees and Indemnity Between Westport and St. Paul for Defense Costs Incurred Subsequent to the Tender of the Waller Lawsuit to St. Paul.</u>**

Thus, it is St. Paul's position that it is only obligated to share in those defense costs incurred after the <u>Waller</u> suit was filed and tendered to St. Paul – March 27, 2001 at the very earliest, when St. Paul first received a copy of the <u>Waller</u> lawsuit from Westport's coverage counsel. With respect to the defense costs incurred subsequent to April 6, 2001, an allocation must be made between the St. Paul occurrence policies and the Westport claims made policy.

Mr. Cohn was alleged to have mismanaged the Shapiro trust for approximately 45 years, from 1957 to 2000, the year he retired. An argument exists that the St. Paul's Policy is triggered only for wrongful acts that occur during the policy period from 1972 to 1975. Westport's policies are triggered for claims made during its policy period by reason of wrongful acts occurring on or after July 1, 1988, and the unlimited extended reporting tail allows future claims to be reported by Westport. Because St. Paul's policy is arguably an occurrence policy and Westport's policy is a claims made, a unique question of allocation of defense costs is before this court.

Because St. Paul only provided coverage to Mr. Cohn from 1972 through 1975 on an occurrence basis, St. Paul should only be responsible for defense costs attributable to injury occurring within the three years of the 45-year malfeasance committed by Mr. Cohn. Similarly, Westport should pay only for the 13 years of injury caused by Mr. Cohn covered by its Policy. This leaves 29 years for which Mr. Cohn and his firms have no available insurance coverage, which should be born by Mr. Cohn and his firms. <u>See</u> <u>Insurance Co. of</u>

930583 v2

8

North America v. Forty-Eight Insulations, Inc., 633 F.2d 1212 (6th Cir. 1980) (with respect to defense and indemnity obligations where multiple occurrence-based policies with co-primary defense obligations are triggered by a series of related wrongful acts that occur over time, Maryland courts, following Forty-Eight Insulations generally apply an "injury-in-fact" pro rata allocation of liability for indemnity and defense).

In the alternative to allocating defense costs by a "injury-in-fact" pro rata allocation by the policy years covered by each policy, this Court could decide to allocate the post-April 6, 2001 defense costs on a 50/50 split.

While we were unable to locate any Maryland case law discussing allocation between occurrence policies and claims-made policies like those at issue here[1], cases from other jurisdictions provide some insight. In St. Paul Fire & Marine Ins. Co. v. Vigilant Ins. Co., 919 F.2d 235 (4th Cir. 1990) (applying North Carolina law), the court considered Vigilant's "occurrence" professional liability policy, which provided coverage for all sums the insured became legally obligated to pay because of injury occurring during the policy period from May 1, 1975, until May 1, 1976, and St. Paul's claims-made policy for the policy period May 1, 1976, to March 1, 1980. The St. Paul policy included an endorsement allowing claims to be subsequently reported.

Claimant was a patient of the insured from January 21, 1976 until January 12, 1977, a period spanning the terms of the two carriers' policies. Several suits were filed which

---

[1] Throughout this litigation, Westport has mistakenly relied on the Maryland case of Nolt v. United States Fidelity and Guaranty Co., 617 A.2d 578 (Md. App. 1993), for the proposition that where an excess clause in one policy conflicts with a pro rata clause from a concurrently effective policy, the court will disregard the pro rata clause in favor of the excess clause. Rather, the Nolt case is distinguishable because unlike the St. Paul and Westport policies, Nolt involved two identical primary policies which had identical "other insurance" provisions which both had an excess clause and a pro rata clause.

included allegations of inappropriate sex acts occurring in the years 1976 and 1977. In none of the complaints did plaintiff specify when during the 1976-77 period the sexual relationship began.

Vigilant denied coverage on the basis that the acts in question did not occur during the period of its policies. The court held that this was a breach of Vigilant's duty to defend in view of the fact that the allegations did not unambiguously indicate that coverage was not available. The court further held that Vigilant could not thereafter argue that coverage was not available and would not be heard to argue that it should only be responsible for those acts occurring during its policy period. The court held that St. Paul was entitled to recover from Vigilant one-half of the costs of defending Collins, and one-half of the costs of settling the Gwyns' claims. Id. at 243. This case suggests that a 50/50 split of defense fees between Westport and the Company may be appropriate if the duty to defend is breached.

With respect to defense and indemnity obligations where multiple occurrence-based policies with co-primary defense obligations are triggered by a series of related wrongful acts that occur over time, Maryland courts generally apply an "injury-in-fact" pro rata allocation of liability for indemnity and defense, following the Sixth Circuit decision in Insurance Co. of North America v. Forty-Eight Insulations, Inc., 633 F.2d 1212 (6th Cir. 1980). In Nationwide Mutual Ins. Co. v. LaFarge Corp., 910 F.Supp. 1104 (D. Md. 1996) the court adopted the Forty-Eight Insulations allocation methodology concerning defense expenses for liability that occurred over a period of years and triggered numerous policies. In LaFarge, the insured had manufactured defective concrete products that resulted in numerous product liability lawsuits. The court examined the policies and compared the

policies' "other insurance" clauses, concluding that the primary policies all had co-extensive defense obligations.

The LaFarge court rejected the argument that the duty to defend is an absolute duty to defend the entire action, joint and severable among the insurers, indicating instead that where allocation was possible this was the preferred outcome. The LaFarge court cited Forty-Eight Insulations for the proposition that an insurer must bear the full expense of the defense only applies where there is no reasonable way to apportion defense costs. Nationwide Mutual Ins. Co. v. LaFarge Corp., 1994 WL 706538 at 10 (LaFarge I); Nationwide Mutual Ins. Co. v. LaFarge Corp., 910 F.Supp. 1104 (D. Md. 1996) (LaFarge II) and LaFarge Corp., v. National Union Fire Insurance Co. of Pittsburgh, Pa., 935 F.Supp. 675 (D. Md 1996) (LaFarge III); Southern Maryland Agricultural Association, Inc. v. Bituminous Cas. Corp., 539 F.Supp. 1295 (D. Md 1982).

The court in Southern Maryland Agricultural Association, Inc. v. Bituminous Cas. Corp., 539 F.Supp. 1295 (D. Md. 1982), suggested that an allocation should take into consideration what liability-producing acts occurred in which years to determine which policies should indemnify for which liabilities. The court stated that "[a]t this juncture it is not possible for the court to determine factually what "offenses," if any, were committed during the operative period of the policy, as compared with those committed during the period covered by another policy." Id. at 1305.

Westport will undoubtedly assert that its policy is excess, St. Paul's policy is primary and consequently, St. Paul is obligated to reimburse Westport for the entirety of defense fees and accounting fees paid. As a matter of law, this argument fails because Maryland law is clear that excess or other insurance clauses do not apply to duty to defend

930583 v2

11

issues because unless stated otherwise, that obligation is independent of liability and any limitations thereon.  Utica Mutual Insurance Company v. Miller, 746 A.2d 935, 946 (Ct. Spec. App. Md. 2000).

Additionally, there is no legal rationale for the Court to compare the other insurance provisions because an other insurance clause analysis is only applicable when coverage is concurrent.  St. Paul Fire & Marine Insurance Company v. Vigilant Insurance Company, 919 F.2d 235 (4th Cir. 1990).  As the 4th Circuit held "it appears that the District Court may have been incorrect in relying on the policies "other insurance" clauses to resolve this question."  As Vigilant points out, such clauses apply only when the coverage is concurrent.  Where, is here, the policy periods did not overlap at all, such clauses are not applicable…" Page 241 of 919 F.2d.

Accordingly, in this instance the policy periods do not overlap and thus no other insurance clause analysis is appropriate.

    C.    **Allocation of Defense and Accounting Fees**

As explained above, St. Paul is only obligated to pay for defense costs and fees which were incurred after the Waller lawsuit was tendered to St. Paul on April 6, 2001.  In fact, St. Paul has paid approximately $90,000 in defense of these matters.

Despite St. Paul's proper contribution toward the defense of Mr. Cohn, Westport argues that St. Paul is responsible for reimbursing Westport for 100% of the fees and costs it incurred in Mr. Cohn's defense.  Westport alleges that these fees and costs total $1,539,363.28.  Westport alleges that the incurred fees and expenses breakdown as follows:

| | | |
|---|---|---|
| 1. | Eccleston & Wolfe (primary defense counsel): | $135,589.23 |
| 2. | Hearne & Bailey (Cohn's defense counsel on non-Waller matters): | $76,442.52 |
| 3. | Adelberg, Rudow (Cohn's defense for Waller suit) | $81,062.40 |
| 4. | American Express Tax & Business Services (accounting expert) | $1,246,269.12 |

930583 v2

Using these numbers as presented by Westport, St. Paul would not be liable for any fees or expenses charged by Hearne & Bailey because St. Paul is not responsible for defense counsel fees on the non-Waller matters. In addition, the American Express Tax & Business Services costs and fees were incurred, at the direction of Westport, prior to the tender of the Waller lawsuit to St. Paul on April 6, 2004. Thus, of the $1,539,363.28 that Westport alleges is owed by St. Paul, $1,322,711.64 is the sole responsibility of Westport.

The remaining $216,651.64 is allegedly attributable to defense counsel hired, at least in part, with respect to the Waller lawsuit. With respect to the fees and costs associated with Eccleston & Wolfe and Adelberg, Rudow, St. Paul at most should only pay 50% of those fees incurred after April 6, 2001, or $108,325.82. However, it should be noted that St. Paul has already paid approximately $90,000 in connection with the defense of the Waller lawsuit.

### IV. CONCLUSION

WHEREFORE, Defendant St. Paul Fire & Marine Insurance Company, respectfully requests that this Court grant summary judgment in its favor and hold that St. Paul has no obligation to pay for defense or accounting fees incurred prior to the filing of the Waller lawsuit. In addition, St. Paul respectfully requests this Court to allocate the defense costs incurred after the tendering of the Waller lawsuit to St. Paul on an "injury-in-fact" pro rata basis or in the alternative a 50/50 share basis.

Respectfully submitted,

ROSS, DIXON & BELL, LLP

Dated: August 17, 2004	By:_____/s/_____
	Richard A. Simpson
	Maryland Federal Bar No. 014714
	2001 K Street, N.W.
	Washington, D.C. 20006-1040
	Phone: (202) 662-2035
	Facsimile: (202) 662-2190

	*Attorneys for Defendant St. Paul Insurance Company*

Of Counsel:

Michael P. Tone
Ross, Dixon & Bell, LLP
Three First National Plaza, Suite 525
Chicago, IL 60602
Phone – 312-759-1920
Facsimile – 312-759-1939

930583 v2

14

## **INDEX TO EXHIBITS**

Exhibit A:    St. Paul Fire & Marine Insurance Company's Answer and Counterclaim Against Westport Insurance Company.

Exhibit B:    Plaintiff's Answer to Defendant's Counterclaim

Exhibit C:    Complaint

Exhibit D:    Excerpts from Deposition Transcript of Martin W. Terpstra

Exhibit E:    The Westport Customized Practice Coverage Policy

Exhibit F:    The St. Paul Fire and Marine Insurance Company Insurance Policy

**CERTIFICATE OF SERVICE**

      I certify that on this 17th day of August, 2004, service of a true and complete copy of the above and forgoing pleading was made upon the following by depositing in the U.S. Mail, postage prepaid:

| | |
|---|---|
| Paul Cottrell<br>Tighe, Cottrell & Logan, P.A.<br>First Federal Plaza, Suite 500<br>P.O. Box 1031<br>Wilmington, DE 19899 | Michelle M. Bracke, Esq.<br>Bollinger Ruberry & Garvey<br>500 W. Madison Street, Suite 2300<br>Chicago, Illinois 60661-2511 |

                                                                         /s/<br>
                                                               Richard A. Simpson