

# CUSTOMIZED PRACTICE COVERAGE SM
## DECLARATIONS

|  |  |
|---|---|
| **Policy Number:** | MDL-022344-3 |
| **of Policy :** | MDL-022139-1 |

**NOTICE:** This is a Claims-Made and Reported POLICY. Except as may be otherwise provided herein, this coverage is limited to liability for only those CLAIMS which are first made against the NAMED INSURED and reported to the Company while the POLICY is in force.

**A. Named Insured:** Blum Yumkas Mailman Gutman & Denick, P.A.

**B. Address:**
2 Hopkins Plaza
Suite 1200
Baltimore, MD 21201

**C. Policy Period:** From 12:01 A.M. January 1, 1999 To 12:01 A.M. January 1, 2000
Local time at the address stated herein

**D. Policy Aggregate Limit of Liability for all coverage units:** $5,000,000

**E. Coverage**

| Coverage Unit | Coverage Unit Per Claim Limit of Liability | Coverage Unit Aggregate Limit of Liability | Deductible | Retroactive Date |
|---|---|---|---|---|
| Lawyers Professional Liability | $5,000,000 | $5,000,000 | $15,000 | None |
| Employment Practices Liability | Not Covered | Not Covered | Not Covered | Not Covered |
| Employee Dishonesty | Not Covered | Not Covered | Not Covered | Not Covered |
| Title Insurance Agent Liability | $5,000,000 | $5,000,000 | $15,000 | None |
| Non-Profit Director & Officer Liability | Not Covered | Not Covered | Not Covered | Not Covered |
| Public Officials Liability | Not Covered | Not Covered | Not Covered | Not Covered |

**F. Total Premium:** $79,973

Date: 01/20/1999

Copyright © 1998 Westport Insurance Corporation. All rights reserved.

The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden w Westport Insurance Corporation.

COPY

**EXHIBIT E**



## CUSTOMIZED PRACTICE COVERAGE ℠
## DECLARATIONS

|  |  |
|---|---|
| **Policy Number:** | MDL-022344-3 |
| **of Policy :** | MDL-022139-1 |

These Declarations together with the application(s) and attachments thereto, POLICY forms and any endorsements shall constitute the contract between the INSURED and the Company. The following forms and endorsements are made a part of this POLICY.

### Forms / Endorsements

| | |
|---|---|
| COR.CPC.1681 (2/98) DC/MD/VA | General Terms and Conditions |
| COR.CPC.1693 (2/98) DC/MD/VA | Lawyers Professional Liability Coverage Unit |
| COR.CPC.1688 (2/98) | Title Insurance Agents Liability Coverage Unit |
| COR.CPC.1742 (2/98) | Limitation of Individual Prior Acts |
| COR.CPC.1874 (2/98) DC/MD/VA | Amendment of Definition of Insured |

In witness whereof, the Company issuing this POLICY has caused this POLICY to be signed by its authorized officers, but it shall not be valid unless also signed by the duly authorized representative of the Company.

WESTPORT INSURANCE CORPORATION

_____

Authorized Representative

Copyright © 1998 Westport Insurance Corporation. All rights reserved.

The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.

Policy



(hereinafter called "the Company")

## CUSTOMIZED PRACTICE COVERAGE ℠

## GENERAL TERMS & CONDITIONS

These terms and conditions shall constitute the GENERAL TERMS & CONDITIONS of the POLICY and shall apply to all COVERAGE UNITS issued by the Company as part of the POLICY:

**I.    NOTICE**

Notice to the Company under the POLICY shall be given to:

> **Westport Insurance Corporation**
> **181 West Madison**
> **Suite 2600**
> **Chicago, Illinois 60602**
> **Attention: Professional Liability Division**

All notices under the POLICY shall be in writing, shall comply with the time requirements as stated in the COVERAGE UNITS, and shall be given by prepaid express courier, certified U.S. Mail - return receipt requested or confirmed facsimile.

Except as provided in Section V.D. of these GENERAL TERMS & CONDITIONS, any notice shall be effective on the date of receipt by the Company at the above address.

**II.   SUBROGATION**

The Company shall be subrogated to all INSUREDS' rights of recovery against any person or organization. The INSURED(S) shall execute all papers required by the Company and shall do everything that may be necessary to preserve, secure and pursue such rights for the Company, including the execution of such documents as may be necessary to enable the Company to bring suit in the name of the INSURED(S). All INSUREDS shall cooperate with the Company and do nothing to jeopardize, prejudice or terminate such rights.

**III.  CHANGES**

No change or modification of this POLICY shall be effective except when made by a written endorsement to this POLICY which is signed by an authorized representative of the Company.

**IV.   NO ASSIGNMENT**

Neither this POLICY nor any INSURED'S interest in this POLICY may be assigned.

**V.    TERMINATION OF COVERAGE**

The POLICY shall terminate at the earliest of the following:

A.  if the POLICY is terminated for failure to pay a premium when due, the effective date of cancellation stated in a written notice of termination from the Company to the NAMED INSURED, provided such notice is received by the NAMED INSURED at least thirty (30) days prior to the effective date of cancellation. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the POLICY PERIOD. Any earned premium shall be computed in accordance with the customary short rate table and procedure;

    Copyright © 1998 Westport Insurance Corporation  All rights reserved.

B.  if the POLICY is to ...ated ..... ...  ...he reason. ... ...i Section V.A., the effective date of cancellation stated in a written notice of termination from the Comp...y to the NAMED INSURED, provided such notice is received by the NAMED INSURED at least sixty (60) days prior to the effective date of cancellation. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the POLICY PERIOD. Any earned premium shall be computed pro rata;

C.  upon the receipt by the Company of the POLICY surrendered by the NAMED INSURED. Any earned premium shall be computed in accordance with the customary short rate table and procedure;

D.  upon the transmittal to the Company of written notice of termination from the NAMED INSURED stating when thereafter such termination shall be effective. Any earned premium shall be computed in accordance with the customary short rate table and procedure; or

E.  upon expiration of the POLICY PERIOD as set forth in the Declarations.

Individual COVERAGE UNITS may not be terminated separately.

**VI.  EXTENDED REPORTING PERIOD OPTION**

If the Company or the NAMED INSURED shall cancel or non-renew the POLICY, the NAMED INSURED shall have the right to extend the time for reporting CLAIMS made against any INSURED under the POLICY per the following schedule. The additional premium for the Extended Reporting Period shall be:

| Extended Reporting Period | Additional Premium |
|---|---|
| 12 months | 100% of the last annual premium of this POLICY |
| 24 months | 150% of the last annual premium of this POLICY |
| 36 months | 185% of the last annual premium of this POLICY |
| Unlimited | 300% of the last annual premium of this POLICY |

If the NAMED INSURED exercises the Extended Reporting Period option, the coverage shall apply only to CLAIMS for WRONGFUL ACTS, as defined in each of the attached COVERAGE UNITS, which occurred prior to the end of the POLICY PERIOD and on or after the RETROACTIVE DATE, if any, which are otherwise covered by the POLICY and which are first made against any INSURED and reported to the Company during the Extended Reporting Period.

This right to purchase the Extended Reporting Endorsement is subject to the following conditions:

1.  the POLICY was cancelled or non-renewed for reasons other than non payment of premium;

2.  any deductible amounts due the Company have been paid;

3.  the INSURED(S), as defined in each of the COVERAGE UNITS, have complied with all of the GENERAL TERMS & CONDITIONS of the POLICY and the terms and conditions of all attached COVERAGE UNITS;

4.  any INSURED'S license to practice his or her profession was not revoked, suspended or surrendered at the request of any disciplinary or regulatory authority for reasons other than the INSURED becoming TOTALLY AND PERMANENTLY DISABLED, at the time that the right could be exercised; and

5.  the NAMED INSURED must send written notice to the Company of the intention to purchase the Extended Reporting Endorsement accompanied by the additional premium. Written notice and premium payment must be received by the Company no later than sixty (60) days after the termination date of the POLICY PERIOD.

Separate or new limits do not apply to the Extended Reporting Period. This option to extend the reporting period does not extend the POLICY PERIOD. The purchase of the Extended Reporting Period shall not in any way increase the limit of liability stated in the Declarations. If the Extended Reporting Period option is exercised, then such period shall be part of and not in addition to the last POLICY PERIOD. Any CLAIM made during the Extended Reporting Period shall be deemed to have been made during the immediately preceding POLICY

PERIOD. The entire premium for this option shall be deemed fully earned at the commencement of the Extended Reporting Period.

## VII.  NON-PRACTICING EXTENDED REPORTING PERIOD OPTIONS

A.  Subject to the conditions stated below, any individual partner, officer, director, stockholder, shareholder or employee of the NAMED INSURED who, during the POLICY PERIOD, retires or otherwise ceases the private practice of his or her profession, shall have the right to extend the time for reporting CLAIMS first made against this INSURED per the following schedule. The additional premium for the Non-Practicing Extended Reporting Period shall be:

| Extended Reporting Period | Additional Premium |
|---|---|
| 12 months | 100% of per lawyer annual premium of this POLICY |
| 24 months | 150% of per lawyer annual premium of this POLICY |
| 36 months | 185% of per lawyer annual premium of this POLICY |
| Unlimited | 300% of per lawyer annual premium of this POLICY |

If an INSURED exercises the Non-Practicing Extended Reporting Period option, the coverage shall apply only to CLAIMS for WRONGFUL ACTS, as defined in each of the attached COVERAGE UNITS, which occurred prior to the end of the POLICY PERIOD and on or after the RETROACTIVE DATE, if any, which are otherwise covered by the POLICY and which are first made against this INSURED and reported to the Company during the Non-Practicing Extended Reporting Period.

This right to purchase the Non-Practicing Extended Reporting Endorsement is subject to the following conditions:

1.  the POLICY was not cancelled or non-renewed for non payment of premium;

2.  the INSURED, as defined in each of the COVERAGE UNITS, exercising the Non-Practicing Extended Reporting Period option has complied with all of the GENERAL TERMS & CONDITIONS of the POLICY and all terms and conditions of all attached COVERAGE UNITS;

3.  the license of the INSURED exercising the Non-Practicing Extended Reporting Period option to practice his or her profession has not been revoked, suspended or surrendered at the request of any disciplinary or regulatory authority for reasons other than the INSURED exercising the Non-Practicing Extended Reporting Period option becoming TOTALLY AND PERMANENTLY DISABLED, by the time that the right could be exercised; and

4.  the INSURED exercising the Non-Practicing Extended Reporting Period option must send written notice to the Company of the intention to purchase the Non-Practicing Extended Reporting Endorsement accompanied by the additional premium. The Company must receive written notice and premium payment no later than sixty (60) days after the termination date of the POLICY PERIOD.

Separate or new limits do not apply to the Non-Practicing Extended Reporting Period. This option to extend the reporting period does not extend the POLICY PERIOD. If the Non-Practicing Extended Reporting Period option is exercised, then such period shall be part of and not in addition to the last POLICY PERIOD. The purchase of the Non-Practicing Extended Reporting Period shall not in any way increase the limit of liability stated in the Declarations. Any CLAIM made during the Non-Practicing Extended Reporting Period shall be deemed to have been made during the immediately preceding POLICY PERIOD. The entire premium for this option shall be deemed fully earned at the commencement of the Non-Practicing Extended Reporting Period.

B.  If an INSURED dies during the POLICY PERIOD as a result of reasons other than self-inflicted injury, suicide, or alcohol or drug abuse, then the period for reporting CLAIMS is extended at no additional premium until the executor or administrator of the estate is discharged, provided that the estate, heir or administrator gives written notification and written proof of the date of death to the Company within sixty (60) days of the death of the INSURED.

C.  If an INSURED [     ] es TOTALLY AND PERMANENTLY DISA [     ] during the POLICY PERIOD, and [ ] been continuously insured by the Company for at least two (2) consecutive years, then the period for reporting CLAIMS is extended at no additional premium until the death of the INSURED or until the INSURED is no longer TOTALLY AND PERMANENTLY DISABLED, provided that:

　　1.  the INSURED or the INSURED'S legal guardian provides written notice of the disability to the Company no later than sixty (60) days after the termination date of the POLICY PERIOD;

　　2.  the INSURED or the INSURED'S legal guardian provides a physician's written certification of the disability including the date the disability commenced; and

　　3.  the INSURED agrees to submit to a medical examination at the Company's expense by any physician(s) designated by the Company.

## VIII.  LIMITS OF LIABILITY

As respects only the LAWYERS PROFESSIONAL LIABILITY COVERAGE UNIT, and the TITLE INSURANCE AGENT LIABILITY COVERAGE UNIT (where applicable) :

All limits of liability shall apply in excess of the deductible and in excess of CLAIMS EXPENSES.

The liability of the Company for all LOSS, as defined in the LAWYERS PROFESSIONAL LIABILITY COVERAGE UNIT or the TITLE INSURANCE AGENT LIABILITY COVERAGE UNIT, covered by that COVERAGE UNIT shall not exceed the amount stated in the Declarations as "Per Claim Limit of Liability" for that COVERAGE UNIT.

There shall be no stacking of COVERAGE UNIT limits. If more than one COVERAGE UNIT covers a CLAIM, the Company's liability for the combined total of all LOSS for the CLAIM shall not exceed the highest single "Per Claim Limit of Liability" as stated in the Declarations for the COVERAGE UNIT(S) which cover the CLAIM.

The liability of the Company for all LOSS for all CLAIMS covered by the LAWYERS PROFESSIONAL LIABILITY COVERAGE UNIT or the TITLE INSURANCE AGENT LIABILITY COVERAGE UNIT shall not exceed the amount stated in the Declarations as "Aggregate Limit of Liability" for that COVERAGE UNIT.

As respects all COVERAGE UNITS other than the LAWYERS PROFESSIONAL LIABILITY COVERAGE UNIT and the TITLE INSURANCE AGENT LIABILITY COVERAGE UNIT:

All limits of liability shall apply in excess of the deductible. All CLAIMS EXPENSES and amounts paid in satisfaction of CLAIMS are subject to the applicable limit of liability.

All CLAIMS EXPENSES shall first be subtracted from the applicable "Per Claim Limit of Liability," with the remainder, if any, being the amount available to pay LOSS, as defined in each of the attached COVERAGE UNITS.

The liability of the Company for the combined total of all LOSS, as defined in each of the attached COVERAGE UNITS, and CLAIMS EXPENSES for a CLAIM covered by a COVERAGE UNIT shall not exceed the amount stated in the Declarations as "Per Claim Limit of Liability" for that COVERAGE UNIT.

There shall be no stacking of COVERAGE UNIT limits. If more than one COVERAGE UNIT covers a CLAIM, the Company's liability for the combined total of all LOSS and CLAIMS EXPENSES for the CLAIM shall not exceed the highest single "Per Claim Limit of Liability" as stated in the Declarations for the COVERAGE UNIT(S) which cover the CLAIM.

The liability of the Company for the combined total of all LOSS and CLAIMS EXPENSES for all CLAIMS covered by a COVERAGE UNIT shall not exceed the amount stated in the Declarations as "Aggregate Limit of Liability" for that COVERAGE UNIT.

As respects all COVERAGE UNITS:

The liability of the Company under the POLICY for the combined total of all LOSS under the LAWYERS PROFESSIONAL LIABILITY COVERAGE UNIT and the TITLE INSURANCE AGENT COVERAGE UNIT and LOSS and CLAIMS EXPENSES for all CLAIMS covered by any and all other COVERAGE UNIT(S) shall not exceed the amount stated in the Declarations as "Policy Aggregate Limit of Liability."

IX.  DEDUCTIBLE

The deductible, as stated in the Declarations, for the COVERAGE UNIT providing the limit of liability shall apply to each CLAIM and shall be paid by the NAMED INSURED. The deductible shall be first applied to all CLAIMS EXPENSES with the remainder, if any, being applied to LOSS, as defined in each of the attached COVERAGE UNITS. CLAIMS EXPENSES shall be included within the deductible. Payment of the deductible shall be made by the NAMED INSURED within thirty (30) days of receipt of demand by the Company.

X.  MULTIPLE INSUREDS, CLAIMS AND CLAIMANTS

The inclusion of more than one INSURED in any CLAIM or the making of CLAIMS by more than one person or organization shall not increase the limits of liability or the deductible. Two or more CLAIMS arising out of a single WRONGFUL ACT, as defined in each of the attached COVERAGE UNITS, or a series of related or continuing WRONGFUL ACTS, shall be a single CLAIM. All such CLAIMS whenever made shall be considered first made on the date on which the earliest CLAIM was first made arising out of such WRONGFUL ACT, as defined in the applicable COVERAGE UNIT, and all such CLAIMS are subject to one "Per Claim Limit of Liability" and deductible.

XI.  OTHER INSURANCE

Except as provided in the Exclusions to the COVERAGE UNITS, if there is other insurance applicable to a CLAIM covered by the POLICY, the POLICY shall be deemed excess insurance over and above the applicable limits of liability of all such other insurance unless such other insurance is specifically written as excess insurance over the limits of liability provided in the POLICY.

XII.  ACTION AGAINST THE COMPANY

No action shall lie against the Company unless, as a condition precedent thereto, all INSUREDS shall have fully complied with all the GENERAL TERMS & CONDITIONS of the POLICY and the terms and conditions of all attached COVERAGE UNITS, and not until the amount of all INSUREDS' obligations to pay has been finally determined either by judgment against all INSUREDS after actual trial or by written agreement of the NAMED INSURED, the claimant and the Company.

Nothing contained in the POLICY shall give any person or organization any right to join the Company as a co-defendant in any action against any INSURED to determine any INSURED'S liability.

XIII.  APPLICABLE LAWS

Any terms of the POLICY which are in conflict with any laws and regulations governing the POLICY are hereby amended to conform to such laws and regulations.

XIV.  EXCLUSIONS

This POLICY shall not apply to any CLAIM based upon, arising out of, attributable to, or directly or indirectly resulting from:

A.  any criminal, dishonest, malicious or fraudulent act, error, omission or PERSONAL INJURY committed by an INSURED. This exclusion does not apply to any INSURED who is not so adjudged;

B.  any act, error, omission, circumstance or PERSONAL INJURY occurring prior to the effective date of this POLICY if any INSURED at the effective date knew or could have reasonably foreseen that such act, error, omission, circumstance or PERSONAL INJURY might be the basis of a CLAIM;

C. any violation or breach by an INSURED or  responsibilities, obligations  duties imposed by the Employee Retirement Income Security Act, the Fair Labor Standards Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, the amendments thereto, the rules and regulations promulgated thereunder, or any similar provision of any federal, state or local statute, regulation or ordinance or common law;

D. injury to, or destruction of tangible property or loss of use thereof;

E. any INSURED having gained in fact any personal profit or advantage to which he or she was not legally entitled;

F. the discharge, escape, dispersal or release by any INSURED of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials, or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water, including ground water sources, whether gradual or sudden, intentional or accidental;

G. the use, handling, sale, distribution, transport, shipment, dispersal, storage or disposal by any INSURED of any nuclear, radioactive or fissionable material, or any alleged violation of any environmental statute, regulation or ordinance with respect to such material; and

H. the planning, construction, maintenance, operation or use by any INSURED of any nuclear reactor, nuclear waste storage facility or disposal site or any other nuclear facility, or nuclear reaction, nuclear radiation or radioactive contamination, or to any act or condition incident to the forgoing.

## XV. DEFINITIONS

As respects such insurance as is afforded by the POLICY, the following definitions shall apply:

A. "CLAIM" MEANS a demand made upon any INSURED for LOSS, as defined in each of the attached COVERAGE UNITS, including, but not limited to, service of suit or institution of arbitration proceedings or administrative proceedings against any INSURED.

B. "CLAIMS EXPENSES" MEANS:

1. fees charged by any lawyer, designated by the Company or required by law, to defend the INSUREDS; and

2. if authorized by the Company, all other fees, costs and expenses resulting from the investigation, adjustment, defense or appeal of any CLAIM, including but not limited to:

   a. all costs taxed against any INSURED and all interest which accrues after the entry of any judgment and before the Company has tendered or deposited, in court or otherwise, such judgment amount for which any INSURED is liable; and

   b. premiums on appeal bonds, in an amount not to exceed the Company's Limits of Liability, which are required for the appeal of a covered CLAIM. The Company shall have no obligation to apply for, guarantee or furnish any such bonds.

"CLAIMS EXPENSES" shall not include salaries and expenses of regular employees or officials of the Company or the NAMED INSURED.

C. "COVERAGE UNIT" MEANS the terms, conditions, definitions and exclusions as stated in each attachment hereto for each of the coverages selected by the INSUREDS and listed in the Declarations including endorsements thereto. Each COVERAGE UNIT is a separate and distinct coverage.

D. "DISCIPLINARY PROCEEDING" MEANS any proceeding by a disciplinary official or agency to investigate charges alleging professional misconduct.

COR CPC.1681 (2/98) DC/MD/VA          © 1998

E. "PERSONAL INJ.     MEANS assault, battery, false arrest, de     n, imprisonment, wrongful entry, eviction or other ... sion o. ..ivate occupancy, or abusive litigation (criminal or civil), abuse of process, li. el, slander, defamat.. n .. . violations of the right of privacy.

F. "POLICY" MEANS the combination of (1) all COVERAGE UNITS issued by the Company to the NAMED INSURED and listed in the Declarations, (2) these GENERAL TERMS & CONDITIONS, and (3) all applications for insurance submitted by the NAMED INSURED with all supplements.

G. "POLICY PERIOD" MEANS the period stated in the Declarations, unless terminated earlier pursuant to Section V. of these GENERAL TERMS & CONDITIONS.

H. "PREDECESSOR" MEANS any legal entity to whose financial assets and liabilities the firm listed as the NAMED INSURED in the Declarations is the majority successor in interest.

I. "RETROACTIVE DATE" MEANS the date, as specified in the Declarations or in any endorsement attached hereto, on or after which any WRONGFUL ACT, as defined in each of the attached COVERAGE UNITS, must have occurred in order for CLAIMS arising therefrom to be covered under this POLICY. CLAIMS arising from any WRONGFUL ACT, as defined in each of the attached COVERAGE UNITS, occurring prior to this date are not covered by this POLICY.

J. "TOTALLY AND PERMANENTLY DISABLED" MEANS the INSURED is wholly prevented from working in his or her profession and the disability has continued for at least six (6) months, and an independent medical examiner opines that the disability will be continuous and permanent, and the disability did not result from self-inflicted injury, attempted suicide or alcohol or drug abuse.

## XVI. WAIVER

The Company's failure to insist on strict compliance with any of the terms, provisions or conditions to coverage of these GENERAL TERMS & CONDITIONS or the attached COVERAGE UNITS or the failure to exercise any right or privilege shall not operate or be construed as a waiver thereof or of any subsequent breach thereof or a waiver of any other terms, provisions, conditions, privileges or rights.

## XVII. ENTIRE AGREEMENT

By acceptance of this POLICY, all INSUREDS reaffirm as of the effective date of this POLICY that (a) the statements in the application(s) attached hereto and made a part hereof, and all information communicated by the INSUREDS to the Company, and all INSUREDS' agreements and representations, are true and accurate (b) this POLICY is issued in reliance upon the truth and accuracy of such representations which are material to the Company's issuance of this POLICY and (c) this POLICY embodies all agreements between all INSUREDS and the Company or any of its agents relating to this insurance. No representations by any person shall have any force or effect, except as included within this written agreement.

This POLICY is not valid unless completed by the attachment of the Declarations signed by an authorized representative and these GENERAL TERMS & CONDITIONS.

*WESTPORT INSURANCE CORPORATION*

_____
President

_____
Secretary

Copyright © 1998 Westport Insurance Corporation. All rights reserved.

The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.



**WESTPORT INSURANCE**
*C O R P O R A T I O N*

(hereinafter called "the Company")

## CUSTOMIZED PRACTICE COVERAGE℠

## LAWYERS PROFESSIONAL LIABILITY COVERAGE UNIT

In consideration of the payment of the premium, in reliance upon the statements in the application, its attachments and any materials submitted therewith, all of which are made a part hereof, and subject to the Declarations, GENERAL TERMS & CONDITIONS and the terms and conditions of this COVERAGE UNIT (including any endorsements hereto), the Company agrees with the NAMED INSURED as follows:

### I.    INSURING AGREEMENTS

A.   The Company shall pay on behalf of any INSURED all LOSS in excess of the deductible which any INSURED becomes legally obligated to pay as a result of CLAIMS first made against any INSURED during the POLICY PERIOD and reported to the Company in writing during the POLICY PERIOD or within sixty (60) days thereafter, by reason of any WRONGFUL ACT occurring on or after the RETROACTIVE DATE, if any;

B.   The Company shall reimburse the INSURED up to $7,500 per POLICY PERIOD, for reasonable fees, costs and expenses incurred in defending a DISCIPLINARY PROCEEDING based on a GRIEVANCE first made against any INSURED during the POLICY PERIOD, and reported to the Company in writing during the POLICY PERIOD or within sixty (60) days thereafter. This coverage applies only to such fees, costs and expenses. It does not apply to any monetary awards of any kind, judgments or settlements relating to, or directly or indirectly resulting from the institution or disposition of DISCIPLINARY PROCEEDINGS. The deductible shall not apply to this Insuring Agreement I.B.. However, any payments made by the Company under this Insuring Agreement I.B. shall be included within the applicable limit of liability and not in addition thereto.

### II.   DEFENSE, INVESTIGATION AND SETTLEMENT OF CLAIMS

As respects such insurance as is afforded by this COVERAGE UNIT, the Company shall:

A.   have the right and duty to select counsel and arbitrators and to defend any CLAIM for LOSS against any INSURED covered by Insuring Agreement I.A., even if such CLAIM is groundless, false or fraudulent, and shall have the right to make such investigation, negotiation and settlement, subject to Section II.B. below, of any CLAIM as it deems expedient;

B.   not settle any CLAIM without the written consent of the NAMED INSURED, which consent shall not be unreasonably withheld. If, however, the NAMED INSURED refuses to consent to a settlement recommended by the Company and elects to contest the CLAIM or continue legal proceedings in connection with such CLAIM, the Company's liability for the CLAIM shall not exceed the amount for which the CLAIM could have been settled, including CLAIMS EXPENSES incurred up to the date of such refusal, or the applicable limit of liability, whichever is less;

C.   reimburse up to $500 to each INSURED for each day for his or her attendance at the Company's request at trial, court-imposed hearing or arbitration proceeding involving a CLAIM, but the total amount so payable shall not exceed $5,000 per CLAIM. The deductible shall not apply to this Section II.C.. However, any payments made by the Company under this Section II.C. shall be included within the applicable limit of liability and not in addition thereto.

The Company shall not be obligated to pay any LOSS or defend or continue to defend any CLAIM after the "Per Claim Limit of Liability" or "Aggregate Limit of Liability" under this COVERAGE UNIT has been exhausted by payment of LOSS, or the deposit in a court having jurisdiction of sums exhausting the "Per Claim Limit of Liability" or "Aggregate Limit of Liability."

Except for reasonable fees, costs and expenses incurred in responding to a DISCIPLINARY PROCEEDING, no INSURED shall, without the prior written consent of the Company, incur any CLAIMS EXPENSES, make any admission or payment, admit liability, settle any CLAIMS, assume any obligation, agree to arbitration or any similar means of resolution of any dispute, or waive any rights.

If an INSURED is entitled to independent counsel (in those instances where the Company agrees to defend a CLAIM, and the Company reserves its rights to deny coverage on grounds which create a conflict of interests between an INSURED and the Company, and the INSURED does not waive the conflict), then the INSURED may select independent counsel. Such counsel shall have at least five (5) years of experience in the defense of similar CLAIMS, and maintain error and omissions insurance coverage. The INSURED and independent counsel shall provide full information, documentation and cooperation with respect to the defense, investigation and settlement of any CLAIM. The Company shall be liable only for reasonable and necessary defense costs at rates customarily paid by the Company for the defense of similar CLAIMS in the area where the CLAIM is being defended.

III.   REPORTING AND NOTICE

As a condition precedent to coverage under this COVERAGE UNIT, if a CLAIM is made against any INSURED, or if any INSURED becomes aware of any CLAIM, the INSURED(S) shall, as soon as practicable, but no later than sixty (60) days after termination of the POLICY PERIOD, provide written notice to the Company.

If, during the POLICY PERIOD, any INSURED first becomes aware of a POTENTIAL CLAIM and gives written notice of such POTENTIAL CLAIM to the Company during the POLICY PERIOD, any CLAIMS subsequently made against any INSURED arising from the POTENTIAL CLAIM shall be considered to have been made during the POLICY PERIOD.

The INSURED(S) shall include within any notice of CLAIM or POTENTIAL CLAIM a description of the CLAIM or POTENTIAL CLAIM, the alleged WRONGFUL ACT including date(s) it was committed, a summary of the facts upon which the CLAIM or POTENTIAL CLAIM is based, the alleged or potential damage that may result, the names of actual or potential claimants, the names of INSURED(S) against whom the CLAIM was or may be made, and the date and circumstances by which the INSURED(S) first became aware of the CLAIM or POTENTIAL CLAIM.

IV.   TERRITORY

This COVERAGE UNIT applies to WRONGFUL ACT(S) that occur anywhere in the world, provided that the CLAIM is made and brought in the United States of America, its territories or possessions or Canada.

V.   COOPERATION OF THE INSUREDS

A.   All INSUREDS shall cooperate with the Company in providing information requested by the Company regarding any CLAIM or GRIEVANCE reported under the POLICY. All INSUREDS shall cooperate with the Company in the investigation of any GRIEVANCE and in the defense, investigation and settlement of any CLAIM. Upon the Company's request, the INSURED(S) shall submit to examination or questioning under oath, attend hearings, depositions and trials and assist in effecting settlements, securing and giving evidence and obtaining the attendance of witnesses in the conduct of suits.

B.   All INSUREDS shall assist the Company in effecting any rights of indemnity, contribution or apportionment available to any INSURED or the Company, including the execution of such documents as are necessary to enable the Company to pursue claims in the INSUREDS' names, and shall provide all other assistance and cooperation which the Company may reasonably require.

VI.   OTHER INSURANCE OF A PRIOR LAW FIRM

If a PRIOR FIRM has other insurance applicable to a CLAIM against the INSURED(S) covered by this COVERAGE UNIT, this POLICY is specifically issued as excess insurance over and above the applicable limits of liability of all such other insurance regardless of whether such other insurance is written as primary, contributory, excess, contingent or otherwise.

## VII.  EXCLUSIONS

In addition to those Exclusions contained in Section XIV. of the GENERAL TERMS & CONDITIONS, this COVERAGE UNIT shall not apply to any CLAIM based upon, arising out of, attributable to, or directly or indirectly resulting from:

A.  bodily injury to, or sickness, disease or death of any person. This exclusion does not apply to mental illness, emotional distress or humiliation caused by PERSONAL INJURY;

B.  any INSURED'S activities as an officer, director, partner, manager or employee of any company, corporation, operation, organization, partnership or association other than the NAMED INSURED or PRIOR FIRM;

C.  any conduct by an INSURED committed within the scope of or while acting in a capacity as a public official or an employee of a municipality or governmental body, subdivision, agency, department or unit;

D.  the certification or acknowledgment by any INSURED, in his or her capacity as a Notary Public, of a signature on a document which the INSURED did not witness being placed on the document;

E.  any act, error, omission, circumstance, PERSONAL INJURY or breach of duty in the rendition of professional services for others in the INSURED'S capacity as a Title Insurance Agent or Title Abstractor or arising out of the conduct of the INSURED as a Title Insurance Agent or Title Abstractor pursuant to an agreement with a licensed title insurance company/companies;

F.  any CLAIM made by any INSURED under this POLICY against any other INSURED under this POLICY unless such CLAIM arises out of legal services by an INSURED rendered to such other INSURED as a client;

G.  any conversion, misappropriation or improper commingling of funds;

H.  any INSURED'S capacity as the beneficiary or distributee of any trust or estate; and

I.  any professional services rendered or that should have been rendered to or on behalf of any entity which, at that time, was controlled, managed or operated by any INSURED or was ten percent (10%) or more owned by any INSURED or combination of INSUREDS.

## VIII.  DEFINITIONS

As respects such insurance as is afforded by this COVERAGE UNIT, the following definitions shall apply:

A.  "NAMED INSURED" WHENEVER USED IN THIS COVERAGE UNIT MEANS the person or entity listed in the Declarations and any PREDECESSOR FIRM thereof.

B.  "INSURED" WHENEVER USED IN THIS COVERAGE UNIT MEANS:

1.  the NAMED INSURED;

2.  any lawyer or professional legal corporation, who is a past or present partner, officer, director, stockholder, shareholder or employee of the NAMED INSURED but only as respects legal services rendered on behalf of the NAMED INSURED;

3.  any lawyer listed in the application who is a partner, officer, director, stockholder, shareholder or employee of the NAMED INSURED at the time the CLAIM is made, but only as respects legal services rendered by such individual while associated with a PRIOR FIRM;

4.  any lawyer who has retired from the NAMED INSURED, but only as respects legal services rendered prior to the date of retirement;

5.  the heirs, executors, administrators and legal representatives of any INSURED, but only in their capacity as such in the event of any INSURED'S death, incapacity or bankruptcy, and only for CLAIMS based on legal services rendered prior to such INSURED'S death, incapacity or bankruptcy, and only to the extent that such INSURED would otherwise be covered by this COVERAGE UNIT;

6.  any non-lawyer who was or is an employee of the NAMED INSURED, but solely while acting within the scope of such person's duties as an employee;

7.  any past or present "of counsel" lawyer to the NAMED INSURED, but solely for professional services rendered on behalf of the NAMED INSURED; or

8.  any past or present non-employee independent contractor lawyer to the NAMED INSURED but solely for professional services rendered on behalf of the NAMED INSURED.

C.  "GRIEVANCE" WHENEVER USED IN THIS COVERAGE UNIT MEANS:

1.  any charges filed by a client, former client or third party with a disciplinary official or agency alleging professional misconduct of an INSURED in rendering or failing to render professional services as a lawyer; or

2.  any investigation commenced or action brought by a bar association, disciplinary board or any other similar entity alleging violations of the rules of professional responsibility, or any other action to limit, suspend or revoke an INSURED'S license to practice law.

"GRIEVANCE" shall not include charges or actions filed with a regulatory agency or official, including, without limitation, the Securities Exchange Commission or the Internal Revenue Service.

D.  "LOSS" WHENEVER USED IN THIS COVERAGE UNIT MEANS the monetary and compensatory portion of any judgment, award or settlement, provided always that LOSS shall not include:

1.  civil or criminal fines, penalties, fees or sanctions;

2.  punitive or exemplary damages, including the multiplied portion of any multiple damages;

3.  the return by any INSURED of any fees or remuneration paid to any INSURED; or

4.  any form of non-monetary relief.

E.  "POTENTIAL CLAIM" WHENEVER USED IN THIS COVERAGE UNIT MEANS:

1.  any act, error, omission, circumstance or PERSONAL INJURY which might reasonably be expected to give rise to a CLAIM against any INSURED under the POLICY; or

2.  any breach of duty to a client or third party which has not resulted in a CLAIM against an INSURED.

F.  "PRIOR FIRM" WHENEVER USED IN THIS COVERAGE UNIT MEANS any law firm or professional corporation engaged in the private practice of law for which any lawyer listed in the application was a partner, officer, director, stockholder, shareholder or employee prior to such lawyer joining the NAMED INSURED.

G.  "WRONGFUL ACT" WHENEVER USED IN THIS COVERAGE UNIT MEANS any act, error, omission, circumstance, PERSONAL INJURY or breach of duty in the rendition of legal services for others in the INSURED'S capacity as a lawyer, and arising out of the conduct of the INSURED'S profession as a lawyer, or as a lawyer acting in the capacity of an Arbitrator, Mediator or Notary Public. When an INSURED acts as an administrator, conservator, executor, guardian, trustee, escrow agent, receiver or other court-appointed

fiduciary, the INSURED'S wrongful acts in such capacity shall be deemed to be the rendition of legal services for others in the INSURED'S capacity as a lawyer.

**This COVERAGE UNIT is not valid unless completed by the attachment of the Declarations signed by an authorized representative and the GENERAL TERMS & CONDITIONS.**

_____
President

_____
Secretary

Copyright © 1998 Westport Insurance Corporation. All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.

Policy



**WESTPORT INSURANCE**
*C O R P O R A T I O N*

(hereinafter called "the Company")

## CUSTOMIZED PRACTICE COVERAGE ℠

## TITLE INSURANCE AGENT LIABILITY COVERAGE UNIT

In consideration of the payment of the premium, in reliance upon the statements in the application, its attachments and any materials submitted therewith, all of which are made a part hereof, and subject to the Declarations, GENERAL TERMS & CONDITIONS and the terms and conditions of this COVERAGE UNIT (including any endorsements hereto), the Company agrees with the NAMED INSURED as follows:

**I.  INSURING AGREEMENT**

    A.  The Company shall pay on behalf of any INSURED all LOSS in excess of the deductible which any INSURED becomes legally obligated to pay as a result of CLAIMS first made against any INSURED during the POLICY PERIOD and reported to the Company in writing during the POLICY PERIOD or within sixty (60) days thereafter, by reason of any WRONGFUL ACT occurring on or after the RETROACTIVE DATE, if any;

    B.  The Company shall reimburse the INSURED up to $7,500 per POLICY PERIOD, for reasonable fees, costs and expenses incurred in defending a DISCIPLINARY PROCEEDING based on a GRIEVANCE first made against any INSURED during the POLICY PERIOD, and reported to the Company in writing during the POLICY PERIOD or within sixty (60) days thereafter. This coverage applies only to such fees, costs and expenses. It does not apply to any monetary awards of any kind, judgments or settlements relating to, or directly or indirectly resulting from the institution or disposition of DISCIPLINARY PROCEEDINGS. The deductible shall not apply to this Insuring Agreement I.B. However, any payments made by the Company under this Insuring Agreement I.B. shall be included within the applicable limit of liability and not in addition thereto;

    C.  No coverage shall be afforded for any title insurance agency or company on whose behalf the INSURED acts as title insurance agent, designated issuing agent or title abstractor, unless coverage for such agency or company is specifically endorsed hereon.

**II.  DEFENSE, INVESTIGATION AND SETTLEMENT OF CLAIMS**

As respects such insurance as is afforded by this COVERAGE UNIT, the Company shall:

    A.  have the right and duty to select counsel and arbitrators and to defend any CLAIM for LOSS against any INSURED covered by Insuring Agreement I.A., even if such CLAIM is groundless, false or fraudulent, and shall have the right to make such investigation, negotiation and settlement, subject to Section II.B. below, of any CLAIM as it deems expedient;

    B.  not settle any CLAIM without the written consent of the NAMED INSURED, which consent shall not be unreasonably withheld. If, however, the NAMED INSURED refuses to consent to a settlement recommended by the Company and elects to contest the CLAIM or continue legal proceedings in connection with such CLAIM, the Company's liability for the CLAIM shall not exceed the amount for which the CLAIM could have been settled, including CLAIMS EXPENSES incurred up to the date of such refusal, or the applicable limit of liability, whichever is less;

    C.  reimburse up to $500 to each INSURED for each day for his or her attendance at the Company's request at trial, court-imposed hearing or arbitration proceeding involving a CLAIM, but the total amount so payable shall not exceed $5,000 per CLAIM.  The deductible shall not apply to this Section II.C.. However, any payments made by the Company under this Section II.C. shall not be included within the applicable limit of liability, but shall be in addition thereto.

The Company shall not be obligated to pay any LOSS or defend or continue to defend any CLAIM after the "Per Claim Limit of Liability" or "Aggregate Limit of Liability" under this COVERAGE UNIT has been exhausted by payment of LOSS or the deposit in a court having jurisdiction of sums exhausting the "Per Claim Limit of Liability" or "Aggregate Limit of Liability."

No INSURED shall, without prior written consent of the Company, incur any CLAIMS EXPENSES, make any payment or admission, admit liability, settle any CLAIMS, assume any obligation, agree to arbitration or any similar means of resolution of any dispute, or waive any rights.

If an INSURED is entitled to independent counsel (in those instances where the Company agrees to defend a CLAIM, and the Company reserves its rights to deny coverage on grounds which create a conflict of interests between an INSURED and the Company, and the INSURED does not waive the conflict), then the INSURED may select independent counsel. Such counsel shall have at least five (5) years of experience in the defense of similar CLAIMS and maintain error and omissions insurance coverage. The INSURED and independent counsel shall provide full information, documentation and cooperation with respect to the defense, investigation and settlement of any CLAIM. The Company shall be liable only for reasonable and necessary defense costs at rates customarily paid by the Company for the defense of similar CLAIMS in the area where the CLAIM is being defended.

III.    REPORTING AND NOTICE

As a condition precedent to coverage under this COVERAGE UNIT, if a CLAIM is made against any INSURED, or if any INSURED becomes aware of any CLAIM, the INSURED(S) shall, as soon as practicable, but no later than sixty (60) days after termination of the POLICY PERIOD, provide written notice to the Company.

If, during the POLICY PERIOD, any INSURED first becomes aware of a POTENTIAL CLAIM and gives written notice of such POTENTIAL CLAIM to the Company during the POLICY PERIOD, any CLAIMS subsequently made against any INSURED arising from the POTENTIAL CLAIM shall be considered to have been made during the POLICY PERIOD.

The INSURED(S) shall include within any notice of CLAIM or POTENTIAL CLAIM a description of the CLAIM or POTENTIAL CLAIM, the alleged WRONGFUL ACT including date(s) it was committed, a summary of the facts upon which the CLAIM or POTENTIAL CLAIM is based, the alleged or potential damage that may result, the names of actual or potential claimants, the names of INSURED(S) against whom CLAIMS may be made, and the date and circumstances by which the INSURED(S) first became aware of the CLAIM or POTENTIAL CLAIM.

IV.    TERRITORY

This COVERAGE UNIT applies to WRONGFUL ACT(S) that occur anywhere in the world, provided that the CLAIM is made and brought in the United States of America, its territories or possessions or Canada.

V.    COOPERATION OF THE INSUREDS

A.    All INSUREDS shall cooperate with the Company in providing information requested by the Company regarding any CLAIM reported under the POLICY. All INSUREDS shall cooperate with the Company in the defense, investigation and settlement of any CLAIM. Upon the Company's request, the INSUREDS shall submit to examination or questioning under oath, attend hearings, depositions and trials and assist in effecting settlements, securing and giving evidence and obtaining the attendance of witnesses in the conduct of suits.

B.    All INSUREDS shall assist the Company in effecting any rights of indemnity, contribution or apportionment available to any INSURED or the Company, including the execution of such documents as are necessary to enable the Company to pursue claims in the INSUREDS' names, and shall provide all other assistance and cooperation which the Company may reasonably require.

VI.    EXCLUSIONS

In addition to those Exclusions contained in Section XIV. of the GENERAL TERMS & CONDITIONS, this COVERAGE UNIT shall not apply to any CLAIM based upon, arising out of, attributable to, or directly or indirectly resulting from:

A. any act, error, omission, circumstance, PERSONAL INJURY or breach of duty in the rendition of legal services for others in the INSURED'S capacity as a lawyer, Arbitrator or Mediator;

B. bodily injury to, or sickness, disease or death of any person. This exclusion does not apply to mental illness, emotional distress or humiliation caused by PERSONAL INJURY;

C. any act, error, omission or PERSONAL INJURY committed or alleged to have been committed by any INSURED while that INSURED was a partner, officer, director, stockholder, shareholder or employee of a PRIOR FIRM if there is any other collectible insurance, under any other policy or policies covering that INSURED for LOSS and/or CLAIMS EXPENSES for such CLAIM, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise;

D. any INSURED'S activities as an officer, director, partner, manager or employee of any company, corporation, operation, organization, partnership or association other than the NAMED INSURED or PRIOR FIRM;

E. any conduct by an INSURED committed within the scope of or while acting in a capacity as a public official or an employee of a municipality or governmental body, subdivision, agency, department or unit;

F. any defects in title of which any INSURED had knowledge at the date of issuance of title insurance;

G. any intentional breach of underwriting authority by any INSURED in the INSURED'S capacity as a title insurance agent;

H. any breach or failure to perform, in whole or in part, any oral, written or implied contract, unless such liability would have attached to the INSURED even in the absence of such agreement;

I. any conversion, misappropriation or improper commingling of funds, including but not limited to escrow activities and insurance placement;

J. any CLAIM made by any INSURED under this POLICY against any other INSURED under this POLICY;

K. any professional services rendered or that should have been rendered to or on behalf of any entity which, at that time, was controlled, managed or operated by any INSURED or was ten percent (10%) or more owned by any INSURED or combination of INSUREDS; and

L. the certification or acknowledgment by any INSURED, in his or her capacity as a Notary Public, of a signature on a document which the INSURED did not witness being placed on the document.

## VII. DEFINITIONS

As respects such insurance as is afforded by this COVERAGE UNIT, the following definitions shall apply:

A. "NAMED INSURED" WHENEVER USED IN THIS COVERAGE UNIT MEANS the person or entity listed in the Declarations and any PREDECESSOR thereof.

B. "INSURED" WHENEVER USED IN THIS COVERAGE UNIT MEANS:

1. the NAMED INSURED;

2. any lawyer who is a past or present partner, officer, director, stockholder, shareholder, employee or "of counsel" of the NAMED INSURED, but only as respects professional services rendered on behalf of the NAMED INSURED;

3. any lawyer listed in the application who is a partner, officer, director, stockholder, shareholder or employee of the NAMED INSURED at the time the CLAIM is made, but only as respects professional services rendered by such individual while associated with a PRIOR FIRM;

4. any lawyer who has retired from the NAMED INSURED, but only as respects professional services rendered prior to the date of retirement; and

5. the heirs, executors, administrators and legal representatives of any INSURED, but only in their capacity as such in the event of any INSURED'S death, incapacity or bankruptcy, and only for CLAIMS based on professional services rendered prior to such INSURED'S death, incapacity or bankruptcy, and only to the extent that such INSURED would otherwise be covered by this COVERAGE UNIT.

C. "GRIEVANCE" WHENEVER USED IN THIS COVERAGE UNIT MEANS:

1. any charges filed by a client, former client or third party with a disciplinary official or agency alleging professional misconduct of an INSURED in rendering or failing to render services as a Title Insurance Agent; or

2. any investigation commenced or action brought by a bar association, disciplinary board or any other similar entity alleging violations of the rules of professional responsibility, or any other action to limit, suspend or revoke an INSURED'S license to practice law.

"GRIEVANCE" shall not include charges or actions filed with a regulatory agency or official, including, without limitation, the Securities Exchange Commission or the Internal Revenue Service.

D. "LOSS" WHENEVER USED IN THIS COVERAGE UNIT MEANS the monetary and compensatory portion of any judgment, award or settlement, provided always that LOSS shall not include:

1. civil or criminal fines, penalties, fees or sanctions;

2. punitive or exemplary damages, including the multiplied portion of any multiple damages;

3. the return by any INSURED of any fees or remuneration paid to any INSURED; or

4. any form of non-monetary relief.

E. "POTENTIAL CLAIM" WHENEVER USED IN THIS COVERAGE UNIT MEANS:

1. any act, error, omission, circumstance or PERSONAL INJURY which might reasonably be expected to give rise to a CLAIM against any INSURED under the POLICY; or

2. any breach of duty to a client or third party which has not resulted in a CLAIM against any INSURED.

F. "PRIOR FIRM" WHENEVER USED IN THIS COVERAGE UNIT MEANS any law firm or professional corporation engaged in the private practice of law for which any lawyer listed in the application was a partner, officer, director, stockholder, shareholder or employee prior to such lawyer joining the NAMED INSURED.

G. "WRONGFUL ACT" WHENEVER USED IN THIS COVERAGE UNIT MEANS any negligent act, error, omission, circumstance, PERSONAL INJURY or breach of duty in the rendition of professional services for others in the INSURED'S capacity as a Title Insurance Agent or Title Abstractor, and arising out of the conduct of the INSURED as a Title Insurance Agent or Title Abstractor pursuant to an agreement with a licensed title insurance company/companies.

This COVERAGE UNIT is not valid unless completed by the attachment of the Declarations signed by an authorized representative and the GENERAL TERMS & CONDITIONS.

*WESTPORT INSURANCE CORPORATION*

President                    Secretary

Copyright ©1998 Westport Insurance Corporation. All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.



WESTPORT INSURANCE
CORPORATION

ENDORSEMENT

## CUSTOMIZED PRACTICE COVERAGE ℠

*THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.*

## LIMITATION OF INDIVIDUAL PRIOR ACTS

**GENERAL TERMS & CONDITIONS, Section XIV. EXCLUSIONS**, as respects only the LAWYERS PROFESSIONAL LIABILITY COVERAGE UNIT and the TITLE INSURANCE AGENT LIABILITY COVERAGE UNIT (where applicable), is amended to include:

This POLICY does not apply to any CLAIM based upon, arising out of or attributable to, or directly or indirectly resulting from an act, error, omission, circumstance or PERSONAL INJURY committed by the following INSURED(s) prior to the corresponding RETROACTIVE DATE(s):

| | |
|---|---|
| I.F. Cohn | 07/01/1988 |
| F.T. Rafferty | 12/01/1989 |
| E.L. Dorsey Jr. | 02/03/1997 |
| G.D. Allen | 03/10/1995 |
| S.M. Schabes | 07/01/1992 |
| T.A. Dixon | 08/05/1996 |
| L.R. Stellman | 03/01/1995 |
| K.A. Coulahan | 10/16/1995 |
| R. Waldman | 10/24/1988 |

All other terms and conditions of this POLICY remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

**Endorsement Effective:**
January 1, 1999, 12:01 A.M. Standard Time.

**Policy Number:**
MDL 022344-3

**Endorsement No.**

**Name Insured:**
Blum Yumkas Mailman Gutman & Denick, P.A.

**WESTPORT INSURANCE CORPORATION**

Countersigned.

....................................................
Authorized Representative

*Jerry L Woolard*
President

*Diane E. Thomas*
Secretary

Copyright © 1998 Westport Insurance Corporation. All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.



ENDORSEMENT

## CUSTOMIZED PRACTICE COVERAGE ℠

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Lawyers Professional Liability Coverage Unit
## Amendment of Definition of Insured

Definitions VIII. B. is amended to read as follows:

B.    "INSURED" WHENEVER USED IN THIS COVERAGE UNIT MEANS:

I.    the NAMED INSURED firm as stated in the policy Declarations and any lawyer or professional legal corporation who is a past or present partner, officer, director, shareholder or employee of the NAMED INSURED.

2.    any lawyer or professional legal corporation who is a former partner, officer, director, shareholder or employee of the NAMED INSURED, but solely for professional services rendered on behalf of the NAMED INSURED.

3.    any lawyer who has retired from the NAMED INSURED, but only as respects legal services rendered prior to the date of retirement from the INSURED firm.

4.    any non-lawyer who was or is an employee of the NAMED INSURED, but solely while acting within the scope of such person's duties as an employee.

5.    any past or present "of counsel" or non-employee independent contractor attorney to the NAMED INSURED, but solely for professional services rendered on behalf of the NAMED INSURED.

6.    the heirs, executors, administrators and legal representatives of any INSURED, but only in their capacity as such in the event of any INSURED'S death, incapacity or bankruptcy, and only for CLAIMS based on legal services rendered prior to such INSURED'S death, incapacity or bankruptcy, and only to the extent that such   INSURED would otherwise be covered by this COVERAGE UNIT.

All other terms and conditions of this POLICY remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

**Endorsement Effective:**
January 1, 1999, 12:01 A.M. Standard Time.

**Policy Number:**
MDL-022344-3

**Endorsement No.**

**Name Insured:**
Blum Yumkas Mailman Gutman & Denick, P.A.

**WESTPORT INSURANCE CORPORATION**

Countersigned.

.................................................
Authorized Representative

President

Secretary

Copyright © 1998 Westport Insurance Corporation. All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.



*WESTPORT INSURANCE CORPORATION*

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADD LAWYER

In consideration of the New Lawyer Information Application, Ellen H. Arthur is added as an Insured under this policy with a limiting prior acts date of 04/24/99.

All other terms and conditions of this POLICY remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

| Endorsement Effective: | Policy Number: | Endorsement No. |
|---|---|---|
| April 29, 1999, 12:01 A.M. Standard Time. | MDL-022344-3 | |

**Name Insured:**
Blum Yumkas Mailman Gutman & Denick, P.A.

**WESTPORT INSURANCE CORPORATION**

Countersigned.

.............................................

Authorized Representative                    President                    Secretary



WESTPORT INSURANCE CORPORATION

ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## DELETE LAWYER

In consideration of the letter dated 05/11/99 signed by Thomas C. Lewis, Kathleen A. Coulahan is deleted as an insured from this policy effective 05/07/99.

All other terms and conditions of this POLICY remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

| Endorsement Effective: | Policy Number: | Endorsement No. |
|---|---|---|
| May 7, 1999, 12:01 A.M. Standard Time. | MDL-022344-3 | |

Name Insured:
Blum Yumkas Mailman Gutman & Denick, P.A.

WESTPORT INSURANCE CORPORATION

Countersigned.

........................................................

Authorized Representative                    President                    Secretary