

SERIES: 2000



DATE: 4-1-72

Insurance is provided only where an Insuring Agreement number is shown.

| | | DECLARATIONS AND GENERAL CONDITIONS | Insuring Agreement Number |
|---|---|---|---|
| S E C T I O N  I | P R O P E R T Y | FIRE and ALLIED PERILS<br>　Building<br>　Contents<br><br>INLAND MARINE | 1<br>1 |
| S E C T I O N  II | C A S U A L T Y | COMPREHENSIVE GENERAL LIABILITY - PRODUCTS  ☐ Included  ☒ Excluded<br>　Premises Medical Payments<br>STOREKEEPERS LIABILITY<br>AUTOMOBILE LIABILITY<br>　Medical Payments<br>　Physical Damage<br>GLASS<br>Lawyer Professional Liability<br>Personal Injury Liability | 36<br><br><br><br><br><br><br>43<br>49 |
| | C R I M E | MONEY and SECURITIES<br>MERCANTILE OPEN STOCK<br><br><br>FIDELITY<br>FORGERY | |
| OTHER POLICIES | | WORKMEN'S COMPENSATION | 719NA0118 |

For coverage and limits, see appropriate pages. This index in no way changes or affects any terms, conditions or exclusions.

EXHIBIT F

**MULTICOVER POLICY** SERIES: 2000

68INA0511
Former Policy No.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY
Section I ☐   Section II ☐

ST. PAUL MERCURY INSURANCE COMPANY
Section I ☐   Section II ☐
St. Paul, Minnesota
A CAPITAL STOCK COMPANY
Coverage is provided as designated by an ☒

**BILLED**

## DECLARATIONS

NAME AND MAILING ADDRESS OF INSURED (including zip code)
Burke, Gerber & Wilen
326 St. Paul Place, Baltimore, Maryland

| Effective Date of Policy* | | | Expiration Date of Policy* | | | THE NAMED INSURED IS: | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Mo. | Day | Yr. | Mo. | Day | Yr. | Individual | Co-Partnership | Corporation | Joint Venture | Other: |
| 4 | 1 | 72 | 4 | 1 | 75 | ☐ | ☒ | ☐ | ☐ | ☐ |

*This Policy and each of its Insuring Agreements unless otherwise indicated therein, shall take effect on the date indicated above.

TERMINATION OF PRIOR COVERAGE. The Insured by the acceptance of this Policy, gives notice to the Company terminating or cancelling prior bonds or policies as listed below. Such termination or cancellation to be effective as of the time this Policy and its Insuring Agreements become effective.

The Company, in consideration of the payment of the agreed premium(s) and subject to the terms of this Policy and its Insuring Agreements, agrees to indemnify or pay to or on behalf of the Insured in accordance with such Insuring Agreements, with respect to the occurrence of any of the therein-mentioned casualties or events during the policy period.

The limit of the Company's liability for each coverage of each Insuring Agreement or endorsement shall be as indicated therein, subject to all the terms of this Policy having reference thereto.

| PREMIUMS | PREPAID Advance Premium | OR ANNUAL INSTALLMENTS | | |
|---|---|---|---|---|
| | | Due at Inception | Due at Each Subsequent Anniv. | Total 3 Yr. |
| A. Subject to term rule. (including Provisional Premium if any) | $ | $ 213.00 | $ 213.00 | $ 639.00 |
| B. *Not subject to term rule. | $ | $ 1,794.00 | To Be Determined | |
| A and B Combined | $ | $ 2,007.00 | | |

* The Premium, if any, shown in Item 8 above is for one year only and is for the coverages shown below. Premiums for subsequent years will be determined at the rates in effect at each anniversary.

Lawyers Professional Liability Coverage
Non-Owned Hired Car Coverage

INSTALLMENT PLAN BILLING

| DATE | PREMIUM | BY |
|---|---|---|
| 4/3/73 | 1962.00 | |
| 4/22/74 | 2085.10 | |

Countersignature Date 4-1-72   Agency at Baltimore, Maryland

Assignment of this Policy shall not be valid except with the written consent of this Company.
This Policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this Policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this Policy.

Authorized Representative

## GENERAL CONDITIONS
### General Conditions applicable to Sections I and II.

1. **POLICY PERIOD.** The policy period with respect to any Insuring Agreement shall begin at noon, standard time, on the effective date stated in the Declarations, and ends at noon, standard time on the expiration date stated in the Declarations, or the effective date of the cancellation of this Policy, as an entirety, or the cancellation of such Insuring Agreement, as hereinafter provided, whichever expiration or cancellation shall first occur. If subsequent to the date hereof, any Insuring Agreement is made a part of this Policy by mutual agreement, then the policy period, with respect to such Insuring Agreement, shall begin on the date stated therein, and if, prior to the cancellation of this Policy as an entirety, any Insuring Agreement is terminated, as hereinafter provided, then noon, standard time, of the effective date of such termination, shall be the end of the policy period, with respect to such Insuring Agreement. However, to the extent that coverage in this Policy replaces coverage in other policies terminating at 12:01 A.M. (standard time) on the inception date of this Policy, this Policy shall be effective at 12:01 A.M. (standard time) instead of at noon standard time.

2. **CANCELLATION.** This Policy or any of its Insuring Agreements may be cancelled by the Named Insured by surrender thereof to the Company or any of its authorized agents, or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. The Policy or any of its Insuring Agreements may be cancelled by the Company by mailing to the Named Insured at the address shown in this Policy written notice stating when not less than Ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender, or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Named Insured or by the Company shall be equivalent to mailing.

    If the Named Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

3. **INSPECTION AND AUDIT.** The Company shall be permitted but not obligated to inspect the Named Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe.

    The Company may examine and audit the Named Insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this Policy, as far as they relate to the subject matter of this insurance.

4. **SPECIAL STATUTES.** Any and all terms of this Policy which are in conflict with the statutes of any state in which coverage is granted are understood, declared and acknowledged by the Company to be amended to conform with such statutes.

5. **PROVISIONS REQUIRED BY LAW TO BE STATED IN THIS POLICY.** "This Policy is issued under and in pursuance of the Laws of the State of Minnesota, relating to Guaranty Surplus and Special Reserve Funds." Chapter 437, General Laws of 1909. (This provision applies only if the Policy is issued in the St. Paul Fire and Marine Insurance Company.)

### General Conditions application to Section I.

6. **LIBERALIZATION CLAUSE.** If during the period that insurance is in force under this Policy or within 45 days prior to the inception date thereof, on behalf of the Company there be adopted, or filed with and approved or accepted by the insurance supervisory authorities, all in conformity with law, any changes in this Policy by which this form of insurance could be extended or broadened without increased premium charge by endorsement or substitution of form then such extended or broadened insurance shall inure to the benefit of the Insured hereunder as though such endorsement or substitution of form had been made.

7. **BENEFIT OF INSURANCE.** This insurance shall in no wise inure directly or indirectly to the benefit of any carrier or bailee other than the Named Insured.

### GENERAL CONDITIONS 8 THROUGH 25
### APPLY TO INLAND MARINE INSURING AGREEMENTS ONLY

8. **PREMIUM.** The premium for which this Policy is written shall be an estimated premium only. At the end of each annual period the earned premium shall be computed in accordance with the terms agreed upon. If the earned premium thus computed, exceeds the premium paid, the Insured shall pay the excess to the Company; if less, the Company shall return to the Insured the unearned portion paid, subject, however, to the agreed upon annual minimum premium.

    The Named Insured shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to the Company at the end of the policy period and at such times during the policy period as the Company may direct.

9. **LIMIT OF LIABILITY.** The limit(s) of the Company's liability as expressed in this Policy shall not be:
    (A) Cumulative from year to year, or period to period, regardless of the number of premiums paid or payable;
    (B) Increased by the inclusion herein of, or by reference herein to, more than one party in interest as the Insured, the one first named being deemed the Named Insured and authorized agent of and entitled to priority over the others for all purposes of this Policy, and if the Named Insured ceases to be covered hereunder the one next named shall thereafter be deemed the Named Insured.

10. **CHANGES.** Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Policy or estop the Company from asserting any right under the terms of this Policy; nor shall the terms of this Policy be waived or changed, except by endorsement issued to form part of this Policy, signed by an Officer and countersigned by an agent of the Company.

11. LOSS REPORTING AND ADJUSTMENT.
(A) The Insured shall as soon as practicable report to the Company or its agent every loss or damage which may become a claim under this Policy and shall also file with the Company or its agent within ninety (90) days from date of loss a detailed sworn proof of loss. Failure by the Insured to report the said loss or damage and to file such sworn proof of loss as hereinbefore provided shall invalidate any claim under this Policy for such loss.
(B) The Insured shall submit, and so far as is within his or their power cause all other persons interested in the property and members of the household and employees to submit, to examinations under oath by any persons named by the Company, relative to any and all matters in connection with a claim and subscribe the same; and shall produce for examination all books of account, bills, invoices, and other vouchers or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by the Company or its representatives, and shall permit extracts and copies thereof to be made.
(C) Unless otherwise provided in an Insuring Agreement made a part of this Policy, the Company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs and the loss or damage shall be ascertained or estimated according to such actual cash value with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost to repair or replace the same with material of like kind and quality nor the invoice value whichever may be lesser.
(D) All adjusted claims shall be paid or made good to the Insured within sixty (60) days after presentation and acceptance of satisfactory proof of interest and loss at the office of the Company.
(E) The Company shall not be liable for loss caused by neglect of the Insured to use all reasonable care to save and preserve the property at and after any disaster insured against.

12. SUBROGATION AND SALVAGE.
(A) In the event of any payment under this Policy, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization, and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.
(B) If the Insured shall sustain any loss covered by this Policy, which exceeds the applicable amount of insurance hereunder, the Insured shall be entitled to all recoveries (except from suretyship, insurance, reinsurance, security or indemnity taken by or for the benefit of the Company) by whomsoever made, on account of such loss under this Policy until fully reimbursed, less the actual cost of effecting the same; and any remainder shall be applied to the reimbursement of the Company.

13. NO ADDITIONAL PREMIUM. Payment by the Company of any obligation hereunder shall not entitle the Company to an additional or reinstatement premium unless otherwise stated in the Insuring Agreement providing for such payment.

14. ASSIGNMENT. Assignment of interest under this Policy shall not bind the Company until its consent is endorsed hereon; if, however, the Named Insured shall die, such insurance as is afforded by this Policy shall apply (1) to the Named Insured's legal representative, as the Named Insured, but only while acting within the scope of his duties as such, and (2) with respect to the property of the Named Insured, to the person having proper temporary custody thereof, as Insured, but only until the appointment and qualification of the legal representative.

15. FRAUD AND MISREPRESENTATION. This Policy and its Insuring Agreements shall be void if the Insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or in case of any fraud, attempted fraud or false swearing by the Insured pertaining to this insurance or the subject thereof, whether before or after a loss. However, unintentional errors or omissions on the part of the Insured shall not operate to prejudice the rights of the Insured under this Policy and its Insuring Agreements.

16. OTHER INSURANCE. No Insuring Agreement hereof shall apply to any loss if the Insured is, or would be but for the existence of such Insuring Agreement, insured against such loss under any other policy or policies, except as respects any excess beyond the amount which would have been payable under any other policy or policies, had such Insuring Agreement not been effective.

17. WAR EXCLUSION. This Policy does not insure against loss or damage caused by or resulting from:
(A) Hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual impending or expected attack, (1) by any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces; or (2) by military, naval or air forces; or (3) by an agent of any such government, power, authority or forces;
(B) Any weapon of war employing atomic fission or radioactive force whether in time of peace or war;
(C) Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an occurrence, seizure or destruction under quarantine or Customs regulations, confiscation by order of any government or public authority, or risks of contraband or illegal transportation or trade.

18. NUCLEAR EXCLUSION. If any Inland Marine Insuring Agreement of this Policy insures against the peril of Fire, Clause (A) below shall apply, but if the Insuring Agreement does not insure against the peril of Fire, Clause (B) below shall apply as follows:
(A) The Company shall not be liable for loss by nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this Policy; however, subject to the foregoing and all provisions of this Policy, direct loss by fire resulting from nuclear reaction or nuclear radiation or radioactive contamination is insured against by this Policy;
(B) The Company shall not be liable for loss by nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this Policy.

GENERAL CONDITIONS

19. **PAIR AND SET CLAUSE.** It is understood and agreed that, in the event of loss of or damage to any article or articles which are a part of a set, the measure of loss of or damage to such article or articles shall be a reasonable and fair proportion of the total value of the set, giving consideration to the importance of said article or articles; but in no event shall such loss or damage be construed to mean total loss of set.

20. **MACHINERY CLAUSE.** In case of loss or injury to any part of the insured property consisting, when complete for sale or use, of several parts, the Company shall only be liable for the insured value of the part lost or damaged.

21. **LABEL CLAUSE.** In cases of damage to labels only, the loss shall be adjusted on the basis of an amount sufficient to pay the cost of new labels and relabeling the goods.

22. **LIVE ANIMAL CLAUSE.** Live animals if insured hereunder are insured against risk of mortality only, directly caused by the perils named in the Policy. No claim to be made on these Insurers on any animal able to walk from the conveyance or able to walk after unloading therefrom. Insurers to have full benefit of salvage in the event of valid claim hereunder.

23. **SUE AND LABOR CLAUSE.** In case of loss or damage, it shall be lawful and necessary for the Insured, his or their factors, servants and assigns, to sue, labor, and travel for, in and about the defense, safeguard and recovery of the property insured hereunder, or any part thereof without prejudice to this insurance; nor shall the acts of the Insured or the Company, in recovering, saving and preserving the property insured in case of loss or damage, be considered a waiver or an acceptance of abandonment; to the charge whereof the Company will contribute according to the rate and quantity of the sum herein insured.

24. **SUIT CLAUSE.** No suit, action or proceeding for the recovery of any claim this Policy shall be sustainable in any court of law or equity unless the same be commenced within twelve (12) months next after discovery by the Insured of the occurrence which gives rise to the claim. Provided, however, that if by the laws of the State within which this Policy is issued such limitation is invalid, then any such claims shall be void unless such action, suit or proceeding be commenced within the shortest limit of time permitted by the laws of such State to be fixed herein.

25. **ARBITRATION CLAUSE.** If the Insured and the Company fail to agree as to the amount of loss, each shall, on the written demand of either, made within sixty days after receipt of proof of loss by the Company, select a competent and disinterested appraiser, and the appraisal shall be made at a reasonable time and place. The appraisers shall first select a competent and disinterested umpire, and failing for fifteen days to agree upon such umpire, then, on the request of the Insured or the Company, such umpire shall be selected by a judge of a court of record in the state in which such appraisal is pending. The appraisers shall then appraise the loss, stating separately the actual cash value at the time of loss and the amount of loss, and failing to agree shall submit their differences to the umpire. An award in writing of any two shall determine the amount of loss. The Insured and the Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and umpire. The Company shall not be held to have waived any of its rights by any act relating to appraisal.

## General Conditions Applicable to Section II

26. **PREMIUM.** The premium for which this Policy is written shall be an estimated premium only. At the end of each annual period the earned premium shall be computed in accordance with the terms agreed upon. If the earned premium thus computed, exceeds the premium paid, the Insured shall pay the excess to the Company; if less, the Company shall return to the Insured the unearned portion paid, subject, however, to the agreed upon annual minimum premium.

    The Named Insured shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to the Company at the end of the policy period and at such times during the policy period as the Company may direct.

27. **LIMIT OF LIABILITY.** The limit(s) of the Company's liability as expressed in this Policy shall not be:
    (A) Cumulative from year to year, or period to period, regardless of the number of premiums paid or payable;
    (B) Increased by the inclusion herein of, or by reference herein to, more than one party in interest as the Insured, the one first named being deemed the Named Insured and authorized agent of and entitled to priority over the others for all purposes of this Policy, and if the Named Insured ceases to be covered hereunder the one next named thereafter be deemed the Named Insured.

28. **CHANGES.** Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Policy or estop the Company from asserting any right under the terms of this Policy; nor shall the terms of this Policy be waived or changed, except by endorsement issued to form part of this Policy, signed by an Officer and countersigned by an agent of the Company.

29. **NO ADDITIONAL PREMIUM.** Payment by the Company of any obligation hereunder shall not entitle the Company to an additional or reinstatement premium unless otherwise stated in the Insuring Agreement providing for such payment.

30. **INSURED'S DUTIES IN THE EVENT OF LOSS, OCCURRENCE, CLAIM OR SUIT.**
    (A) Upon the occurrence of any casualty or event for which coverage is afforded by this Policy, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to the Company or any of its authorized agents as soon as practicable. The Named Insured shall promptly take at his expense all reasonable steps to prevent other bodily injury or property damage from arising out of the same or similar conditions, but such expense shall not be recoverable under this Policy.

(B) If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.

(C) The Insured shall cooperate with the Company and, upon the Company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the Insured because of bodily injury or property damage with respect to which insurance is afforded under this Policy; and the Insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

(D) Upon request of the Company the Insured shall, within a reasonable time after determining the amount of any loss submit to the Company an itemized proof of loss, duly sworn to.

31. **ASSISTANCE AND COOPERATION OF THE INSURED.** The Insured shall cooperate (except in a pecuniary manner) with the Company and, at the Company's request and expense, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of the casualty or event.

32. **DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS.** As respects any insurance afforded by the terms of this Policy, the Company shall:

(A) Defend in the name and on behalf of the Insured any suit against the Insured alleging injury, sickness or disease, damage or destruction, and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the Company;

The Company will pay, in addition to the applicable limit of liability:

(B) All expenses incurred by the Company, all costs taxed against the Insured in any suit defended by the Company and all interest on the entire amount of any judgment therein which does not exceed the limit of the Company's liability thereon;

(C) Premiums on appeal bonds required in any such suit, premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this Policy, and the cost of bail bonds required of the Insured because of accident or traffic law violation arising out of the use of any vehicle to which this Policy applies, but the Company shall have no obligation to apply for or furnish any such bonds;

(D) Expenses incurred by the Insured for first aid to others at the time of an accident, for bodily injury to which this Policy applies;

(E) Reasonable expenses incurred by the Insured at the Company's request, including actual loss of wages or salary (but not loss of other income) not to exceed $25 per day because of his attendance at hearings or trials at such request.

33. **ACTION AGAINST COMPANY.** No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this Policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by this Policy. No person or organization shall have any right under this Policy to join the Company as a party to any action against the Insured to determine the Insured's liability, nor shall the Company be impleaded by the Insured or his legal representative. Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of any of its obligations hereunder.

34. **SUBROGATION AND SALVAGE.**

(A) In the event of any payment under this Policy, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization, and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

(B) If the Insured shall sustain any loss covered by this Policy, which exceeds the applicable amount of insurance hereunder, the Insured shall be entitled to all recoveries (except from suretyship, insurance, reinsurance, security or indemnity taken by or for the benefit of the Company) by whomsoever made, on account of such loss under this Policy until fully reimbursed, less the actual cost of effecting the same; and any remainder shall be applied to the reimbursement of the Company.

35. **OTHER INSURANCE.** The insurance afforded by this Policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the Insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the Company's liability under this Policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the Company shall not be liable under this Policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(A) Contribution by Equal Shares. If all of such other valid and collectible insurance provides for contribution by equal shares the Company shall not be liable for a greater proportion of such loss than would be payable if each insurer

contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(B) Contribution by Limits. If any of such other insurance does not provide for contribution by equal shares, the Company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this Policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

36. ASSIGNMENT. Assignment of interest under this Policy shall not bind the Company until its consent is endorsed hereon; if however, the Named Insured shall die, such insurance as is afforded by this Policy shall apply (1) to the Named Insured's legal representative, as the Named Insured, but only while acting within the scope of his duties as such, and (2) with respect to the property of the Named Insured, to the person having proper temporary custody thereof, as Insured, but only until the appointment and qualification of the legal representative.

37. FRAUD AND MISREPRESENTATION. This Policy and its Insuring Agreements shall be void if the Insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or in case of any fraud, attempted fraud or false swearing by the Insured pertaining to this insurance or the subject thereof, whether before or after a loss. However, unintentional errors or omissions on the part of the Insured shall not operate to prejudice the rights of the Insured under this Policy and its Insuring Agreements.

38. FINANCIAL RESPONSIBILITY LAWS. When this Policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, such insurance as is afforded by this Policy for bodily injury liability or for property damage liability shall comply with the provisions of such law to the extent of the coverage and limits of liability required by such law. The Insured agrees to reimburse the Company for any payment made by the Company which it would not have been obligated to make under the terms of this Policy except for the agreement contained in this paragraph.

39. MULTI-YEAR POLICY. If this Policy is issued for a period of more than one year, the limits of the Company's liability shall apply separately to each consecutive annual period thereof.

40. DECLARATIONS. By acceptance of this Policy, the Named Insured agrees that the statements in the Declarations are his agreements and representations, that this Policy is issued in reliance upon the truth of such representations and that this Policy embodies all agreements existing between himself and the Company or any of its agents relating to this Policy.

GENERAL CONDITIONS 38, 39, and 40 apply only to those Insuring Agreements and Endorsements where so indicated therein.

In witness whereof, the Company(s) indicated in the Declarations, St. Paul, Minnesota, has caused this Policy to be executed and attested, but this Policy and any Insuring Agreement or Endorsement shall not be valid unless signed by an officer or an agent or an attorney-in-fact of the Company.

*Secretary.*                                                                                                       *President.*

SECTION II
PERSONAL INJURY LIABILITY

# INSURING AGREEMENT 49

| Forming Part of Policy No. | Effective Date of Insuring Agreement | Issued to: |
|---|---|---|
| 619NA0039 | 4-1-72 | Burke, Gerber, & Wilen |

## 1. SCHEDULE.

The insurance afforded is only with respect to personal injury arising out of an offense included within such of the following groups of offenses as are indicated by an X inserted in the box opposite the group of offenses.

☒ A. False Arrest, Detention or Imprisonment, or Malicious Prosecution;
☒ B. Libel, Slander, Defamation or Violation of Right of Privacy;
☒ C. Wrongful Entry or Eviction or Other Invasion of Right of Private Occupancy.

| Limits of Liability | | Insured's Participation |
|---|---|---|
| Each Person Aggregate | General Aggregate | |
| $100,000 | $300,000 | 0 % |

## 2. COVERAGE.

The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury (herein called "personal injury") sustained by any person or organization and arising out of one or more of the following offenses committed in the conduct of the Named Insured's business:

Group A.—false arrest, detention or imprisonment, or malicious prosecution;

Group B.—the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy; except publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the Named Insured;

Group C.—wrongful entry or eviction, or other invasion of the right of private occupancy;

if such offense is committed during the term of this Insuring Agreement within the United States of America, its territories or possessions, or Canada, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such personal injury even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

## 3. LIMITS OF LIABILITY—INSURED'S PARTICIPATION.

Regardless of the number of (1) Insureds under this Policy, (2) persons or organizations who sustain personal injury, or (3) claims made or suits brought on account of personal injury, the total liability of the Company for all damages because of all personal injury to which this coverage applies, sustained by any one person or organization, shall not exceed the limit of personal injury liability stated in the schedule as "each person aggregate".

Subject to the above provision respecting "each person aggregate", the total limit of the Company's liability under this coverage for all damages shall not exceed the limit of personal injury liability stated in the schedule "general aggregate".

If a participation percentage is stated in the schedule for the Insured, the Company shall not be liable for a greater proportion of any loss than the difference between such percentage and one hundred percent and the balance of the loss shall be borne by the Insured; provided the Company may pay the Insured's portion of a loss to effect settlement of the loss, and, upon notification of the action taken, the Named Insured shall promptly reimburse the Company therefor.

In Witness Whereof, the Company has caused this Insuring Agreement to be signed by its President at St. Paul, Minnesota and counter-signed by a duly authorized representative of the Company.

_____
Authorized Representative

*Carl B. Drake Jr.*
President.

Page 1 of 2

4. EXCLUSIONS.
   THIS INSURING AGREEMENT DOES NOT APPLY:
   A. To liability assumed by the Insured under any contract or agreement;
   B. To personal injury arising out of the wilful violation of a penal statute or ordinance committed by or with the knowledge or consent of any Insured;
   C. To personal injury sustained by any person as a result of an offense directly or indirectly related to the employment of such person by the Named Insured;
   D. To personal injury arising out of any publication or utterance described in Group B, if the first injurious publication or utterance of the same or similar material by or on behalf of the Named Insured was made prior to the effective date of this Insuring Agreement;
   E. To personal injury arising out of a publication or utterance described in Group B concerning any organization or business enterprise, or its products or services, made by or at the direction of any Insured with knowledge of the falsity thereof.

5. PERSONS INSURED.
   Each of the following is an Insured under this Insuring Agreement to the extent set forth below:
   A. If the Named Insured is designated in the schedule as an individual, the person so designated;
   B. If the Named Insured is designated in the schedule as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;
   C. If the Named Insured is designated in the schedule as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such.

   This Insuring Agreement does not apply to personal injury arising out of the conduct of any partnership or joint venture of which the Insured is a partner or member and which is not designated in this Policy as a Named Insured.

6. AMENDED DEFINITION.
   When used in reference to this Insuring Agreement:
   "Damages" means only those damages which are payable because of personal injury arising out of an offense to which this insurance applies.

7. APPLICABLE POLICY CONDITIONS.
   Paragraphs 39 and 40 of the General Conditions of the Policy and the Nuclear Energy Exclusion and Definitions Sections apply with respect to this Insuring Agreement.

8. INAPPLICABLE POLICY CONDITIONS.
   Paragraphs 32(a), 37 and 38 of the General Conditions of the Policy do not apply with respect to this Insuring Agreement.



RECEIVED
MAY 10 1972
HARRY COHEN INSURANCE AGENCY, INC.