

**COVER** POLICY

ST. PAUL FIRE AND MARINE INSURANCE COMPANY

Section I □   Section II □

ST. PAUL MERCURY INSURANCE COMPANY

Section I □   Section II □

St. Paul, Minnesota

*A CAPITAL STOCK COMPANY*

Coverage is provided as designated by an ☒

SERIES: 2000

BILLED

681NA0511

Former Policy No.

# DECLARATIONS

NAME AND MAILING ADDRESS OF INSURED (including zip code)
Burke, Gerber & Wilen
326 St. Paul Place, Baltimore, Maryland

| Effective Date of Policy* | | | Expiration Date of Policy* | | | THE NAMED INSURED IS: | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mo. | Day | Yr. | Mo. | Day | Yr. | Individual □ | Co-Partnership ☒ | Corporation □ | Joint Venture □ | Other: □ | |
| 4 | 1 | 72 | 4 | 1 | 75 | | | | | | |

*This Policy and each of its Insuring Agreements, unless otherwise indicated therein, shall take effect on the date indicated above.

TERMINATION OF PRIOR COVERAGE. The Insured by the acceptance of this Policy, gives notice to the Company terminating or cancelling prior bonds or policies as listed below. Such termination or cancellation to be effective as of the time this Policy and its Insuring Agreements become effective.

The Company, in consideration of the payment of the agreed premium(s) and subject to the terms of this Policy and its Insuring Agreements, agrees to indemnify or pay to or on behalf of the Insured in accordance with such Insuring Agreements, with respect to the occurrence of any of the therein-mentioned casualties or events during the policy period.

The limit of the Company's liability for each coverage of each Insuring Agreement or endorsement shall be as indicated therein, subject to all the terms of this Policy having reference thereto.

| PREMIUMS | PREPAID OR ANNUAL INSTALLMENTS | | | |
|---|---|---|---|---|
| | Advance Premium | Due at Inception | Due at Each Subsequent Anniv. | Total 3 Yr. |
| A. Subject to term rule. (including Provisional Premium if any) | $ | $ 213.00 | $ 213.00 | $ 639.00 |
| B. *Not subject to term rule. | $ | $ 1,794.00 | To Be Determined | |
| A and B Combined | $ | $ 2,007.00 | | |

* The Premium, if any. shown in Item B above is for one year only and is for the coverages shown below. Premiums for subsequent years will be determined at the rates in effect at each anniversary.

**Lawyers Professional Liability Coverage**
**Non-Owned Hired Car Coverage**

INSTALLMENT PLAN BILLING

| | DATE | PREMIUM | BY |
|---|---|---|---|
| nd | 4/3/73 | 1962 00 | |
| rd | 4/22/74 | 2085 ro | |
| th | | | |
| th | | | |

Countersignature Date 4-1-72   Agency at Baltimore, Maryland

Assignment of this Policy shall not be valid except with the written consent of this Company.
This Policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this Policy. together with such other provisions. stipulations and agreements as may be added hereto. as provided in this Policy.

Authorized R

**EXHIBIT**

STP 001166

## GENERAL CONDITIONS
### General Conditions applicable to Sections I and II

1. **POLICY PERIOD.** The policy period with respect to any Insuring Agreement shall begin at noon, standard time, on the effective date stated in the Declarations, and ends at noon, standard time on the expiration date stated in the Declarations, or the effective date of the cancellation of this Policy, as an entirety, or the cancellation of such Insuring Agreement, as hereinafter provided, whichever expiration or cancellation shall first occur. If subsequent to the date hereof, any Insuring Agreement is made a part of this Policy by mutual agreement, then the policy period, with respect to such Insuring Agreement, shall begin on the date stated therein, and if, prior to the cancellation of this Policy as an entirety, any Insuring Agreement is terminated, as hereinafter provided, then noon, standard time, of the effective date of such termination, shall be the end of the policy period, with respect to such Insuring Agreement. However, to the extent that coverage in this Policy replaces coverage in other policies terminating at 12:01 A.M. (standard time) on the inception date of this Policy, this Policy shall be effective at 12:01 A.M. (standard time) instead of at noon standard time.

2. **CANCELLATION.** This Policy or any of its Insuring Agreements may be cancelled by the Named Insured by surrender thereof to the Company or any of its authorized agents, or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. The Policy or any of its Insuring Agreements may be cancelled by the Company by mailing to the Named Insured at the address shown in this Policy written notice stating when not less than Ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender, or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Named Insured or by the Company shall be equivalent to mailing.

    If the Named Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

3. **INSPECTION AND AUDIT.** The Company shall be permitted but not obligated to inspect the Named Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe.

    The Company may examine and audit the Named Insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this Policy, as far as they relate to the subject matter of this insurance.

4. **SPECIAL STATUTES.** Any and all terms of this Policy which are in conflict with the statutes of any state in which coverage is granted are understood, declared and acknowledged by the Company to be amended to conform with such statutes.

5. **PROVISIONS REQUIRED BY LAW TO BE STATED IN THIS POLICY.** "This Policy is issued under and in pursuance of the Laws of the State of Minnesota, relating to Guaranty Surplus and Special Reserve Funds." Chapter 437, General Laws of 1909. (This provision applies only if the Policy is issued in the St. Paul Fire and Marine Insurance Company.)

### General Conditions application to Section I.

6. **LIBERALIZATION CLAUSE.** If during the period that insurance is in force under this Policy or within 45 days prior to the inception date thereof, on behalf of the Company there be adopted, or filed with and approved or accepted by the insurance supervisory authorities, all in conformity with law, any changes in this Policy by which this form of insurance could be extended or broadened without increased premium charge by endorsement or substitution of form then such extended or broadened insurance shall inure to the benefit of the Insured hereunder as though such endorsement or substitution of form had been made.

7. **BENEFIT OF INSURANCE.** This insurance shall in no wise inure directly or indirectly to the benefit of any carrier or bailee other than the Named Insured.

### GENERAL CONDITIONS 8 THROUGH 25
### APPLY TO INLAND MARINE INSURING AGREEMENTS ONLY

8. **PREMIUM.** The premium for which this Policy is written shall be an estimated premium only. At the end of each annual period the earned premium shall be computed in accordance with the terms agreed upon. If the earned premium thus computed, exceeds the premium paid, the Insured shall pay the excess to the Company; if less, the Company shall return to the Insured the unearned portion paid, subject, however, to the agreed upon annual minimum premium.

    The Named Insured shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to the Company at the end of the policy period and at such times during the policy period as the Company may direct.

9. **LIMIT OF LIABILITY.** The limit(s) of the Company's liability as expressed in this Policy shall not be:

    (A) Cumulative from year to year, or period to period, regardless of the number of premiums paid or payable;

    (B) Increased by the inclusion herein of, or by reference herein to, more than one party in interest as the Insured, the one first named being deemed the Named Insured and authorized agent of and entitled to priority over the others for all purposes of this Policy, and if the Named Insured ceases to be covered hereunder the one next named shall thereafter be deemed the Named Insured.

10. **CHANGES.** Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Policy or estop the Company from asserting any right under the terms of this Policy; nor shall the terms of this Policy be waived or changed, except by endorsement issued to form part of this Policy, signed by an Officer and countersigned by an agent of the Company.

11. **LOSS REPORTING AND ADJUSMENT.**
   (A) The Insured shall as soon as practicable report to the Company or its agent every loss or damage which may become a claim under this Policy and shall also file with the Company or its agent within ninety (90) days from date of loss a detailed sworn proof of loss. Failure by the Insured to report the said loss or damage and to file such sworn proof of loss as hereinbefore provided shall invalidate any claim under this Policy for such loss.
   (B) The Insured shall submit, and so far as is within his or their power cause all other persons interested in the property and members of the household and employees to submit, to examinations under oath by any persons named by the Company, relative to any and all matters in connection with a claim and subscribe the same; and shall produce for examination all books of account, bills, invoices, and other vouchers or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by the Company or its representatives, and shall permit extracts and copies thereof to be made.
   (C) Unless otherwise provided in an Insuring Agreement made a part of this Policy, the Company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs and the loss or damage shall be ascertained or estimated according to such actual cash value with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost to repair or replace the same with material of like kind and quality nor the invoice value whichever may be lesser.
   (D) All adjusted claims shall be paid or made good to the Insured within sixty (60) days after presentation and acceptance of satisfactory proof of interest and loss at the office of the Company.
   (E) The Company shall not be liable for loss caused by neglect of the Insured to use all reasonable care to save and preserve the property at and after any disaster insured against.

12. **SUBROGATION AND SALVAGE.**
   (A) In the event of any payment under this Policy, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization, and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.
   (B) If the Insured shall sustain any loss covered by this Policy, which exceeds the applicable amount of insurance hereunder, the Insured shall be entitled to all recoveries (except from suretyship, insurance, reinsurance, security or indemnity taken by or for the benefit of the Company) by whomsoever made, on account of such loss under this Policy until fully reimbursed, less the actual cost of effecting the same; and any remainder shall be applied to the reimbursement of the Company.

13. **NO ADDITIONAL PREMIUM.** Payment by the Company of any obligation hereunder shall not entitle the Company to an additional or reinstatement premium unless otherwise stated in the Insuring Agreement providing for such payment.

14. **ASSIGNMENT.** Assignment of interest under this Policy shall not bind the Company until its consent is endorsed hereon; if, however, the Named Insured shall die, such insurance as is afforded by this Policy shall apply (1) to the Named Insured's legal representative, as the Named Insured, but only while acting within the scope of his duties as such, and (2) with respect to the property of the Named Insured, to the person having proper temporary custody thereof, as Insured, but only until the appointment and qualification of the legal representative.

15. **FRAUD AND MISREPRESENTATION.** This Policy and its Insuring Agreements shall be void if the Insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or in case of any fraud, attempted fraud or false swearing by the Insured pertaining to this insurance or the subject thereof, whether before or after a loss. However, unintentional errors or omissions on the part of the Insured shall not operate to prejudice the rights of the Insured under this Policy and its Insuring Agreements.

16. **OTHER INSURANCE.** No Insuring Agreement hereof shall apply to any loss if the Insured is, or would be but for the existence of such Insuring Agreement, insured against such loss under any other policy or policies, except as respects any excess beyond the amount which would have been payable under any other policy or policies, had such Insuring Agreement not been effective.

17. **WAR EXCLUSION.** This Policy does not insure against loss or damage caused by or resulting from:
   (A) Hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual impending or expected attack, (1) by any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces; or (2) by military, naval or air forces; or (3) by an agent of any such government, power, authority or forces;
   (B) Any weapon of war employing atomic fission or radioactive force whether in time of peace or war;
   (C) Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an occurrence, seizure or destruction under quarantine or Customs regulations, confiscation by order of any government or public authority, or risks of contraband or illegal transportation or trade.

18. **NUCLEAR EXCLUSION.** If any Inland Marine Insuring Agreement of this Policy insures against the peril of Fire, Clause (A) below shall apply, but if the Insuring Agreement does not insure against the peril of Fire, Clause (B) below shall apply as follows:
   (A) The Company shall not be liable for loss by nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this Policy; however, subject to the foregoing and its provisions of this Policy, direct loss by fire resulting from nuclear reaction or nuclear radiation or radioactive contamination is insured against by this Policy;
   (B) The Company shall not be liable for loss by nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this Policy.

STP 001168

19. **PAIR AND SET CLAUSE.** It is understood and agreed that, in the event of loss of or damage to any article or articles which are a part of a set, the measure of the loss of or damage to such article or articles shall be a reasonable and fair proportion of the total value of the set, giving consideration to the importance of said article or articles; but in no event shall such loss or damage be construed to mean total loss of set.

20. **MACHINERY CLAUSE.** In case of loss or injury to any part of the insured property consisting, when complete for sale or use, of several parts, the Company shall only be liable for the insured value of the part lost or damaged.

21. **LABEL CLAUSE.** In cases of damage to labels only, the loss shall be adjusted on the basis of an amount sufficient to pay the cost of new labels and relabeling the goods.

22. **LIVE ANIMAL CLAUSE.** Live animals if insured hereunder are insured against risk of mortality only, directly caused by the perils named in the Policy. No claim to be made on these Insurers on any animal able to walk from the conveyance or able to walk after unloading therefrom. Insurers to have full benefit of salvage in the event of valid claim hereunder.

23. **SUE AND LABOR CLAUSE.** In case of loss or damage, it shall be lawful and necessary for the Insured, his or their factors, servants and assigns, to sue, labor, and travel for, in and about the defense, safeguard and recovery of the property insured hereunder, or any part thereof without prejudice to this insurance; nor shall the acts of the Insured or the Company, in recovering, saving and preserving the property insured in case of loss or damage, be considered a waiver or an acceptance of abandonment; to the charge whereof the Company will contribute according to the rate and quantity of the sum herein insured.

24. **SUIT CLAUSE.** No suit, action or proceeding for the recovery of any claim this Policy shall be sustainable in any court of law or equity unless the same be commenced within twelve (12) months next after discovery by the Insured of the occurrence which gives rise to the claim. Provided, however, that if by the laws of the State within which this Policy is issued such limitation is invalid, then any such claims shall be void unless such action, suit or proceeding be commenced within the shortest limit of time permitted by the laws of such State to be fixed herein.

25. **ARBITRATION CLAUSE.** If the Insured and the Company fail to agree as to the amount of loss, each shall, on the written demand of either, made within sixty days after receipt of proof of loss by the Company, select a competent and disinterested appraiser, and the appraisal shall be made at a reasonable time and place. The appraisers shall first select a competent and disinterested umpire, and failing for fifteen days to agree upon such umpire, then, on the request of the Insured or the Company, such umpire shall be selected by a judge of a court of record in the state in which such appraisal is pending. The appraisers shall then appraise the loss, stating separately the actual cash value at the time of loss and the amount of loss, and failing to agree shall submit their differences to the umpire. An award in writing of any two shall determine the amount of loss. The Insured and the Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and umpire. The Company shall not be held to have waived any of its rights by any act relating to appraisal.

## General Conditions Applicable to Section II

26. **PREMIUM.** The premium for which this Policy is written shall be an estimated premium only. At the end of each annual period the earned premium shall be computed in accordance with the terms agreed upon. If the earned premium thus computed, exceeds the premium paid, the Insured shall pay the excess to the Company; if less, the Company shall return to the Insured the unearned portion paid, subject, however, to the agreed upon annual minimum premium.

The Named Insured shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to the Company at the end of the policy period and at such times during the policy period as the Company may direct.

27. **LIMIT OF LIABILITY.** The limit(s) of the Company's liability as expressed in this Policy shall not be:
    (A) Cumulative from year to year, or period to period, regardless of the number of premiums paid or payable;
    (B) Increased by the inclusion herein of, or by reference herein to, more than one party in interest as the Insured, the one first named being deemed the Named Insured and authorized agent of and entitled to priority over the others for all purposes of this Policy, and if the Named Insured ceases to be covered hereunder the one next named thereafter be deemed the Named Insured.

28. **CHANGES.** Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Policy or estop the Company from asserting any right under the terms of this Policy; nor shall the terms of this Policy be waived or changed, except by endorsement issued to form part of this Policy, signed by an Officer and countersigned by an agent of the Company.

29. **NO ADDITIONAL PREMIUM.** Payment by the Company of any obligation hereunder shall not entitle the Company to an additional or reinstatement premium unless otherwise stated in the Insuring Agreement providing for such payment.

30. **INSURED'S DUTIES IN THE EVENT OF LOSS, OCCURRENCE, CLAIM OR SUIT.**
    (A) Upon the occurrence of any casualty or event for which coverage is afforded by this Policy, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to the Company or any of its authorized agents as soon as practicable. The Named Insured shall promptly take at his expense all reasonable steps to prevent other bodily injury or property damage from arising out of the same or similar conditions, but such expense shall not be recoverable under this Policy.

**STP 001169**

(B) If claim is made or suit is br    it against the Insured, the Insured shall imme      ly forward to the Company every demand, notice, summons or c...er process received by him or his respresentativ.

(C) The Insured shall cooperate with the Company and, upon the Company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the Insured because of bodily injury or property damage with respect to which insurance is afforded under this Policy; and the Insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

(D) Upon request of the Company the Insured shall, within a reasonable time after determining the amount of any loss submit to the Company an itemized proof of loss, duly sworn to.

31. ASSISTANCE AND COOPERATION OF THE INSURED. The Insured shall cooperate (except in a pecuniary manner) with the Company and, at the Company's request and expense, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of the casualty or event.

32. DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS. As respects any insurance afforded by the terms of this Policy, the Company shall:

(A) Defend in the name and on behalf of the Insured any suit against the Insured alleging injury, sickness or disease, damage or destruction, and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the Company;

The Company will pay, in addition to the applicable limit of liability:

(B) All expenses incurred by the Company, all costs taxed against the Insured in any suit defended by the Company and all interest on the entire amount of any judgment therein which does not exceed the limit of the Company's liability thereon;

(C) Premiums on appeal bonds required in any such suit, premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this Policy, and the cost of bail bonds required of the Insured because of accident or traffic law violation arising out of the use of any vehicle to which this Policy applies, but the Company shall have no obligation to apply for or furnish any such bonds;

(D) Expenses incurred by the Insured for first aid to others at the time of an accident, for bodily injury to which this Policy applies;

(E) Reasonable expenses incurred by the Insured at the Company's request, including actual loss of wages or salary (but not loss of other income) not to exceed $25 per day because of his attendance at hearings or trials at such request.

33. ACTION AGAINST COMPANY. No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this Policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by this Policy. No person or organization shall have any right under this Policy to join the Company as a party to any action against the Insured to determine the Insured's liability, nor shall the Company be impleaded by the Insured or his legal representative. Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of any of its obligations hereunder.

34. SUBROGATION AND SALVAGE.

(A) In the event of any payment under this Policy, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization, and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

(B) If the Insured shall sustain any loss covered by this Policy, which exceeds the applicable amount of insurance hereunder, the Insured shall be entitled to all recoveries (except from suretyship, insurance, reinsurance, security or indemnity taken by or for the benefit of the Company) by whomsoever made, on account of such loss under this Policy until fully reimbursed, less the actual cost of effecting the same; and any remainder shall be applied to the reimbursement of the Company.

35. OTHER INSURANCE. The insurance afforded by this Policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the Insured has other insurance which is [...] to be applicable to the loss on an excess or contingent basis, the amount of the Company's liability under this Poli[...] not be reduced by the existence of such other insurance.

When both this insurance [...] other insurance apply to the loss on the same basis, whether primary, excess or contingent, the Company shall not be liable under this Policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(A) Contribution by Equal Shares. If all of such other valid and collectible insurance provides for contribution by equal shares the Company shall not be liable for a greater proportion of such loss than would be payable if each insurer

HARRY COHEN INSURANCE AGENCY, INC.

STP 001170

GENERAL CONDITIONS

Page 4 of 5

contributes an equal share, the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(B) **Contribution by Limits.** If any of such other insurance does not provide for contribution by equal shares, the Company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this Policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

36. **ASSIGNMENT.** Assignment of interest under this Policy shall not bind the Company until its consent is endorsed hereon; if however, the Named Insured shall die, such insurance as is afforded by this Policy shall apply (1) to the Named Insured's legal representative, as the Named Insured, but only while acting within the scope of his duties as such, and (2) with respect to the property of the Named Insured, to the person having proper temporary custody thereof, as Insured, but only until the appointment and qualification of the legal representative.

37. **FRAUD AND MISREPRESENTATION.** This Policy and its Insuring Agreements shall be void if the Insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or in case of any fraud, attempted fraud or false swearing by the Insured pertaining to this insurance or the subject thereof, whether before or after a loss. However, unintentional errors or omissions on the part of the Insured shall not operate to prejudice the rights of the Insured under this Policy and its Insuring Agreements.

38. **FINANCIAL RESPONSIBILITY LAWS.** When this Policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, such insurance as is afforded by this Policy for bodily injury liability or for property damage liability shall comply with the provisions of such law to the extent of the coverage and limits of liability required by such law. The Insured agrees to reimburse the Company for any payment made by the Company which it would not have been obligated to make under the terms of this Policy except for the agreement contained in this paragraph.

39. **MULTI-YEAR POLICY.** If this Policy is issued for a period of more than one year, the limits of the Company's liability shall apply separately to each consecutive annual period thereof.

40. **DECLARATIONS.** By acceptance of this Policy, the Named Insured agrees that the statements in the Declarations are his agreements and representations, that this Policy is issued in reliance upon the truth of such representations and that this Policy embodies all agreements existing between himself and the Company or any of its agents relating to this Policy.

GENERAL CONDITIONS 38, 39, and 40 apply only to those Insuring Agreements and Endorsements where so indicated therein.

In witness whereof, the Company(s) indicated in the Declarations, St. Paul, Minnesota, has caused this Policy to be executed and attested, but this Policy and any Insuring Agreement or Endorsement shall not be valid unless signed by an officer or an agent or an attorney-in-fact of the Company.

*Secretary.*

*Carl B. Drake Jr*
*President.*

STP 001171

SECTION II
EXCLUSIONS

LAWYERS
PROFESSIONAL
LIABILITY

**COVER**
**POLICY**

# INSURING AGREEMENT 43

| Forming Part of Policy No. | Effective Date of Insuring Agreement | Issued to: |
|---|---|---|
| 619NA0039 | 4-1-74 | Burke, Gerber & Wilen |

1. **SCHEDULE:**

| LIMITS OF LIABILITY | DEDUCTIBLE |
|---|---|
| Each Occurrence | Amount |
| $ 100,000.00 | $ 500.00 |

Stipulation. The Insured has no partner of any kind, in the practice of law, as of the inception date or any anniversary date of this Insuring Agreement except as stated below:

All Lawyers Who Are Members of the Partnership **Henry G. Burke, Stanley H. Wilen, Arthur C. Strasburger, Catherine F. Oppenheim, Franklin Goldsten, Irving F.**
Lawyers Not Members of the Partnership **Conn, Bernard S. Denick, Leonard Kohlenstein**

2. **COVERAGE.**
The Company agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages arising out of the performance of professional services for others in the Insured's capacity as a lawyer and caused by the Insured or any other person for whose acts the Insured is legally liable. (The performance of professional services shall be deemed to include the Insured's acts as an administrator, conservator, executor, guardian, trustee or any similar fiduciary capacity, but only to the extent for which in the usual attorney-client relationship the Insured would be legally responsible as attorney for a fiduciary.)

3. **DEDUCTIBLE.**
It is agreed that in the event of a claim the amount indicated in the Schedule shall be deducted from the total amount resulting from each occurrence and the Company shall be liable only for the difference between such deductible amount and the amount of insurance otherwise applicable to each claim. Such deductible amount shall not apply to the coverage provided under General Condition 32, Defense, Settlement, Supplementary Payments of this Policy or Special Condition C of this Insuring Agreement.

4. **LIMIT OF LIABILITY**
The limit of liability stated in the Schedule as applicable to "each occurrence" is the limit of the Company's liability for all damages arising out of the same professional services regardless of the number of claims or claimants. If more than one insured is included in this Insuring Agreement the limit of liability shall apply separately to each.

STP 001172

In Witness Whereof, the Company has caused this Insuring Agreement to be signed by its President at St. Paul, Minnesota and counter-signed by a duly authorized representative of the Company

_____
Authorized Representative

*Carl B. Drake Jr.*
President.

REVISED
INSURING AGREEMENT 43

21108 Ed. 10-71 Printed in U.S.A.

Page 1 of 2



**SECTION II**

**5. EXCLUSIONS.**

**THIS INSURING AGREEMENT DOES NOT APPLY:**

    A.  To any dishonest, fraudulent, criminal, malicious act or omission of the Insured, any partner or employee;

    B.  To the conduct of any business enterprise owned by the Insured or in which the Insured is a partner, or which is controlled, operated or managed by the Insured, either individually or in a fiduciary capacity, including the ownership, maintenance or use of any property in connection therewith;

    C.  To bodily injury to, or sickness, disease or death of any person, or to injury to or destruction of any tangible property, including the loss of use thereof.

**6. SPECIAL CONDITIONS.**

    A.  Defense, Settlement, Supplementary Payments. As respects such insurance as is afforded by the other terms of this Insuring Agreement the Company shall (a) defend in his name and behalf any suit against the Insured alleging damages, even if such suit is groundless, false or fraudulent; but the Company shall have the right to make such investigation and negotiation of any claim or suit as may be deemed expedient by the Company. The Company, however, shall not make settlement or compromise any claim or suit without the written consent of the Insured;

    B.  Definition of "Insured". The word "Insured" shall mean (1) each lawyer and the partnership named in the Schedule (2) any additional lawyers employed during the period of this Insuring Agreement by the Insured or by the partnership, if this Insuring Agreement at the effective date thereof and as of each anniversary date included as Insureds all lawyers employed by the Insured or by the partnership (3) any change in the partnership described above and any additional lawyers who during the period of this Insuring Agreement become partners thereof;

    C.  Policy Period; Territory. This Insuring Agreement applies within the United States of America, its territories or possessions or Canada to professional services performed for others (1) during the period of this Insuring Agreement (2) prior to the effective date of this Insuring Agreement if claim is made or suit is brought during the period of this Insuring Agreement and providing the Insured had no knowledge or could not have reasonably foreseen any circumstances which might result in a claim or suit at the effective date of this Insuring Agreement. With respect to an Insured who becomes an Insured under this Insuring Agreement subsequent to its effective date, the Insuring Agreement period under (1) and (2) shall begin as of that effective date;

    D.  Other Insurance. If the Insured has other insurance against a loss covered by this Insuring Agreement, the Company shall not be liable under this Insuring Agreement for a greater proportion of such loss than the applicable limit of liability stated in the Schedule bears to the total limit of liability of all valid and collctible insurance against such loss. However, with respect to professional services rendered prior to the effective date of this Insuring Agreement the insurance hereunder shall apply only as excess insurance over any other valid and collectible insurance and shall then apply only if the amount by which the applicable limit of liability of this Insuring Agreement exceeds the sum of the applicable limits of liability of all such other insurance;

    E.  Subrogation. In the event of any payment under this Insuring Agreement, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization (excluding any employees of the Insured) and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights;

**7. APPLICABLE POLICY CONDITIONS.**

    Paragraph 40 of the General Conditions of this policy applies to this Insuring Agreement.

**8. INAPPLICABLE POLICY CONDITIONS.**

    Paragraphs 32A, 34A and 35 of the General Conditions of this Policy do not apply with respect to this Insuring Agreement.

RECEIVED

APR 1 7 1974

HARRY COHEN INSURANCE AGENCY, INC.

STP 001173

COVER POLICY

# INSURING AGREEMENT 43

| Forming Part of Policy No. | Effective Date of Insuring Agreement | Issued to: |
|---|---|---|
| 619NA0039 | 4-1-72 | Burke, Gerber & Wilen |

## 1. SCHEDULE.

| LIMITS OF LIABILITY Each Occurrence | DEDUCTIBLE Amount |
|---|---|
| $ 100,000.00 | $ 2,500.00 |

Stipulation. The Insured has no partner of any kind, in the practice of law, as of the inception date or any anniversary date of this Insuring Agreement except as stated below:

All Lawyers Who Are Members of the Partnership Henry G. Burke, David Gerber, Stanley H. Wilen, Arthur C. Strasburger, Catherine F. Oppenheim, Franklin Goldstei

Lawyers Not Members of the Partnership Irving F. Cohn, Bernard S. Denick

## 2. COVERAGE.

The Company agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages arising out of the performance of professional services for, others in, the Insured's capacity as a lawyer and caused by the Insured or any other person for whose acts the Insured is legally liable. (The performance of professional services shall be deemed to include the Insured's acts as an administrator, conservator, executor, guardian, trustee or any similar fiduciary capacity, but only to the extent for which in the usual attorney-client relationship the Insured would be legally responsible as attorney for a fiduciary.)

## 3. DEDUCTIBLE.

It is agreed that in the event of a claim the amount indicated in the Schedule shall be deducted from the total amount resulting from each occurrence and the Company shall be liable only for the difference between such deductible amount and the amount of insurance otherwise applicable to each claim. Such deductible amount shall not apply to the coverage provided under General Condition 32, Defense, Settlement, Supplementary Payments of this Policy, or Special Condition C of this Insuring Agreement.

## 4. LIMIT OF LIABILITY.

The limit of liability stated in the Schedule as applicable to "each occurrence" is the limit of the Company's liability for all damages arising out of the same professional services regardless of the number of claims or claimants. If more than one insured is included in this Insuring Agreement the limit of liability shall apply separately to each.

In Witness Whereof, the Company has caused this Insuring Agreement to be signed by its President at St. Paul, Minnesota and counter-signed by a duly authorized representative of the Company.

_____
Authorized Representative

President

21108 Ed. 10-71 Printed in U.S.A.

**INSURING AGREEMENT 43**

Page 1 of 2

STP 001174

SECTION II.

5.   EXCLUSIONS.
THIS INSURING AGREEMENT DOES NOT APPLY:

A.   To any dishonest, fraudulent, criminal, malicious act or omission of the Insured, any partner or employee;

B.   To the conduct of any business enterprise owned by the Insured or in which the Insured is a partner, or which is controlled, operated or managed by the Insured, either individually or in a fiduciary capacity, including the ownership, maintenance or use of any property in connection therewith;

C.   To bodily injury to, or sickness, disease or death of any person, or to injury to or destruction of any tangible property, including the loss of use thereof.

6.   SPECIAL CONDITIONS.

A.   Defense, Settlement, Supplementary Payments. As respects such insurance as is afforded by the other terms of this Insuring Agreement the Company shall (a) defend in his name and behalf any suit against the Insured alleging damages, even if such suit is groundless, false or fraudulent; but the Company shall have the right to make such investigation and negotiation of any claim or suit as may be deemed expedient by the Company. The Company, however, shall not make settlement or compromise any claim or suit without the written consent of the Insured;

B.   Definition of "Insured". The word "Insured" shall mean (1) each lawyer and the partnership named in the Schedule (2) any additional lawyers employed during the period of this Insuring Agreement by the Insured or by the partnership, if this Insuring Agreement at the effective date thereof and as of each anniversary date included as Insureds all lawyers employed by the Insured or by the partnership (3) any change in the partnership described above and any additional lawyers who during the period of this Insuring Agreement become partners thereof;

C.   Policy Period; Territory. This Insuring Agreement applies within the United States of America, its territories or possessions or Canada to professional services performed for others (1) during the period of this Insuring Agreement (2) prior to the effective date of this Insuring Agreement if claim is made or suit is brought during the period of this Insuring Agreement and providing the Insured had no knowledge or could not have reasonably foreseen any circumstances which might result in a claim or suit at the effective date of this Insuring Agreement. With respect to an Insured who becomes an Insured under this Insuring Agreement subsequent to its effective date, the Insuring Agreement period under (1) and (2) shall begin as of that effective date;

D.   Other Insurance. If the Insured has other insurance against a loss covered by this Insuring Agreement, the Company shall not be liable under this Insuring Agreement for a greater proportion of such loss than the applicable limit of liability stated in the Schedule bears to the total limit of liability of all valid and collectible insurance against such loss. However, with respect to professional services rendered prior to the effective date of this Insuring Agreement the insurance hereunder shall apply only as excess insurance over any other valid and collectible insurance and shall then apply only if the amount by which the applicable limit of liability of this Insuring Agreement exceeds the sum of the applicable limits of liability of all such other insurance;

E.   Subrogation. In the event of any payment under this Insuring Agreement, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization (excluding any employees of the Insured) and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

7.   APPLICABLE POLICY CONDITIONS.
Paragraph 40 of the General Conditions of this policy applies to this Insuring Agreement

8.   INAPPLICABLE POLICY CONDITIONS.
Paragraphs 32A, 34A and 35 of the General Conditions of this Policy do not apply with respect to this Insuring Agreement.

RECEIVED
MAY 1 0 1972

HARRY COHEN INSURANCE AGENCY, INC.

STP 001175



SECTION II
COMPREHENSIVE GENERAL
AND AUTOMOBILE
LIABILITY COVERAGE

# INSURING AGREEMENT 36

| Forming Part of Policy No | Effective Date of Insuring Agreement | Issued to: |
|---|---|---|
| 619NA0039 | 4-1-72 | Burke, Gerber & Wilen |

1.  SCHEDULE.

The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific limit of liability.

| COVERAGES | LIMITS OF LIABILITY | | |
|---|---|---|---|
| A. Automobile Bodily Injury Liability | Each Person $ 100,000 | Each Occurrence $ 300,000 | |
| B. Bodily Injury Liability Other Than Automobile | Each Person $ 200,000 | Each Occurrence $ 500,000 | Aggregate $ |
| C. Automobile Property Damage Liability | | Each Occurrence $ 10,000 | |
| D. Property Damage Liability Other Than Automobile | | Each Occurrence $ 100,000 | Aggregate $ |

$ ___NIL___ Deductible per claim under Coverage D.

If an "X" is inserted in the box opposite any of the optional exclusions, such exclusions as set forth in this Insuring Agreement shall apply to the insurance afforded.

☒ (Optional Exclusion 1) Owned Automobile Exclusion;
☒ (Optional Exclusion 2) Products and Completed Operations Exclusion;
☐ (Optional Exclusion 3) Explosion Hazard Exclusion;
☐ (Optional Exclusion 4) Collapse Hazard Exclusion;
☐ (Optional Exclusion 5) Underground Property Damage Hazard Exclusion.

If an "X" is inserted in the box opposite any of the following Malpractice and Professional Services  exclusions, such exclusions shall apply to the insurance afforded under Coverages B and D of this Insuring Agreement.

(G314)

☐ It is agreed that this Insuring Agreement does not apply to bodily injury or property damage due to:

    A.  The rendering of or failure to render:

        (1)  Medical, surgical, dental, x-ray or nursing service or treatment, or the furnishing of food or beverages in connection therewith;

        (2)  Any service or treatment conducive to health or of a professional nature; or

        (3)  Any cosmetic or tonsorial service or treatment;

    B.  The furnishing or dispensing of drugs, or medical, dental or surgical supplies or appliances;

    C.  The handling of or performing of autopsies on dead bodies.

(G315)

☐ It is agreed that this Insuring Agreement does not apply to bodily injury or property damage due to the rendering of or failure to render any cosmetic, ear piercing, tonsorial, message, physiotherapy, chiropody, hearing aid, optical or optometrical services or treatments.

(G316)

☒ It is agreed that this Insuring Agreement does not apply to bodily injury or property damage due to the rendering of or failure to render any professional service.

In Witness Whereof, the Company has caused this Insuring Agreement to be signed by its President at St. Paul, Minnesota and counter-signed by a duly authorized representative of the Company

_____
Authorized Representative

*Carl B. Drake Jr.*
President.

STP 001176

2. **COVERAGES.**

    A. Coverage A; Automobile Bodily Injury Liability.

      Coverage C; Automobile Property Damage Liability.

      The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of:

      Coverage A. Bodily injury; or

      Coverage C. Property damage;

to which this Insuring Agreement applies, caused by an occurrence and arising out of the ownership, maintenance or use, including loading and unloading, of any automobile, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

    B. Coverage B; Bodily Injury Liability Other Than Automobile;.

      Coverage D; Property Damage Liability Other Than Automobile.

      The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of:

      Coverage B. Bodily injury; or

      Coverage D. Property damage;

to which this Insuring Agreement applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

3. **EXCLUSIONS.**

THIS INSURING AGREEMENT DOES NOT APPLY:

As respects Coverages A and C.

    A. To liability assumed by the Insured under any contract or agreement;

    B. To any obligation for which the Insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

    C. To bodily injury to any employee of the Insured arising out of and in the course of his employment by the insured, but this exclusion does not apply to any such injury arising out of and in the course of domestic employment by the Insured unless benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law;

    D. To property damage to:

      (1) Property owned or being transported by the Insured; or

      (2) Property rented to or in the care, custody or control of the Insured, or as to which the Insured is for any purpose exercising physical control, other than property damage to a residence or private garage by a private passenger automobile covered by this Insuring Agreement;

    E. To bodily injury due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing, with respect to expenses for first aid under the Supplementary Payments General Condition 32(d);

As respects Coverages B and D.

    F. To liability assumed by the Insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or qualify of the Named Insured's products or a warranty that work performed by or on behalf of the Named Insured will be done in a workmanlike manner;

**STP 001177**

G. To bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of:

   (1) Any automobile or aircraft owned or operated by or rented to the Named Insured; or

   (2) Any other automobile or aircraft operated by any person in the course of his employment by the Named Insured;

but this exclusion does not apply to the parking of an automobile on premises owned by, rented to or controlled by the Named Insured or the ways immediately adjoining, if such automobile is not owned by or loaned to the Named Insured;

H. To bodily injury or property damage arising out of and in the course of the transportation of mobile equipment by an automobile owned or operated by or rented or loaned to the Named Insured;

I. To bodily injury or property damage due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing, with respect to:

   (1) Liability assumed by the Insured under an incidental contract; or

   (2) Expenses for first aid under the Supplementary Payments General Condition 32(d);

J. To bodily injury or property damage for which the Insured or his indemnitee may be held liable, as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages or as an owner or lessor of premises used for such purposes, by reason of the selling, serving or giving of any alcoholic beverage:

   (1) In violation of any statute, ordinance or regulation;

   (2) To a minor;

   (3) To a person under the influence of alcohol; or

   (4) Which causes or contributes to the intoxication of any person;

K. To any obligation for which the Insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

L. To bodily injury to any employee of the Insured arising out of and in the course of his employment by the Insured; but this exclusion does not apply to liability assumed by the Insured under an incidental contract;

M. To property damage to:

   (1) Property owned or occupied by or rented to the Insured;

   (2) Property used by the Insured; or

   (3) Property in the care, custody or control of the Insured or as to which the Insured is for any purpose exercising physical control;

but parts (2) and (3) of this exclusion do not apply with respect to liability under a written sidetrack agreement and part (3) of this exclusion does not apply with respect to property damage (other than to elevators) arising out of the use of an elevator at premises owned by, rented to or controlled by the Named Insured;

N. To property damage to premises alienated by the Named Insured arising out of such premises or any part thereof;

O. To bodily injury or property damage resulting from the failure of the Named Insured's products or work completed by or for the Named Insured to perform the function or serve the purposes intended by the Named Insured, if such failure is due to a mistake or deficiency in any design, formula, plan, specifications, advertising material or printed instructions prepared or developed by any Insured; but this exclusion does not apply to bodily injury or property damage resulting from the active malfunctioning of such products or work;

P. To property damage to the Named Insured's products arising out of such products or any part of such products;

Q. To property damage to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

R. To damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the Named Insured's products or work completed by or for the Named Insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein.

RECEIVED

MAY 1 0 1972

HARRY COHEN INSURANCE AGENCY, INC.

STP 001178

4.  OPTIONAL EXCLUSIONS

(None of the following exclusions shall apply to the insurance provided by this Insuring Agreement unless an "X" has been inserted in the box opposite the appropriate exclusion in the Schedule.)

THIS INSURING AGREEMENT DOES NOT APPLY:

(1)  Owned Automobile Exclusion.

Under Coverages A and C to any automobiles:

(a)  Owned by the Insured; or

(b)  Leased by the Insured for a period of one year or longer;

(2)  Products and Completed Operations Hazard Exclusion.

Under Coverages B and D to bodily injury or property damage included within the Completed Operations Hazard or the Products Hazard;

(3)  Explosion Hazard Exclusion.

Under Coverage D to property damage included within the explosion hazard in connection with operations which are subject to this exclusion in the Company's manual;

(4)  Collapse Hazard Exclusions.

Under Coverage D to property damage included within the collapse hazard in connection with operations which are subject to this exclusion in the Company's manual;

(5)  Underground Property Damage Hazard Exclusion.

Under Coverage D to property damage included within the underground property damage hazard in connection with operations which are subject to this exclusion in the Company's manual.

5.  SPECIAL CONDITIONS.

A.  Persons Insured.

Each of the following is an Insured under this Insuring Agreement to the extent set forth below:

As respects Coverages A and C.

(a)  The Named Insured;

(b)  Any partner or executive officer thereof, but with respect to a non-owned automobile only while such automobile is being used in the business of the Named Insured;

(c)  Any other person while using an owned automobile or a hired automobile with the permission of the Named Insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to bodily injury or property damage arising out of the loading or unloading thereof, such other person shall be an Insured only if he is:

(1)  A lessee or borrower of the automobile; or

(2)  An employee of the Named Insured or of such lessee or borrower;

(d)  Any other person or organization but only with respect to his or its liability because of acts or omissions of an Insured under (a), (b) or (c) above;

None of the following is an Insured:

(i)  Any person while engaged in the business of his employer with respect to bodily injury to any fellow employee of such person injured in the course of his employment;

(ii)  The owner or lessee (of whom the Named Insured is a sub-lessee) of a hired automobile or the owner of a non-owned automobile, or any agent or employee of any such owner or lessee;

(iii) An executive officer with respect to an automobile owned by him or by a member of his household;

(iv)  Any person or organization, other than the Named Insured, with respect to:

(1)  A motor vehicle while used with any trailer owned or hired by such person or organization and not covered by like insurance in the company (except a trailer designed for use with a private passenger automobile and not being used for business purposes with another type motor vehicle);

(2)  A trailer while used with any motor vehicle owned or hired by such person or organization and not covered by like insurance in the Company;

(v)  Any person while employed in or otherwise engaged in duties in connection with an automobile business, other than an automobile business operated by the Named Insured.

This Insuring Agreement does not apply to bodily injury or property damage arising out of (1) a non-owned automobile used in the conduct of any partnership or joint venture of which the Insured is a partner or member and which is not designated in this Policy as a Named Insured, or (2) if the Named Insured is a partnership, an automobile owned by or registered in the name of a partner thereof.

As respects Coverages B and D.

(e) If the Named Insured is designated in this Policy as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor;

(f) If the Named Insured is designated in this Policy as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

(g) If the Named Insured is designated in this Policy as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such;

(h) Any person (other than an employee of the Named Insured) or organization while acting as real estate manager for the Named Insured; and

(i) With respect to the operation, for the purpose of locomotion upon a public highway, of mobile equipment registered under any motor vehicle registration law;

    (i) An employee of the Named Insured while operating any such equipment in the course of his employment; and

    (ii) Any other person while operating with the permission of the Named Insured any such equipment registered in the name of the Named Insured and any person or organization legally responsible for such operation, but only if there is no other valid and collectible insurance available, either on a primary or excess basis, to such person or organization; provided that no person or organization shall be an Insured under this paragraph (i) with respect to:

        (1) Bodily injury to any fellow employee of such person injured in the course of his employment; or

        (2) Property damage to property owned by, rented to, in charge of or occupied by the Named Insured or the employer of any person described in subparagraph (ii);

This Insuring Agreement does not apply to bodily injury or property damage arising out of the conduct of any partnership or joint venture of which the Insured is a partner or member and which is not designated in this Policy as a Named Insured.

B.  Additional Definitions.

As respects Coverages A and C.

When used in reference to this Insuring Agreement (including endorsements forming a part of the Policy):

"Automobile Business" means the business or occupation of selling, repairing, servicing, storing or parking automobiles;

"Hired Automobile" means an automobile not owned by the Named Insured which is used under contract in behalf of, or loaned to, the Named Insured, provided such automobile is not owned by or registered in the name of (a) a partner or executive officer of the Named Insured or (b) an employee or agent of the Named Insured who is granted an operating allowance of any sort for the use of such automobile;

"Non-owned Automobile" means an automobile which is neither an owned automobile nor a hired automobile;

"Owned Automobile" means an automobile owned by the Named Insured;

"Private Passenger Automobile" means a four wheel private passenger or station wagon type automobile;

"Trailer" includes semi-trailer but does not include mobile equipment.

C.  Amended Definition.

When used in reference to this Insuring Agreement (including endorsements forming a part of this Insuring Agreement):

As respects Coverages B and D.

"Incidental Contract" means:

1.  Any lease of premises, easement agreement, undertaking to indemnify a municipality required by a municipal ordinance, sidetrack agreement or elevator maintenance agreement;

2.  Any other contract or agreement; except:

    [REC'D] any agreement between the Insured and any employee or his representative wherein liability is assumed by the Insured for bodily injury to any employee of the Insured arising out of and in the course of his employment by the Insured;

REC'D
MAY 10 1972
HARRY COHEN INSURANCE AGENCY, INC.

STP 001180

INSURING AGREEMENT 36

(b) If the Insured    his indemnitee is an architect, engineer or    eyer, any contract or agreement with respect to bodily injury or property damage arising out of professional services performed or which should have been performed by such Insured or indemnitee, including:

    (i) The preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications; and

    (ii) Supervisory, inspection or engineering services;

(c) Any contract or agreement with respect to any obligation for which the Insured may be held liable in an action on a contract by a third party beneficiary for bodily injury or property damage arising out of a project for a public authority other than an action by the public authority or any other person or organization engaged in the project.

## D. Limits of Liability.

### As respects Coverages A and C.

Regardless of the number of (1) Insureds under this Policy, (2) persons or organizations who sustain bodily injury or property damage, (3) claims made or suits brought on account of bodily injury or property damage or (4) automobiles to which this Insuring Agreement applies, the Company's liability is limited as follows:

Coverage A. The limit of bodily injury liability stated in the Schedule as applicable to "each person" is the limit of the Company's liability for all damages because of bodily injury sustained by one person as the result of any one occurrence; but subject to the above provisions respecting "each person", the total liability of the Company for all damages because of bodily injury sustained by two or more persons as the result of any one occurrence shall not exceed the limit of bodily injury liability stated in the Schedule as applicable to "each occurrence";

Coverage C. The total liability of the Company for all damages because of all property damage sustained by one or more persons or organizations as the result of any one occurrence shall not exceed the limit of property damage liability stated in the Schedule as applicable to "each occurrence";

Coverages A and C. For the purpose of determining the limit of the Company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence;

### As respects Coverages B and D.

Regardless of the number of (1) Insureds under this Policy, (2) persons or organizations who sustain bodily injury or property damage, or (3) claims made or suits brought on account of bodily injury or property damage, the Company's liability is limited as follows:

Coverage B. The limit of bodily injury liability stated in the Schedule as applicable to "each person" is the limit of the Company's liability for all damages because of bodily injury sustained by one person as the result of any one occurrence; but subject to the above provision respecting "each person", the total liability of the Company for all damages because of bodily injury sustained by two or more persons as the result of any one ocurrence which shall exceed the limit of bodily injury liability stated in the Schedule as applicable to "each occurrence".

Subject to the above provisions respecting "each person" and "each occurrence", the total liability of the Company for all damages because of (1) all bodily injury included within the completed operations hazard and (2) all bodily injury included within the products hazard shall not exceed the limit of bodily injury liability stated in the Schedule as "aggregate";

Coverage D. The total liability of the Company for all damages because of all property damage sustained by one or more persons or organizations as the result of any one occurrence shall not exceed the limit of property damage liability stated in the Schedule as applicable to "each occurrence".

Subject to the above provisions respecting "each occurrence", the total liability of the Company for all damages because of all property damage to which this coverage applies and described in any of the numbered subparagraphs below shall not exceed the limit of property damage liability stated in the Schedule as "aggregate":

(1) All property damage arising out of premises or operations rated on a remuneration basis or contractor's equipment rated on a receipts basis, including property damage for which liability is assumed under any incidental contract relating to such premises or operations, but excluding property damage included in subparagraph (2) below;

(2) All property damage arising out of and occurring in the course of operations performed for the Named Insured by independent contractors and general supervision thereof by the Named Insured, including any such property damage for which liability is assumed under any incidental contract relating to such operations, but this subparagraph (2) does not include property damage arising out of maintenance or repairs at premises owned by or rented to the Named Insured or structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

STP 001181

(3) All property damage incl.    within the products hazard and all prop.    damage included within the completed operations hazard.

Such aggregate limit shall apply separately to the property damage described in subparagraphs (1), (2) and (3) above, and under subparagraphs (1) and (2), separately with respect to each project away from premises owned by or rented to the Named Insured.

Coverages B and D. For the purpose of determining the limit of the Company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

E.  Deductible Property Damage Liability.

As respects Coverage D.

The insurance afforded by this Insuring Agreement for Coverage D, Property Damage Liability Other Than Automobile, applies subject to the deductible, if any. entered in the Schedule, of this Insuring Agreement, and subject to the following provisions:

(1) The amount entered in the Schedule shall be deducted from the total amount which the Insured shall become obligated to pay by reason of the liability imposed upon him by law for damages on account of each claim;

(2) The terms of the Policy, including those with respect to the notice of claim and the Company's right to investigate, negotiate and settle any claim or suit, apply irrespective of the application of the deductible amount;

(3) The Company may pay any part or all of the deductible amount to effect settlement of any claim or suit, and upon notification of the action taken, the Named Insured shall promptly reimburse the Company for such part of the deductible amount as has been paid by the Company.

F.  Policy Period; Territory.

As respects Coverages A and C.

This Insuring Agreement applies only to bodily injury or property damage which occurs during the policy period within the territory described in paragraph (1) or (2) of the definition of policy territory.

As respects Coverages B and D.

This Insuring Agreement applies only to bodily injury or property damage which occurs during the policy period within the policy territory.

6.  APPLICABLE POLICY CONDITIONS.

Paragraphs 38, 39 and 40 of the General Conditions of the Policy and the Nuclear Energy Exclusions and Definitions Section apply with respect to this Insuring Agreement.

7.  INAPPLICABLE POLICY CONDITIONS.

Paragraphs 32(a) and 37 of the General Conditions of the Policy do not apply with respect to this Insuring Agreement.

8.  SPECIAL EXCEPTIONS.

Arizona and California Exceptions—(If this Policy is written in the State of Arizona or California, the following applies):

It is agreed that as respects any automobile coverage afforded under this Policy, Item (1) of the definition of "policy territory" of the BASIC DEFINITIONS is amended to read as follows:

A.  The United States of America, its territories or possessions, or Canada, or Republic of Mexico.

WARNING

*Unless you have automobile insurance written by a Mexican insurance company, you may spend many hours or days in jail, if you have an accident in Mexico. Insurance coverage should be secured from a company licensed under the laws of Mexico to write such insurance in order to avoid complications and some other penalties possible under the laws of Mexico, including the possible impoundment of your automobile.*

RECEIVED

MAY 1 0 1972

HARRY COHEN INSURANCE AGENCY, INC.

STP 001182



SECTION II

# ADDITIONAL INSURED ENDORSEMENT
### (Premises Leased to the Named Insured)

*The following spaces preceded by an asterisk (*) need not be completed if this endorsement and the policy have same inception date.*

| Forming Part of Policy No | *Effective Date of Endorsement | *Issued To: | |
|---|---|---|---|
| 619NA0039 | | | |

In Witness Whereof, the Company has caused this endorsement to be signed by its President at St. Paul, Minnesota and countersigned by a duly authorized representative of the Company

_____
Authorized Representative

It is agreed that such insurance as is afforded by Coverages B & D of the Comprehensive General and Automobile Liability Insuring Agreement for bodily injury and for property damage or by Coverage A of the Storekeeper's Liability Insuring Agreement for bodily injury and for property damage applies, subject to the following provisions:

It is agreed that the "Persons Insured" provision is amended to include as an Insured the person or organization designated below, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises designated below leased to the Named Insured, and subject to the following additional exclusions:

THE INSURANCE DOES NOT APPLY:

1. To any occurrence which takes place after the Named Insured ceases to be a tenant in said premises;

2. To structural alterations, new construction or demolition operations performed by or on behalf of the person or organization designated below:

SCHEDULE.

| Designation of Premises (Part Leased to Named Insured) | Name of Person or Organization (Additional Insured) |
|---|---|
| 326 St. Paul Place Baltimore, Maryland | 326 St. Paul Place, Inc. (Owner) |

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*Carl B. Drake Jr*
President.

ENDORSEMENT NO. ___1___ TO INSURING AGREEMENT ~~36~~        Page 1 of 1

21099 Ed. 10-71 Printed in U.S.A. (G109)

STP 001183

 **COVER** POLICY

SECTION I

*The following spaces preceded by an asterisk (*) need not be completed if this endorsement and the policy have same inception date.*

| Forming Part of ·Policy No. | *Effective Date of Endorsement | *Issued To: |
|---|---|---|
| 619NA0039 | | |

In Witness Whereof, the Company has caused this endorsement to be signed by its President at St. Paul, Minnesota and countersigned by a duly authorized representative of the Company

_____
Authorized Representative

## ELEVATOR COLLISION

In consideration of premium charged, it is understood and agreed that the Comprehensive General and Automobile Liability Insuring Agreement is extended to cover direct and accidental loss of or damage to the insured's elevators and to any other property owned, occupied or used by, or rented to, or in the care, custody or control of the named insured, caused by collision of the elevator or anything carried thereon with another object.

It is further understood and agreed that this endorsement does not apply:

(A) to any loss due directly or indirectly to fire,
(B) to any loss due directly to the breaking, burning out or disrupting of any electrical machine which is not located within the elevator car,
(C) to loss to any electrical machine arising out of the breaking, burning out or disruption thereof,
(D) to loss with respect to which insurance is afforded by the Section D under this Insuring Agreement.

It is further understood and agreed that the liability of the Company under this endorsement is limited to the actual cash value of the property damaged or destroyed at the time such damage or destruction but not in any event to exceed five thousand dollars (5,000.) for any one accident.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*Carl B. Drake Jr.*
President.

ENDORSEMENT NO. __2__ TO INSURING AGREEMENT __36__   Page 1 of 1

21073    Ed. 10-71 Printed in U.S.A



THE ST. PAUL
**MULTICOVER**
POLICY

SECTION II

### CHANGE OF LIMITS AND/OR OPTIONAL EXCLUSIONS
Comprehensive General and Automobile Liability

*The following spaces preceded by an asterisk (*) need not be completed if this endorsement and the policy have same inception date.*

| Forming Part of Policy No | *Effective Date of Endorsement | *Issued To: |
|---|---|---|
| 619NA0039 | | |

In Witness Whereof, the Company has caused this endorsement to be signed by its President at St. Paul, Minnesota and countersigned by a duly authorized representative of the Company.

_____
Authorized Representative

An "X" inserted in the box opposite Item 1 and/or Item 2 indicates change.

☒ ITEM 1: It is understood and agreed that the limits of the Company's liability as respects the Comprehensive General and Automobile Liability Insuring Agreement are amended to read as follows:

| COVERAGES | LIMITS OF LIABILITY | | |
|---|---|---|---|
| | Each Person | Each Occurrence | |
| A. Automobile Bodily Injury Liability | $ 100,000 | $ 300,000 | |
| | Each Person | Each Occurrence | Aggregate |
| B. Bodily Injury Liability Other Than Automobile | $ 100,000 | $ 300,000 | $ 300,000 |
| | | Each Occurrence | |
| C. Automobile Property Damage Liability | | $ 25,000 | |
| | | Each Occurrence | Aggregate |
| D. Property Damage Liability Other Than Automobile | | $ 50,000 | $ 50,000 |

$ ___NIL_____ Deductible per claim under Coverage D.

☒ ITEM 2: It is understood and agreed that the Optional Exclusions as respects the Comprehensive General and Automobile Liability Insuring Agreement are amended to read as follows:

- ☒ (Optional Exclusion 1) Owned Automobile Exclusion;
- ☐ (Optional Exclusion 2) Products and Completed Operations Hazard Exclusion;
- ☐ (Optional Exclusion 3) Explosion Hazard Exclusion;
- ☐ (Optional Exclusion 4) Collapse Hazard Exclusion;
- ☐ (Optional Exclusion 5) Underground Property Damage Hazard Exclusion.

An "X" inserted in the box opposite any optional exclusion means such exclusion shall apply to insurance afforded.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*Carl B. Drake Jr.*
President.

ENDORSEMENT NO. ___3___ TO INSURING AGREEMENT 36                    Page 1 of 1

21113 Ed. 10-71 Printed in U.S.A.

STP 001185



SECTION II

**CHANGE OF LIMITS AND/OR OPTIONAL EXCLUSIONS**
Comprehensive General and Automobile Liability

*The following spaces preceded by an asterisk (*) need not be completed if this endorsement and the policy have same inception date.*

| Forming Part of Policy No. | *Effective Date of Endorsement | *Issued To: |
|---|---|---|
| 619NA0039 | 4-1-72 | Burke, Gerber & Wilen |

In Witness Whereof, the Company has caused this endorsement to be signed by its President at St. Paul, Minnesota and countersigned by a duly authorized representative of the Company

_____
Authorized Representative

An "X" inserted in the box opposite Item 1 and/or Item 2 indicates change.

☒ ITEM 1: It is understood and agreed that the limits of the Company's liability as respects the Comprehensive General and Automobile Liability Insuring Agreement are amended to read as follows:

| COVERAGES | LIMITS OF LIABILITY | | |
|---|---|---|---|
| A. Automobile Bodily Injury Liability | Each Person $ | Each Occurrence $ | |
| B. Bodily Injury Liability Other Than Automobile | Each Person $ | Each Occurrence $ | Aggregate $ |
| C. Automobile Property Damage Liability | | Each Occurrence $ 50,000 | |
| D. Property Damage Liability Other Than Automobile | | Each Occurrence $ | Aggregate $ |

$ _____ Deductible per claim under Coverage D.

☐ ITEM 2: It is understood and agreed that the Optional Exclusions as respects the Comprehensive General and Automobile Liability Insuring Agreement are amended to read as follows:
    ☐ (Optional Exclusion 1) Owned Automobile Exclusion;
    ☐ (Optional Exclusion 2) Products and Completed Operations Hazard Exclusion;
    ☐ (Optional Exclusion 3) Explosion Hazard Exclusion;
    ☐ (Optional Exclusion 4) Collapse Hazard Exclusion;
    ☐ (Optional Exclusion 5) Underground Property Damage Hazard Exclusion.

An "X" inserted in the box opposite any optional exclusion means such exclusion shall apply to insurance afforded.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*Carl B. Drake Jr.*
*President.*

ENDORSEMENT NO. _____4_____ TO INSURING AGREEMENT 36          Page 1 of 1

21113 Ed. 10-71 Printed in U.S.A.

STP 001186

COVER
POLICY
SECTION II

BASIC DEFINITIONS AND
NUCLEAR ENERGY LIABILITY EXCLUSION

*The following definitions apply only to those Insuring Agreements and endorsements where so indicated therein.*

When used in this Policy (including Insuring Agreements or Endorsement forming a part hereof);

"Automobile" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto), but does not include mobile equipment;

"Bodily Injury" means bodily injury, sickness or disease sustained by any person;

"Collapse Hazard" includes "Structural Property Damage" as defined herein and property damage to any other property at any time resulting therefrom. "Structural Property Damage" means the collapse of or structural injury to any building or structure due to (1) grading of land, excavating, borrowing, filling, back-filling, tunnelling, pile driving, cofferdam work or caisson work or (2) moving, shoring, underpinning, raising or demolition of any building or structure or removal or rebuilding of any structural support thereof. The collapse hazard does not include property damage (1) arising out of operations performed for the Named Insured by independent contractors, or (2) included within the completed operations hazard or the underground property damage hazard, or (3) for which liability is assumed by the Insured under an incidental contract;

"Completed Operations Hazard" includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the Named Insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(1) When all operations to be performed by or on behalf of the Named Insured under the contract have been completed;
(2) When all operations to be performed by or on behalf of the Named Insured at the site of the operations have been completed; or
(3) When the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operation for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

The completed operations hazard does not include bodily injury or property damage arising out of:

(a) Operations in connection with the transportation of property, unless the bodily injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof;
(b) The existence of tools, uninstalled equipment or abandoned or unused materials; or
(c) Operations for which the classification stated in the Policy or in the Company's manual specifies "including completed operations";

"Damages" includes damages for death and for care and loss of services resulting from bodily injury and damages for loss of use of property resulting from property damage;

"Elevator" means any hoisting or lowering device to connect floors or landings, whether or not in service, and all appliances thereof including any car, platform, shaft, hoistway, stairway, runway, power equipment and machinery; but does not include an automobile servicing hoist, or a hoist without a platform outside a building if without mechanical power or if not attached to building walls, or a hod or material hoist used in alteration, construction or demolition operations, or an inclined conveyor used exclusively for carrying property or a dumbwaiter used exclusively for carrying property and having a compartment height not exceeding four feet;

"Explosion Hazard" includes property damage arising out of blasting or explosion. The explosion hazard does not include property damage (1) arising out of the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment, or (2) arising out of operations performed for the Named Insured by independent contractors, or (3) included within the completed operations hazard or the underground property damage hazard, or (4) for which liability is assumed by the Insured under an incidental contract;

"Incidental Contract" means any written (1) lease of premises; (2) easement agreement, except in connection with construction, or demolition operations on or adjacent to a railroad; (3) undertaking to indemnify a municipality required by municipal ordinance, except in connection with work for the municipality; (4) sidetrack agreement; or (5) elevator maintenance agreement;

"Insured" means any person or organization qualifying as an Insured in the "Persons Insured" provision of the applicable insurance coverage. The insurance afforded applies separately to each Insured against whom claim is made or suit is brought, except with respect to the limits of the Company's liability;

"Mobile equipment" means a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled, (1) not subject to motor vehicle registration; or (2) maintained for use exclusively on premises owned by or rented to the Named Insured, including the ways immediately adjoining; or (3) designed for use principally off public roads; or (4) designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers and drills; concrete mixers (other than the mix-in-transit type); graders, scrapers, rollers and other road construction or repair equipment; air-compressors, pumps and generators, including spraying, welding and building cleaning equipment; and geophysical exploration and well servicing equipment;

"Named Insured" means the person or organization named in the Declarations of this Policy;

"Named Insured's Products" means goods or products manufactured, sold, handled or distributed by the Named Insured or by others trading under his name, including any container thereof (other than a vehicle), but "Named Insured's products" shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold;

STP 001187

"Occurrence" means an accident, including injurious exposure to conditions, which results during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the Insured;

"Policy Territory" means:

(1) The United States of America, its territories or possessions, or Canada; or

(2) International waters or air space, provided the bodily injury or property damage does not occur in the course of travel or transportation to or from any other country, state or nation; or

(3) Anywhere in the world with respect to damages because of bodily injury or property damage arising out of a product which was sold for use or consumption within the territory described in paragraph (1) above, provided the original suit for such damages is brought within such territory;

"Products Hazard" includes bodily injury and property damage arising out of the Named Insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from the premises owned by or rented to the Named Insured and after physical possession such products has been relinquished to others;

"Property Damage" means injury to or destruction of tangible property;

"Underground Property Damage Hazard" includes underground property damage as defined herein and property damage to any other property at any time resulting therefrom. "Underground Property Damage" means property damage to wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, borrowing, filling, back-filling or pile driving. The underground property damage hazard does not include property damage (1) arising out of operations performed for the Named Insured by independent contractors; or (2) included within the completed operations hazard; or (3) for which liability is assumed by the Insured under an incidental contract.

## NUCLEAR ENERGY LIABILITY EXCLUSION

THE POLICY DOES NOT APPLY:

A. Under any Liability Coverage, to bodily injury or property damage:

(1) With respect to which an Insured under the Policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) Resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or (b) the Insured is, or, had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency with, with any person or organization.

B. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

C. Under any Liability Coverage, to bodily injury or property damage resulting from the hazardous properties of nuclear material, if:

(1) The nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (b) has been discharged or dispersed therefrom;

(2) The nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

(3) The bodily injury or property damage arises out of the furnishing by an Insured of services, materials, parts of equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

AS USED IN THIS EXCLUSION:

"Hazardous Properties" include radioactive, toxic or explosive properties;

"Nuclear Material" means source material, special nuclear material or byproduct material;

"Source Material", "Special Nuclear Material", and "Byproduct Material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent Fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"Waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"Nuclear Facility" means:

(a) Any nuclear reactor;

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste.

(c) Any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear Reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property Damage" includes all forms of radioactive contamination of property.

Page 2 of 2



## INSURING AGREEMENT 1
### Fire and Allied Perils

| Forming Part of Policy No. | Effective Date of Insuring Agreement | Issued to: |
|---|---|---|
| 619NA0039 | 4-1-72 | Burke, Gerber & Wilen |

SCHEDULE.

| Location Number | Building Number | DESCRIPTION AND LOCATION OF PROPERTY COVERED |
|---|---|---|
| 1 | 1 | On the fire resistive, approved roof building occupied as an Accountant's Office located:<br><br>326 -328 St. Paul Place<br>14-16 East Pleasant Street<br>Baltimore, Maryland |

The insurance afforded is only with respect to each coverage for which an Amount of Insurance is shown subject to all the terms of this Policy having reference thereto.

| | | COVERAGES | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Location Number | Building Number | A. Buildings | | | B. Business Personal Property | | C. Improvements and Betterments | |
| | | Coins. % | Amount | Agreed or Insurable Value | Coins. % | Amount | Coins. % | Amount |
| 1 | 1 | 80% | $ 190,000 / 250,000 | $ | 80% | $ 40,000 / 50,000 | | $ |

S.L. Means Sprinkler Leakage.

The coinsurance percentage(s) shown above refer to the coinsurance clause of the Building and Contents Insuring Agreement.

Loss deductible clause No. 1 (Loss by windstorm or hail) is **not** applicable.
Loss deductible clause No. 2 (Loss by other perils) is **not** applicable.
**Maryland Amendatory Endorsement Applies**

MORTGAGEE.
Subject to the stipulations, provisions, and conditions contained in this Policy, the loss, if any, on building items, is payable to: (ENTER BELOW)

**Union Trust Company of Maryland**
**St. Paul & Baltimore Streets**
**Baltimore, Maryland 21202**       **1st** mortgagee, as his, her, its or to their interest may appear.

In Consideration of the Provisions and Stipulations Herein or Added Hereto and of the Premium Specified in the Declarations, this Company, for the term of years specified in the Declarations from inception date shown in the Declarations At Noon (Standard Time) to expiration date shown in the Declarations At Noon (Standard Time) at location of property involved, to an amount not exceeding the amount(s) specified above, does insure the Insured named in the Declarations and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from interruption of business or manufacture, nor in any event for more than the interest of the Insured, against all DIRECT LOSS BY FIRE, LIGHTNING AND BY REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED, to the property described in the Declarations while located or contained as described in this Policy, or pro rata for five days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this Policy, but not elsewhere.

In Witness Whereof, the Company has caused
this Insuring Agreement to be signed by its
President at St. Paul, Minnesota and counter-
signed by a duly authorized representative
of the Company

_____
Authorized Representative

_Carl B. Drake Jr._
_President._

STP 001189

1. PROPERTY COVERED. This Insuring Agreement covers:

A. Building(s), including all additions and extensions attached thereto; all fixtures, machinery and equipment constituting a permanent part of and pertaining to the service of the building; materials and supplies intended for use in construction, alteration or repair of the buildings; yard fixtures; signs if the property of the owner of the buildings while attached thereto or stored therein or in other buildings on the premises or in the open within one hundred (100) feet thereof; personal property of the Insured as landlord used for the maintenance or service of the described buildings, and including fire extinguishing apparatus, floor coverings, mirrors, refrigerating, ventilating, cooking, dishwashing and laundering equipment, shades and outdoor furniture (but not including other personal property in apartments or rooms furnished by the Insured as landlord); all while at the described locations.

B. Business Personal Property at the locations described in the schedule including bullion, manuscripts, furnitures, fixtures, equipment and supplies, not otherwise covered under this policy, and shall cover similar property held by the Insured and belonging in whole or in part to others for not exceeding the amount for which the Insured is liable or to the extent of the value of labor and materials expended thereon by the Insured; all while in or on the described buildings, or in the open (including within vehicles) on the described premises or within 100 feet thereof.

C. Improvements and Betterments, meaning the Insured's use interest in fixtures, alterations, installations or additions comprising a part of the described building(s) occupied but not owned by the Insured and made or acquired at the expense of the Insured exclusive of rent paid by the Insured, but which are not legally subject to removal by the Insured.

2. PROPERTY NOT COVERED. This Insuring Agreement does not cover:

A. The following property, except business personal property when held for sale or for delivery after sale or except as may be provided under Extensions of Coverage:

(1) Motorcycles and motorscooters;

(2) Trailers designed for use with private passenger vehicles for general utility purposes or for carrying boats;

(3) Trees, shrubs and plants;

B. Automobiles, motor trucks, trailers, semi-trailers, any self-propelled vehicles or machines, except motorized equipment not licensed for use on public thoroughfares and operated principally on the premises of the Insured; aircraft;

C. The following property unless specifically described herein or added by endorsement;

(1) Outdoor swimming pools, fences, piers, wharves, docks, beach or diving platforms or appurtenances, retaining walls not constituting a part of the building(s) covered;

(2) The cost of excavations; foundations of building(s) which are below the under surface of the lowest basement floor, or where there is no basement, which are below the surface of the ground; foundations of machinery or boilers and engines which are below the surface of the ground; underground flues, pipes, wiring and drains; walks, roadways and other paved surfaces; piling for building(s) or wharf property below the low water mark;

D. Household and personal effects contained in the living quarters occupied by the Insured, any officer, director, stockholder or partner of the Insured, or relatives of any of the foregoing, except as may be provided under Extensions of Coverage;

E. Property of Tenants or guests except as may be provided under extensions of coverage;

F. Lawns;

G. Currency, money, bullion, notes, securities, deeds, accounts, bills, evidences of debt, letters of credit and tickets;

H. Property sold on installment, conditional sale, trust agreement or other deferred payment plan, after delivery to customers(s);

I. Property which is more specifically insured in whole or in part under this or any other contract of insurance.

3. EXTENSIONS OF COVERAGE.

A. Off Premises. The Insured may apply up to 10% of the total amount specified for coverage "B", Business Personal Property, but for not exceeding $10,000 in any one occurrence, to cover insured business personal property against loss by an insured peril, while temporarily (not to exceed 60 consecutive days) at premises not owned, leased, or regularly used by the Insured, but within the territorial limits of this Insuring Agreement. This extension shall not apply to:

(1) Salesman's samples, property at or in fairs or exhibitions, or display items;

(2) Property while rented or leased to others;

(3) Property on premises of others for or during erection or installation;

(4) Property covered under B or C below.

STP 001190

B. Transportation. The Insured apply up to $1,000 in any one occurrenc cover insured business personal property while in transit on any one vehicle against loss by:

(1) An insured peril; or

(2) Collision, overturning or upset of the vehicle; meaning thereby the violent and accidental contact of the vehicle conveying the property described herein with any other vehicle or object excluding any loss or damage done by coming in contact with any portion of the road bed or by means other than as expressly indicated; or

(3) Stranding, sinking, burning or derailment of any transporting conveyance; or

(4) Theft of an entire shipping bale, case or package; meaning thereby, in the case of vehicles owned, leased or operated by the Insured, theft from a vehicle with a fully enclosed and securely locked body or compartment when theft results from forcible entry, evidenced by visible marks.

Property in the care, custody or control of salesmen or property shipped by mail from the time it passes into the custody of the Post Office Department is not covered under this extension.

C. Newly Acquired Property. The Insured may apply up to 10% of the total amount specified for:

(1) Coverage "B", Business Personal Property, but not exceeding $10,000, to cover insured business personal property at any location acquired by the Insured within the territorial limits of this Insuring Agreement.

(2) Coverage "C", Improvements and Betterments, and "A", Building(s), but not exceeding $25,000, to cover as follows:

(a) New fixtures, alterations, installations or additions, new buildings or structures added or installed to the building(s) described herein or constructed on the premises described herein;

(b) Building(s) acquired by the Insured at any other location and used by him for the business described herein or for warehouse purposes, within the territorial limits of this Insuring Agreement.

These extensions in coverage shall cease 30 days from the date of such acquisition, or 30 days from the date the addition, installation or construction begins, or the date the values of such acquisition, addition, installation or construction are reported to the Company, whichever first occurs. Additional premium shall be due and payable for the values so reported as follows:

(1) Under 1 and 2(b), computed from the date acquired; and

(2) Under 2(a), computed from the date the addition, installation or construction began.

Clauses (1) and (2) (a) of this extension do not apply if Coverage "B" Business Personal Property, or Coverages "B" and "C" Business Personal Property and Improvements and Betterments, are written subject to the Reporting Provisions, if any, contained herein.

D. Valuable Papers and Records. The Insured may apply up to $1000 of the limit of liability specified for Coverage "B", Business Personal Property, to cover direct loss in any one occurrence by a peril insured against under Coverage "B", Business Personal Property, of this Insuring Agreement to valuable paper and records consisting of books of account, manuscripts, abstracts, drawings, card index systems, film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing, and other records, all the property of the Insured at described locations. This Extension of Coverage covers only the cost of research and other expense necessarily incurred by the Insured to reproduce, replace or restore such valuable papers and records. The total amount payable in any one occurrence under this Extension of Coverage shall not exceed the limit specified above, regardless of the number of described locations.

E. Extra Expense. This Insuring Agreement covers for an amount not exceeding $1,000 in any one occurrence, the extra expense necessarily incurred by the Insured to continue as nearly as practicable the normal operation of the Insured's business immediately following damage by a peril insured against to the buildings or personal property situated at the described locations.

"Extra expense" means the excess of the total cost incurred during the period of restoration chargeable to the operation of the Insured's business over and above the total cost that would normally have been incurred to conduct the business during the same period had no loss occurred. Any salvage value of property obtained for temporary use during the period of restoration, which remains after the resumption of normal operations, shall be taken into consideration in the adjustment of any loss hereunder.

"Period of restoration" means that period of time, commencing with the date of damage and not limited by the date of expiration of this policy, as would be required with the exercise of due diligence and dispatch to repair, rebuild or replace such part of said buildings or business personal property thereof as have been damaged.

The Company shall not be liable under this Extension of Coverage for:

(1) loss of income;

(2) The cost of repairing or replacing any of the described property, or the cost of research or other expense necessary to replace or restore books of account, manuscripts, abstracts, drawings, card index systems, film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing, and other records that have been damaged by a peril insured against, except cost in excess of the normal cost of such

STP 001191

repair, replacement or oration necessarily incurred for the purpos reducing the total amount of extra expense. In no event shall such excess cost exceed the amount by which the total extra expense otherwise payable under this Extension of Coverage is reduced.

    (3) Any other consequential or remote loss.

F. **Personal Effects.** The Insured may apply up to $500. of the limit of liability specified for Coverage B, Business Personal Property, limited to $100. on property owned by any one individual, to cover loss to the following:

    (1) Business Personal Property belonging to officers and partners, if not otherwise insured; and

    (2) Personal Effects, the property of the Insured or others in the premises of the Insured, if not otherwise insured. At the option of the Company, losses to property of others covered under this extension may be adjusted with and payable to the Insured.

G. **Trees, Shrubs and Plants.** This Insuring Agreement covers for an amount not exceeding $1,000 in any one occurrence, on trees, shrubs and plants not being grown for commercial purposes against loss by fire, lightning, explosion, riot, civil commotion or aircraft, all as defined herein, but the Company shall not be liable for more than $250 on any one tree, shrub or plant, including expense incurred for removing debris thereof. In no event shall coverage under this extension apply to any peril except those specifically set forth in this paragraph.

H. **Debris Removal.** The Company shall also pay for expenses incurred in the removal of debris of the property covered hereunder which may be occasioned by a peril insured against. Cost of removal of debris shall not be considered in the determination of actual cash value when applying the Coinsurance Clause.

I. **Property of Others.** When an item(s) of insurance under this Insuring Agreement covers any kind of business personal property owned by the Insured, this Insuring Agreement shall also provide, at the option of the Insured and as an additional amount of insurance, up to 2% of the amount of insurance applicable to each such item, but not exceeding $2,000, under each item, to cover, for the account of the owner(s) thereof other than the Insured, business personal property, similar to that described in the item, belonging to others while in the care, custody or control of the Insured and only while on the described premises.

    (1) Loss shall be adjusted with the Insured for the account of the owner(s) of said property except that the right to adjust such loss with said owner(s) is reserved to the Company and the receipt(s) of the owner(s) in satisfaction thereof shall be in full satisfaction of any claim by the Insured for which such payment(s) has been made. This extension of coverage shall not inure to the benefit otherwise of the Insured nor to the benefit of any carrier or other bailee.

    (2) The provisions of the Coinsurance Clause made a part of this Insuring Agreement shall not apply to this extension of coverage, and when applying the Coinsurance Clause to such item of insurance covering property owned by the Insured, the value of personal property of others shall not be considered in the determination of actual cash value.

    (3) If the Insured elects to apply this optional extension of coverage, the Company shall not be liable for a greater proportion of any loss than would have been the case if all fire insurance policies covering the described property owned by the Insured had contained an identical optional extension of coverage and the same election were made under all such policies.

The provisions of these Extensions of Coverage (A through H inclusive) do not increase the limits of liability or the amounts recoverable as specified or provided for elsewhere in the Insuring Agreement applicable to the property covered where the loss occurs. When there is Contributing Insurance, the Company shall not be liable for more than its pro rata share of the limits set forth in the foregoing Extensions of Coverage. The values of property off premises (paragraph 3A) or in the course of transportation (paragraph 3B), as provided above, shall not be subject to the provisions of the Value and Full Reporting clauses, if any, added by endorsement hereon.

4. **PERILS INSURED AGAINST.** This Insuring Agreement insures against direct loss to the property covered under this Insuring Agreement caused by the following perils, except as otherwise provided:

A. Fire.

B. Lightning.

**STP 001192**

C. Windstorm and Hail:

    (1) The Company shall not be liable as respects these perils for loss caused directly or indirectly by frost or cold weather or ice (other than hail), snow or sleet, whether driven by wind or not.

    (2) The Company shall not be liable as respects these perils for loss to the interior of the buildings or the property covered therein caused

        (a) By rain, snow, sand or dust, whether driven by wind or not, unless the buildings covered or containing the property covered shall first sustain an actual damage to roof or walls by the direct action of wind or hail and then shall be liable for loss to the interior of the buildings or the property covered therein as may be caused by rain, snow, sand or dust entering the buildings through openings in the roof or walls by direction action of wind or hail; or

(b) By water from sprin     equipment or other piping, unless such equip    or piping be damaged as a direct
result of wind or hail.

(3) Unless specifically covered by endorsement, the Company shall not be liable as respects these perils for damage to the following property:

(a) Grain, hay, straw or other crops outside of buildings;
(b) Windmills, windpumps or their towers;
(c) Crop silos or their contents;
(d) Outdoor radio or television antennas including their lead-in wiring, masts or towers;
(e) Trees, shrubs and plants.

D.  Explosion. Loss by explosion shall include direct loss resulting from the explosion of accumulated gases or unconsumed fuel within the firebox (or combustion chamber) of any fired vessel or within the flues or passages which conduct the gases of combustion therefrom. The Company shall not be liable for loss by explosion of steam boilers, steam pipes, steam turbines or steam engines, if owned by, leased by or operated under the control of the Insured. The following are not explosions within the intent or meaning of these provisions:

(1) Shock waves caused by aircraft, generally known as "sonic boom";
(2) Electric arcing;
(3) Rupture or bursting of rotating or moving parts of machinery caused by centrifugal force or mechanical breakdown;
(4) Water hammer;
(5) Rupture or bursting of water pipes;
(6) Rupture or bursting due to expansion or swelling of the contents of any building or structure, caused by or resulting from water;
(7) Rupture, bursting or operation of pressure relief devices.

E.  Sudden and Accidental Damage from Smoke, other than smoke from agricultural smudging or industrial operations.

F.  Vehicles or Aircraft. Loss by aircraft or by vehicles shall mean only direct loss resulting from actual physical contact of an aircraft or a vehicle with the property covered hereunder or with the buildings containing the property covered hereunder, except that loss by aircraft includes direct loss by objects falling therefrom.

The Company shall not be liable as respects this peril for loss:

(a) By any vehicle owned or operated by an Insured or by any tenant of the described premises;
(b) By any vehicle to fences, driveways, walks, or when outside of buildings, to lawns, trees, shrubs or plants;
(c) To any aircraft or vehicle including contents thereof other than stocks of aircraft or vehicles in process of manufacture or for sale.

The term "vehicles", means vehicles running on land or tracks but not aircraft. The term "aircraft", shall include self-propelled missiles and spacecraft.

G.  Riot, Riot Attending a Strike and Civil Commotion. Loss by riot, riot attending a strike or civil commotion shall include direct loss by acts of striking employees of the owner or occupants of the described buildings while occupied by said striking employees and shall also include under this peril direct loss from pillage and looting occurring during and at the immediate place of a riot, riot attending a strike or civil commotion.

The Company shall not be liable as respects this peril for loss resulting from damage to or destruction of the described property owing to change in temperature or humidity or interruption of operations, whether or not such loss is covered by this policy as to other perils.

5.  EXCLUSIONS: The Company shall not be liable for:

A.  Loss occasioned directly or indirectly by:

(1) Enforcement of any local or state ordinance or law regulating the construction, repair or demolition of buildings or structures unless such liability is otherwise specifically assumed by endorsement;
(2) Electrical current artificially generated unless loss by fire or explosion as insured against hereunder ensues, and then the Company shall be liable for only such ensuing loss.

B.  Loss caused by, or resulting from power, heating or cooling failure, unless such failure results from physical damage to power, heating or cooling equipment situated on premises where the property covered is located, caused by a peril insured against. The Company shall not be liable for any loss specifically excluded under the riot provisions of this Insuring Agreement.

C.  Loss caused by, resulting from, contributed to or aggravated by any of the following:

(1) Earthquake, volcanic eruption, landslide or any other earth movement, but this exclusion shall not apply to property in transit;

**INSURING AGREEMENT 1**                                            Page 6 of 10

(2) Flood, surface water, ...es, tidal water or tidal wave, overflow of stre ...s or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not, but this exclusion shall not apply to property in transit;

(3) Water which backs up through sewers or drains;

(4) Water below the surface of the ground including that which exerts pressure on or flows, seeps or leaks through sidewalks, driveways, foundations, walls, basement or other floors, or through doors, windows or any other openings in such sidewalks, driveways, foundations, walls or floors;

unless loss by fire or explosion as insured against hereunder ensues, and then the Company shall be liable for only such ensuing loss.

D. Loss, other than by fire or lightning which are otherwise provided for on page 2 of this Insuring Agreement, caused directly or indirectly by:

(1) Hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack, (a) by any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces; or (b) by military, naval or air forces; or (c) by an agent of any such government, power, authority or forces, it being understood that any discharge, explosion or use of any weapon of war employing nuclear fission or fusion shall be conclusively presumed to be such a hostile or warlike action by such government, power, authority or forces;

(2) Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an occurrence;

(3) Seizure or destruction under quarantine or custom's regulations, confiscation by order of any government or public authority, or risks of contraband or illegal transportation or trade.

E. Loss by nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing is not insured against by this Insuring Agreement, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by any of the perils insured against by this Insuring Agreement; and nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, is not "explosion" or "smoke". This exclusion (E) applies to all perils insured against by this Insuring Agreement except the perils of fire and lightning, which are otherwise provided for by the nuclear clause elsewhere in this Insuring Agreement.

6. **COINSURANCE CLAUSE.** The Company shall not be liable for a greater proportion of any loss to the property covered hereunder than the limit of liability under this Insuring Agreement for such property bears to the amount produced by multiplying the coinsurance percentage applicable (specified in this Insuring Agreement) by the actual cash value of such property at the time of the loss.

In the event that the aggregate claim for any loss is both less than $10,000 and less than 5% of the limit of liability for all contributing insurance applicable to the property involved at the time such loss occurs, no special inventory and appraisement of the undamaged property shall be required, provided that nothing herein shall be construed to waive the application of the first paragraph of this clause.

If insurance under this Insuring Agreement is divided into separate limits of liability, the foregoing shall apply separately to the property covered under each such limit of liability.

The value of property covered under Extensions of Coverage shall not be considered in the determination of actual cash value when applying the Coinsurance Clause.

7. **DEDUCTIBLE CLAUSES.**

A. The following Deductible Clauses are applicable only if so stated on page 1 of this Insuring Agreement:

(1) Loss Deductible Clause No. 1. With respect to loss by windstorm or hail to buildings, structures or personal property in the open, the Company shall be liable only when such loss in each occurrence exceeds $50. When loss is between $50 and $500, the Company shall be liable for 111% of loss in excess of $50; and when loss is $500 or more, this deductible shall not apply.

(2) Loss Deductible Clause No. 2. With respect to loss by any of the perils insured against other than:

(a) Fire or lightning;

(b) Windstorm or hail to buildings, structures or personal property in the open;

the Company shall be liable only when such loss in each occurrence exceeds $50. When loss is between $50 and $500, the Company shall be liable for 111% of loss in excess of $50; and when loss is $500 or more, this deductible shall not apply.

B. No more than one deductible shall apply to loss by windstorm of hail arising out of any one occurrence.

STP 001194

8. **VALUATION.** Subject to the provisions and stipulations of this policy, the following bases for valuation of property are established:

   A. Tenant's Improvements and Betterments:

      (1) If repaired or replaced at the expense of the Insured within a reasonable time after loss, the actual cash value of the damaged or destroyed improvements and betterments;

      (2) If not repaired or replaced within a reasonable time after loss, that proportion of the original cost at time of installation of the damaged or destroyed property which the unexpired term of the lease or rental agreement, whether written or oral, in effect at the time of loss bears to the periods from the dates such improvements or betterments were made to the expiration date of the lease;

      (3) If repaired or replaced at the expense of others for the use of the Insured, there shall be no liability hereunder.

   B. Books of account, manuscripts, abstracts, drawings, card index systems and other records (except film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing) for not exceeding the cost of blank books, cards or other blank material;

   C. Film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing for not exceeding the cost of such media in unexposed or blank form;

   D. All other property at actual cash value.

9. **REPLACEMENT COST.** At the option of the Insured this provision may be applied to building structures, meaning building structures covered under Coverage "A". This provision does not apply to carpeting, cloth awnings, air conditioners, domestic appliances and outdoor equipment, all whether permanently attached to the building or not.

   A. In the event of loss to such a building structure covered under this Insuring Agreement, when the full cost of repair or replacement is less than $1,000, the coverage of this Insuring Agreement is extended to include the full cost of repair or replacement (without deduction for depreciation).

   B. If at the time of loss the whole amount of insurance applicable to said building structure for the peril causing the loss is 80% or more of the full replacement cost of such building structure, the coverage of this Insuring Agreement applicable to such building structure is extended to include the full cost of repair or replacement (without deduction for depreciation).

   C. If at the time of loss the whole amount of insurance applicable to said building structure for the peril causing the loss is less than 80% of the full replacement cost of such building structure. The Company's liability for loss under this Insuring Agreement shall not exceed the larger of the following amounts:

      (1) The actual cash value of that part of the building structure damaged or destroyed;

      (2) That proportion of the full cost of repair or replacement (without deduction for depreciation) of that part of the building structure damaged or destroyed, which the amount of insurance applicable to said building structure for the peril causing the loss bears to 80% of the full replacement cost of such building structure.

   D. The Company's liability for loss under this Insuring Agreement including this replacement cost provision shall not exceed the smallest of the following amounts:

      (1) The limit of liability of this Insuring Agreement applicable to the damaged or destroyed building structure;

      (2) The replacement cost of the building structure or any part thereof identical with such building structure on the same premises and intended for the same occupancy and use;

      (3) The amount actually and necessarily expended in repairing or replacing said building structure or any part thereof on the same premises and intended for the same occupancy and use.

   E. The Company shall not be liable under paragraphs B and C (2) of this replacement cost provision for any loss unless and until the damaged property is actually repaired or replaced on the same premises with due diligence and dispatch, and, in no event, unless repair or replacement is completed within a reasonable time after such loss.

   F. The Company shall not be liable under this replacement cost provision for any loss unless the amount of insurance applicable to the building structure for which claim is made is equivalent to or in excess of the percentage of actual cash value specified in the Coinsurance Clause, in which event the Coinsurance Clause is hereby deleted in the application of this provision.

   G. The Insured may elect to disregard this replacement cost provision in making claim hereunder, but such election shall not prejudice the Insured's right to make further claim within 180 days after loss for any additional liability brought about by this replacement cost provision.

10. **CONDITIONS.**

   A. Permits and Use. Except as otherwise provided herein, permission is hereby granted:

      (1) to make alterations and repairs;

STP 001195

**INSURING AGREEMENT 1**

(2) For such unoccupancy    is usual or incidental to the described occupa   / but vacancy is limited to the 60 day period permitted by Page 2 of this Insuring Agreement;

(3) In the event of loss hereunder, to make reasonable repairs, temporary or permanent, provided such repairs are confined solely to the protection of the property from further damage, and provided further that the Insured shall keep an accurate record of such repair expenditures. The cost of any such repairs directly attributable to damage by any peril insured hereunder shall be included in determining the amount of loss hereunder. Nothing herein contained is intended to modify this Insuring Agreements' requirements applicable in case loss occurs, and in particular the requirement that, in case loss occurs, the Insured shall protect the property from further damage.

B.  Loss Clause. Any loss hereunder shall not reduce the amount of this Insuring Agreement.

C.  Mortgagee Clause. (Applicable only to Coverage "A"—This entire clause is void unless name of mortgagee(s) or trustee(s) is inserted herein).

Loss or damage, if any, on buildings under this Insuring Agreement, shall be payable to the aforesaid as mortgagee (or trustee) as interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this Insuring Agreement; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this Insuring Agreement, the mortgagee (or trustee) shall, on demand, pay the same.

Provided, also that the mortgagee (or trustee) shall notify the Company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this Insuring Agreement, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this Insuring Agreement shall be null and void.

The Company reserves the right to cancel this Insuring Agreement at any time as provided by its terms, but in such case this Insuring Agreement shall continue in force for the benefit only of the mortgagee (or trustee) for 10 days after notice to the mortgagee (or trustee) of such cancellation and shall then cease, and the Company shall have the right, on like notice, to cancel this agreement.

Whenever the Company shall pay the mortgagee (or trustee) any sum for loss or damage under this Insuring Agreement and shall claim that, as to the mortgagor or owner, no liability therefor existed, the Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim.

Loss or damage, if any, under this Insuring Agreement shall be payable to the aforesaid mortgagee (or trustee) as interest may appear under all present or future mortgages, in order of precedence of such mortgages, in accordance with the terms of this Mortgagee Clause, it being understood that no notice of increase or decrease in any mortgagee's interest is required.

D.  Cancellation. The words "five days" in the cancellation provision on Page 2 are deleted and the words "ten days" are substituted therefor.

E.  Impairment of Recovery. Except as noted below, the Company shall not be bound to pay any loss if the Insured shall have impaired any right of recovery for loss to the property insured; however it is agreed that:

(1) As respects property while on the premises of the Insured, permission is given the Insured to release others in writing from liability for loss prior to loss, and such release shall not affect the right of the Insured to recover hereunder, and

(2) As respects property in transit, the Insured may, without prejudice to this insurance, accept such bills of lading, receipts or contracts of transportation as are ordinarily issued by carriers containing a limitation as to the value of such goods or merchandise.

F.  Other Insurance.

**STP 001196**

(1) Loss by fire or other perils not provided for in (2) below:

If at the time of the loss, there is other insurance available to the Insured or any other interested party covering such loss or which would have covered such loss except for the existence of this insurance, then the Company shall be liable as follows:

(a) If such insurance is Contributing Insurance, defined as any insurance written in the name of the Insured, upon the same plan, terms, conditions and provisions as contained in this Insuring Agreement whether collectible or not, the Company shall be liable for no greater proportion of any loss than the limit of liability under this Insuring Agreement bears to the whole amount of insurance covering such property;

(b) If such insurance is Spe ..c Insurance, defined as any insurance other u .. that described as Contributing Insurance in (a) above, the Company shall not be liable for any loss hereunder until the liability of such Specific Insurance has been exhausted, and then shall cover only such amount as may exceed the amount due from such Specific Insurance (whether collectible or not) after application of any contribution, coinsurance, average or distribution or other clauses contained in policies of such Specific Insurance affecting the amount collectible thereunder, not exceeding however, the applicable limit of liability under this Insuring Agreement.

(2) Loss by burglary, robbery or theft or loss of personal property covered on an unspecified peril basis: Insurance under this Insuring Agreement shall apply as excess insurance over any other valid and collectible insurance which would apply in the absence of this Insuring Agreement;

(3) When loss under this Insuring Agreement is subject to a deductible, the Company shall not be liable for more than its pro rata share of such loss in excess of the deductible amount.

G.  Policy Period, Territory. This Insuring Agreement applies only to loss to property during the period of this Insuring Agreement while such property is within the fifty contiguous states of the United States of America and the District of Columbia.

H.  Nuclear Clause. The word "fire" in this Insuring Agreement is not intended to and does not embrace nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and loss by nuclear reaction or nuclear radiation or radioactive contamination is not intended to be and is not insured against by this Insuring Agreement, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by "fire" or any other perils insured against by this Insuring Agreement; however, subject to the foregoing and all provisions of this Insuring Agreement, direct loss by "fire" resulting from nuclear reaction or nuclear radiation or radioactive contamination is insured against by this Insuring Agreement.

I.  No Control. This insurance shall not be prejudiced:

(1) By any act or neglect of the owner of any building if the Insured is not the owner thereof, or by any act or neglect of any occupant (other than the Insured) of any building, when such act or neglect of the owner or occupant is not within the control of the Insured; or

(2) By failure of the Insured to comply with any warranty or condition contained in any form or endorsement attached to this Insuring Agreement with regard to any portion of the premises over which the Insured has no control.

J.  Protective Safeguards. It is a condition of this insurance that the Insured shall maintain so far as is within his control such protective safeguards as were stipulated in the application for this insurance or for which credit in rate has been granted.

Failure to maintain such protective safeguards shall suspend this insurance, only as respects the location or situation affected, for the time of such discontinuance.

K.  Loss Payable Clause. Loss if any, shall be adjusted with the Insured and shall be payable to him unless other payee is specifically named hereunder.

L.  Report to Police. When either a loss or occurrence takes place the Insured shall give notice thereof to the proper police authority if loss or occurrence is due to a violation of a law.

RECEIVED
MAY 10 1972
HARRY COHEN INSURANCE AGENCY, INC.

STP 001197


COVER POLICY

MARYLAND AMENDATORY ENDORSEMENT

SECTION I

*The following spaces preceded by an asterisk (*) need not be completed if this endorsement and the policy have same inception date.*

| Forming Part of Policy No | *Effective Date of Endorsement | *Issued To: |
|---|---|---|
| 6  19NA0039 | | |

In Witness Whereof, the Company has caused this endorsement to be signed by its President at St. Paul, Minnesota and countersigned by a duly authorized representative of the Company

_____
Authorized Representative

With respect to the perils of explosion, smoke, vehicles, aircraft, riot, riot attending a strike, and civil commotion, windstorm or hail, and vandalism or malicious mischief, the deductible clause or clauses appearing in the forms or endorsements attached to this policy are hereby waived and the following is substituted therefor:

DEDUCTIBLE CLAUSE:  With respect to loss by any of the perils of explosion, smoke, vehicles, aircraft, riot, riot attending a malicious mischief, 1% of the limit of liability, but not less than $100 nor more than $1,000, shall be deducted from each loss separately occurring to the property covered hereunder.  The deductible shall apply separately to each building including its contents; separately to contents in each building if such building is not covered hereunder; and to all personal property in the open at the location at which the loss occurs.

The deductible shall not apply to insurance covering Business Interruption, Tuition Fees, Extra Expense, Rental Value or Leasehold Interest.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

Carl B. Drake Jr.
*President.*

ENDORSEMENT NO. __1__ TO INSURING AGREEMENT __1__   Page 1 of 1

21073      Ed  10-71 Printed In U.S.A.

**COMBINATION VANDALISM AND MALICIOUS MISCHIEF**
**& SPRINKLER LEAKAGE ENDORSEMENT**

*The following spaces preceded by an asterisk (\*) need not be completed if this endorsement and the policy have same inception date.*

| Forming Part of Policy No. | *Effective Date of Endorsement | *Issued To: |
|---|---|---|
| 619NA0039 | | |

In Witness Whereof, the Company has caused this
endorsement to be signed by its President at St. Paul,
Minnesota and countersigned by a duly authorized
representative of the Company.                                  Authorized Representative

Item 4 "Perils Insured Against" of the Building and Contents Insuring Agreement, is extended to include the following perils as defined and limited herein but only if marked by an "X" and apply only to the coverages indicated.

☒ **VANDALISM AND MALICIOUS MISCHIEF.** Applies to Coverage(s) A ☒; B ☒; C ☐
   Loss by vandalism or malicious mischief shall mean only the wilful and malicious damage to or destruction of the property covered. The Company shall not be liable, as respects this peril, for any loss:

   A. To glass (other than glass building blocks) constituting a part of a building;

   B. By pilferage, theft, burglary or larceny except for wilful damage to the buildings covered hereunder caused by burglars;

   C. By explosion, rupture, or bursting of steam boilers, steam pipes, steam turbines, steam engines, or rotating parts of machines or machinery owned, operated or controlled by the Insured;

   D. Caused by or resulting from power, heating or cooling failure unless such failure results from physical damage to power, heating or cooling equipment situated on premises where the property covered is located;

   E. To neon, automatic and electric signs not held for sale;

   F. If the described building(s) had been vacant beyond a period of 60 consecutive days immediately preceding the loss, unless loss by a peril not excluded in the Insuring Agreement ensues, and then the Company shall be liable for only such ensuing loss.

   **Deductibles.**
   The following provision(s) apply only if marked by an "X":
   ☐ (1) Deductible. With respect to the perils of Vandalism and Malicious Mischief, 2% of the amount of insurance, but not less than $250. nor more than $2500., shall be deducted from the amount which would otherwise be recoverable for each loss separately occurring to the property covered hereunder. This deductible shall apply separately to each building (or structure) including its contents; separately to contents in each building (or structure) if such building (or structure) is not covered hereunder; and separately to all personal property in the open.

   This deductible shall not apply to insurance covering Business Interruption, Tuition Fees, Extra Expense, Additional Living Expense, Rental Value or Leasehold Interest.

   ☐ (1) Deductible Clause. With respect to the perils of Vandalism and Malicious Mischief, the sum of $50. shall be deducted from the amount which would otherwise be recoverable for each loss separately occurring to property covered hereunder. This deductible shall apply separately to each building or structure including its contents; separately to contents in each building or structure if such building or structure is not covered hereunder; and separately to all personal property in the open.

   This deductible shall not apply to insurance covering Business Interruption, Tuition Fees, Extra Expense, Additional Living Expense, Rental Value or Leasehold Interest.

☐ **2. SPRINKLER LEAKAGE.** Applies to Coverage(s) A ☐, B ☐, C ☐

   A. Loss by sprinkler leakage shall mean loss by leakage or discharge of water or other substance from within any automatic sprinkler system. This peril shall also cover direct loss caused by collapse or fall of a tank forming part of an automatic sprinkler system. The Company shall not be liable as respects this peril for loss;

   (1) By water from other than an automatic sprinkler system;

ENDORSEMENT NO. __2__ TO INSURING AGREEMENT __1__                    Page 1 of 2

21021 Ed. 10-71 Printed in U.S.A.

STP 001199

(3) Hot water boilers or to oth ... quipment for heating water, caused by any c ... ition or occurrence within such boilers or equipment;

(4) Glass for more than $50 per plate, pane, multiple plate, insulating unit, radiant heating panel, jalousie, louver or shutter; nor for more than $250 in any one occurrence, unless caused by discharge from fire protective or building service equipment;

(5) Fences, pavements, swimming pools and related property, retaining walls, bulkheads, piers, wharves or docks, when covered under this Policy, caused by freezing or thawing, impact of watercraft, or by the pressure or weight of ice or water whether driven by wind or not;

(6) Metal smokestacks nor, when outside of buildings, to cloth awnings, signs, radio or television antennas including their lead-in wiring, masts or towers, caused by ice, snow or sleet;

(7) The interior of building(s), caused by rain, snow, sand or dust, whether driven by wind or not, unless such loss results from vandalism or malicious mischief;

(8) Building(s) or structures in process of construction, including materials and supplies therefor, when covered under this Policy, unless caused by vandalism or malicious mischief;

(9) Any property undergoing alterations, repairs, installations or servicing, including materials and supplies therefor, if directly attributable to the operations or work being performed thereon, unless loss by a peril not excluded ensues, and then the Company shall be liable for only such ensuing loss.

**DEDUCTIBLE**

With respect to any loss covered by this endorsement, the Company shall be liable only when such loss in each occurrence exceeds $100. When loss is between $100 and $500 the Company shall be liable for 125% of loss in excess of $100 and when loss is $500 or more this deductible shall not apply. This deductible does not apply to coverage, if any, on business interruption, rents, earnings, or extra expense or to loss caused by leakage or accidental discharge from any automatic sprinkler systems, or vandalism or malicious mischief;

RECEIVED MAY 15 1972

HARRY COHEN INSURANCE AGENCY, INC.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

Carl B. Drake Jr.

*President*.

STP 001200



SECTION

*The following spaces preceded by an asterisk (*) need not be completed if this endorsement and the policy have same inception date.*

| Forming Part of Policy No | *Effective Date of Endorsement | *Issued To: |
|---|---|---|
| 619NA0039 | | |

In Witness Whereof, the Company has caused this endorsement to be signed by its President at St. Paul, Minnesota and countersigned by a duly authorized representative of the Company.

_____
Authorized Representative

It is hereby understood and agreed as respects The Building Coverage under Insuring Agreement I that the named Insured shall be:

326 St. Paul Place, Inc.

ENDORSEMENT NO. ___3___ TO INSURING AGREEMENT ___1___    Page _1_ of _1_

21069  Ed. 10-71 Printed In U.S.A.

STP 001201

# BUILDING(S)
## ALL RISK COVERAGE ENDORSEMENT

*The following spaces preceded by an asterisk (\*) need not be completed if this endorsement and the policy have same inception date*

| Forming Part of Policy No. | *Effective Date of Endorsement | *Issued To: |
|---|---|---|
| 619NA0039 | | |

In Witness Whereof, the Company has caused this endorsement to be signed by its President at St. Paul, Minnesota and countersigned by a duly authorized representative of the Company.

_____
Authorized Representative

Subject to the provisions herein and of this Policy, such insurance as is afforded under Coverage A of the Building and Contents Insuring Agreement is extended to insure against all risks of direct physical loss or damage, except as excluded or limited herein:

## EXCLUSIONS AND LIMITATIONS

1. The Company shall not be liable under this endorsement, for loss caused by a peril which is otherwise insured against under the Building and Contents Insuring Agreement of this Policy.

2. The "EXCLUSIONS" of the Building and Contents Insuring Agreement are applicable to this endorsement.

3. The following additional exclusions and limitations apply:

   A. This endorsement does not insure against loss caused by:

   (1) Wear and tear, deterioration, rust or corrosion, mould, wet or dry rot; inherent or latent defect; smog, smoke, vapor or gas from agricultural or industrial operations; mechanical breakdown, including rupture or bursting caused by centrifugal force; settling, cracking, shrinkage, bulging or expansion of pavements, foundations, walls, floors, roofs or ceilings; animals, birds, vermin, termites or insects; unless loss by a peril not excluded ensues and then the Company shall be liable for only such ensuing loss;

   (2) Theft of any property which at the time of loss is not an integral part of a building or structure (except direct loss by pillage and looting occurring during and at the immediate place of a riot or civil commotion), unless loss by a peril not excluded ensues from theft or attempted theft, and then the Company shall be liable for only such ensuing loss;

   (3) Unexplained or mysterious disappearance of any property, or shortage disclosed on taking inventory; or caused by any wilful or dishonest act or omission of the Insured or any associate, employee or agent of any Insured, while working or otherwise;

   (4) Vandalism, malicious mischief, theft or attempted theft, if the described building(s) had been vacant beyond a period of 60 consecutive days immediately preceding the loss, unless loss by a peril not excluded ensues, and then the Company shall be liable for such ensuing loss.

   B. This endorsement does not insure against loss to:

   (1) Plumbing, heating, air conditioning or fire protective systems or other equipment or appliances, or for loss by leakage or overflow from such systems, equipment or appliances, or for loss by leakage or overflow from such systems, equipment or appliances, caused by or resulting from freezing while the described building(s) is vacated or unoccupied, unless the Insured shall have exercised due diligence with respect to maintaining heat in the building(s) or unless such systems, equipment and appliances have been drained and the water supply shut off during such vacancy or unoccupancy;

   (2) Steam boilers, steam pipes, steam turbines or steam engines, caused by any condition or occurrence within such boilers, pipes, turbines or engines and this endorsement does not insure against loss by explosion of steam boilers, steam pipes, steam turbines or steam engines, if owned by, leased by or operated under the control of the Insured, or for any ensuing loss except by fire or explosion not excluded in this Policy, and then the Company shall be liable for only such ensuing loss;

ENDORSEMENT NO. _____4_____ TO INSURING AGREEMENT 1

Page 1 of 2

STP 001202

(3) Hot water boilers or to other equipment for heating water, caused by any condition or occurrence within such boilers or equipment;

(4) Glass for more than $50 per plate, pane, multiple plate, insulating unit, radiant heating panel, jalousie, louver or shutter; nor for more than $250 in any one occurrence, unless caused by discharge from fire protective or building service equipment;

(5) Fences, pavements, swimming pools and related equipment, retaining walls, bulkheads, piers, wharves or docks, when covered under this Policy, caused by freezing or thawing, impact of watercraft, or by the pressure or weight of ice or water whether driven by wind or not;

(6) Metal smokestacks nor, when outside of buildings, to cloth awnings, signs, radio or television antennas including their lead-in wiring, masts or towers, caused by ice, snow or sleet;

(7) The interior of building(s), caused by rain, snow, sand or dust, whether driven by wind or not, unless such loss results from vandalism or malicious mischief;

(8) Building(s) or structures in process of construction, including materials and supplies therefor, when covered under this Policy, unless caused by vandalism or malicious mischief;

(9) Any property undergoing alterations, repairs, installations or servicing, including materials and supplies therefor, if directly attributable to the operations or work being performed thereon, unless loss by a peril not excluded ensues, and then the Company shall be liable for only such ensuing loss.

## DEDUCTIBLE

With respect to any loss covered by this endorsement, the Company shall be liable only when such loss in each occurrence exceeds $100. When loss is between $100 and $500 the Company shall be liable for 125% of loss in excess of $100 and when loss is $500 or more this deductible shall not apply. This deductible does not apply to coverage, if any, on business interruption, rents, earnings, or extra expense or to loss caused by leakage or accidental discharge from any automatic sprinkler systems, or vandalism or malicious mischief.

RECEIVED
MAY 15 1972
HARRY COHEN INSURANCE AGENCY, INC.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*Carl B. Drake Jr*
President

Page 2 of 2

STP 001203

**THE ST. PAUL**

COVER
POLICY

SECTION 1

# BUSINESS PERSONAL PROPERTY AND IMPROVEMENTS AND BETTERMENTS
# ALL RISK COVERAGE FOR OFFICES

*The following spaces preceded by an asterisk (*) need not be completed if this endorsement and the policy have same inception date.*

| *Forming Part of Policy No. | *Effective Date of Endorsement | *Issued To: |
|---|---|---|
| 619NA0039 | | |

In Witness Whereof, the Company has caused this endorsement to be signed by its President at St. Paul, Minnesota and countersigned by a duly authorized representative of the Company

_____
Authorized Representative

Applies to Coverage(s) B ☒, C ☒

Subject to the provisions herein and of this policy, such insurance as is afforded under the coverage (s) marked above by an X, the Building and Contents Insuring Agreement is amended as follows:

1.   EXTENSIONS OF COVERAGE. (Item 3).

    A.  Extension A, "Off Premises" and Extension B, "Transportation", are hereby deleted and the following substituted therefor: The Insured may apply up to 10% of the total amount specified on page 1 of the Building and Contents Insuring Agreement for the coverage(s) indicated above, but not exceeding $10,000 in any one occurrence, to cover such loss by a peril not otherwise excluded to the property covered while temporarily away from the locations described on page 1 of the Building and Contents Insuring Agreement (not exceeding 60 consecutive days), but within the territorial limits of this Insuring Agreement and in transit between such places, and in transit between such places and Canada. In no event shall this extension apply to samples or merchandise in the care, custody or control of salesman.

    B.  Extension F, "Personal Effects", is amended to include coverage against loss by leakage or accidental discharge from automatic sprinkler systems, vandalism or malicious mischief. In no event shall Item 2 (Perils Insured Against) of this endorsement apply to this extension of coverage.

    C.  Extension I, does not include coverage as extended by Item 2 "PERILS INSURED AGAINST" of this endorsement.

    D.  The following Extensions of Coverage are hereby added:

        (1)  Extension J, "Theft Damage to Buildings." This Insuring Agreement includes loss (except by fire or explosion) to that part of the building(s) occupied by the Insured and containing property covered, and to equipment therein pertaining to the service of the building, directly resulting from theft (including attempt thereat), provided the Insured is the owner of such building or equipment or is liable for such damage, but in no event shall this coverage apply to glass (other than glass building blocks) or to any lettering or ornamentation thereon;

        (2)  Extension K, "Currency, Money and Stamps." This Insuring Agreement covers, for an amount not exceeding $250 in any one occurrence, loss of currency, money and stamps in the premises, or while being conveyed outside the premises by the Insured, or by an employee of the Insured. Property Not Covered, Item 2G, shall not apply to the property covered by this extension.

2.   PERILS INSURED AGAINST (Item 4). The Building and Contents Insuring Agreement is extended to insure against all risks of direct physical loss of damage, except as excluded or limited herein.

3.   EXCLUSIONS AND LIMITATIONS (Item 5).

    A.  The Company shall not be liable under this endorsement, for loss caused by a peril which is otherwise insured against under the Building and Contents Insuring Agreement.

    B.  The "EXCLUSIONS" of the Building and Contents Insuring Agreement are applicable to this endorsement.

    C.  The following additional exclusions and limitations apply:

        (1) This endorsement does not insure against loss caused by:

STP 001204

ENDORSEMENT NO.   **5**   TO INSURING AGREEMENT 1      Page 1 of 2

21197 Ed. 10-71 Printed in U.S.A.

(a) Inherent vice, wear and tear, marring or scratching, gradual deterioration, vermin, termites or insects, dampness or dryness of atmosphere, changes in temperature, rust or corrosion;

(b) Unexplained or mysterious disappearance of property (except property in the custody of carriers for hire); or shortage of property disclosed on taking inventory;

(c) Theft (including attempt thereat) from any private passenger type automobile, station wagon, motorcycle, or motorscooter, occurring while such vehicle is unattended, unless the property is contained in a fully enclosed and securely locked body or compartment and theft results from forcible entry, evidenced by visible marks. This exclusion shall not apply to property in the custody of carriers for hire;

(d) Voluntary parting with title or possession of any property by the Insured or others to whom the property may be entrusted (except by carriers for hire) if induced to do so by any fraudulent scheme, trick, device or false pretense;

(e) Any fraudulent, dishonest or criminal act done by or at the instigation of any Insured, partner or joint adventurer in or of any Insured, an officer, director or trustee of any Insured; pilferage, appropriation or concealment of any property covered due to any fraudulent, dishonest or criminal act of any employee while working or otherwise, or agent of any Insured, or any person to whom the property covered may be entrusted, other than any carrier for hire;

(f) Actual work upon or installation of property covered, latent defect, failure, breakdown or derangement of machines or machinery, faulty materials or workmanship; unless loss by fire or explosion ensues and then only for such ensuing loss;

(g) Rain, snow or sleet to property in the open (other than property in the custody of carriers for hire);

(h) Delay, loss of market, interruption of business, nor consequential loss of any nature;

(i) Any legal proceeding.

(2) This endorsement does not insure against loss to:

(a) Steam boilers, steam pipes, steam turbines and steam engines caused by any condition or occurrence originating therein (other than explosion of accumulated gases or unconsumed fuel within a fire box or combustion chamber);

(b) Machines and machinery caused by rupture, bursting or disintegration of their rotating or moving parts resulting from centrifugal or reciprocating force;

(c) Glass, glassware, statuary, marbles, bric-a-brac, porcelains and other articles of a fragile or brittle nature caused by breakage unless as a direct result of leakage or accidental discharge from automatic sprinkler systems, vandalism or malicious mischief. This limitation shall not apply to lenses of photographic or scientific instruments;

(d) Neon, automatic and electric signs at the described location(s) unless caused by leakage or accidental discharge from automatic sprinkler systems;

(e) Property shipped by mail from the time it passes into the custody of the Post Office Department;

(f) Fur garments, jewelry and watches, watch movements, jewels, pearls, precious and semi-precious stones, gold, silver, platinum and other precious alloys or metals.

4. DEDUCTIBLE (Item 7). With respect to any loss covered by this endorsement, the Company shall be liable only when such loss in each occurrence exceed $50. When loss is between $50 and $500 the Company shall be liable for 111% of loss in excess of $50 and when loss is $500 or more this deductible shall not apply. This deductible does not apply to coverage, if any, on rents, earnings or extra expense or to (a) loss caused by leakage or accidental discharge from any automatic sprinkler systems, vandalism or malicious mischief or burglary or robbery; (b) loss of property in transit in the custody of carriers for hire; or (c) loss resulting from collision, upset or overturn of a motor vehicle.

5. CONDITIONS (Item 10). The following condition is hereby made a part of the Insuring Agreement: Extension M. "Protection of Property." In case of loss, it shall be lawful and necessary for the Insured, his or their factors, servants and assigns to sue, labor, and travel for, in and about the defense, safeguard and recovery of the property insured hereunder, or any part thereof, without prejudice to this insurance, nor shall the acts of the Insured or the Company, in, recovering, saving and preserving the property insured, in case of loss be considered a waiver or an acceptance of abandonment. The expenses so incurred shall be borne by the Insured and the Company proportionately to the extent of their respective interests.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*Carl B. Drake Jr*
President.

Page 2 of 2

RECEIVED
MAY 15 1972
HARRY EDWARD INSURANCE AGENCY, INC.

STP 001205



THE ST.PAUL

**COVER**
POLICY

SECTION   I

*The following spaces preceded by an asterisk (*) need not be completed if this endorsement and the policy have same inception date.*

| Forming Part of Policy No. | *Effective Date of Endorsement | *Issued To: |
|---|---|---|
| 619NA0039 | 4-24-73 | Burke, Gerber & Wilen |

In Witness Whereof, the Company has caused this endorsement to be signed by its President and countersigned by a duly authorized representative of the Company.

_____
Authorized Representative

It is understood and agreed that the Union Trust Company of Maryland is deleted as mortgagee.

**STP 001206**

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

Carl B. Drake Jr.
*President*

ENDORSEMENT NO. _____6_____ TO <u>INSURING AGREEMENT 1</u>    Page 1 of 1.

21073 Rev. 6-72 Printed in U.S.A.



SECTION II
PERSONAL INJURY LIABILITY

# INSURING AGREEMENT 49

| Forming Part of Policy No. | Effective Date of Insuring Agreement | Issued to: |
|---|---|---|
| 619NA0039 | 4-1-72 | Burke, Gerber, & Wilen |

1. **SCHEDULE.**

The insurance afforded is only with respect to personal injury arising out of an offense included within such of the following groups of offenses as are indicated by an X inserted in the box opposite the group of offenses.

☒ A. False Arrest, Detention or Imprisonment, or Malicious Prosecution;
☒ B. Libel, Slander, Defamation or Violation of Right of Privacy;
☒ C. Wrongful Entry or Eviction or Other Invasion of Right of Private Occupancy.

| Limits of Liability | | Insured's Participation |
|---|---|---|
| Each Person Aggregate | General Aggregate | |
| $ 100,000 | $ 300,000 | 0 % |

2. **COVERAGE.**

The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury (herein called "personal injury") sustained by any person or organization and arising out of one or more of the following offenses committed in the conduct of the Named Insured's business:

Group A.—false arrest, detention or imprisonment, or malicious prosecution;

Group B.—the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy; except publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the Named Insured;

Group C.—wrongful entry or eviction, or other invasion of right of private occupancy;

if such offense is committed during the term of this Insuring Agreement within the United States of America, its territories or possessions, or Canada, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such personal injury even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

3. **LIMITS OF LIABILITY—INSURED'S PARTICIPATION.**

Regardless of the number of (1) Insureds under this Policy, (2) persons or organizations who sustain personal injury, or (3) claims made or suits brought on account of personal injury, the total liability of the Company for all damages because of all personal injury to which this coverage applies, sustained by any one person or organization, shall not exceed the limit of personal injury liability stated in the schedule as "each person aggregate".

Subject to the above provision respecting "each person aggregate", the total limit of the Company's liability under this coverage for all damages shall not exceed the limit of personal injury liability stated in the schedule "general aggregate".

If a participation percentage is stated in the schedule for the Insured, the Company shall not be liable for a greater proportion of any loss than the difference between such percentage and one hundred percent and the balance of the loss shall be borne by the Insured; provided the Company may pay the Insured's portion of a loss to effect settlement of the loss, and, upon notification of the action taken, the Named Insured shall promptly reimburse the Company therefor.



In Witness Whereof, the Company has caused this Insuring Agreement to be signed by its President at St. Paul, Minnesota and countersigned by a duly authorized representative of the Company.

_____
Authorized Representative

_Carl B. Drake Jr_
President.

21088 Ed. 10-71 Printed in U.S.A.    **INSURING AGREEMENT 49**    Page 1 of 2

XCLUSIONS.

IS INSURING AGREEMENT DOES NOT APPLY:

A. To liability assumed by the Insured under any contract or agreement;

B. To personal injury arising out of the wilful violation of a penal statute or ordinance committed by or with the knowledge or consent of any Insured;

C. To personal injury sustained by any person as a result of an offense directly or indirectly related to the employment of such person by the Named Insured;

D. To personal injury arising out of any publication or utterance described in Group B, if the first injurious publication or utterance of the same or similar material by or on behalf of the Named Insured was made prior to the effective date of this Insuring Agreement;

E. To personal injury arising out of a publication or utterance described in Group B concerning any organization or business enterprise, or its products or services, made by or at the direction of any Insured with knowledge of the falsity thereof.

5. PERSONS INSURED.

Each of the following is an Insured under this Insuring Agreement to the extent set forth below:

A. If the Named Insured is designated in the schedule as an individual, the person so designated;

B. If the Named Insured is designated in the schedule as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

C. If the Named Insured is designated in the schedule as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such.

This Insuring Agreement does not apply to personal injury arising out of the conduct of any partnership or joint venture of which the Insured is a partner or member and which is not designated in this Policy as a Named Insured.

6. AMENDED DEFINITION.

When used in reference to this Insuring Agreement:

"Damages" means only those damages which are payable because of personal injury arising out of an offense to which this insurance applies.

7. APPLICABLE POLICY CONDITIONS.

Paragraphs 39 and 40 of the General Conditions of the Policy and the Nuclear Energy Exclusion and Definitions Sections apply with respect to this Insuring Agreement.

8. INAPPLICABLE POLICY CONDITIONS.

Paragraphs 32(a), 37 and 38 of the General Conditions of the Policy do not apply with respect to this Insuring Agreement.



HARRY COHEN INSURANCE AGENCY, INC.

RECEIVED MAY 10 1972

STP 001208

CCR #: 0619NA0039   04/01/72 - 04/01/75 OPERATOR NAME: STARK,SHARON

*** C L A I M   P O L I C Y   I N F O R M A T I O N ***

POLICY STATUS (UNVERIFIED): UNKNOWN          AS OF DATE: 04/01/72
 INSURED NAME: BURKE GERBER & WILEN
   DBA NAME:

      ADDRESS: 326 ST. PAUL PLACE
              BALTIMORE          MD   21075

PREVIOUS POLICY NUMBER: NO INFO      RENEWAL POLICY NUMBER: NO INFO

AGENCY: TAMPA BRANCH OFFICE          NUMBER: C780000   PHONE: (813) 289-4
  ADDR: 600 N WESTSHORE BLVD STE 400   BLDG: TAMPA SURETY DEPARTMENT
        TAMPA              FL  33609

          UNDERWRITER:                    PHONE:
          UNDERWRITING OFFICE: SVC CODE 09T DESC NOT FND  PHONE:
UNDERWRITING BUSINESS CENTER: UNKNOWN
CLAIM STRUCTURE: SERVICE DRIVEN (Y/N) N  ( _ ) VIEW STRUCTURE INFO (? TO INQ
NO STATISTICAL INFORMATION FOUND PER ENTERED `AS OF DATE`.
CCR INFO FOUND FOR ANOTHER TERM.  ****** IR RULES MAY APPLY - PRESS ENTER
CQDR01IM   CQC10I                          05/25/00   11:33

Date: 05/25/2000 Time: 12:33:44 PM

Page: 1 Document Name:      itled

```
   CCR #: 0619NA0039    04/01/72 - 04/01/75 OPERATOR NAME: STARK,SHARON

      *** C L A I M   P O L I C Y   I N F O R M A T I O N ***

POLICY STATUS (UNVERIFIED): UNKNOWN         AS OF DATE: 04/01/72
  INSURED NAME: BURKE GERBER & WILEN
    DBA NAME:

      ADDRESS: 326 ST. PAUL PLACE
              BALTIMORE           MD  21075

PREVIOUS POLICY NUMBER: NO INFO      RENEWAL POLICY NUMBER: NO INFO

AGENCY: TAMPA BRANCH OFFICE            NUMBER: C780000   PHONE: (813) 289-4
  ADDR: 600 N WESTSHORE BLVD STE 400    BLDG: TAMPA SURETY DEPARTMENT
        TAMPA                FL  33609

              UNDERWRITER:                    PHONE:
          UNDERWRITING OFFICE: SVC CODE 09T DESC NOT FND   PHONE:
UNDERWRITING BUSINESS CENTER: UNKNOWN
CLAIM STRUCTURE: SERVICE DRIVEN (Y/N) N  ( _ ) VIEW STRUCTURE INFO (? TO INQ
POLICY NUMBER ENTERED ONLY FOUND ON CCR. NO FURTHER INFORMATION IS AVAILABLE
PLEASE PRESS PF-KEY 3 TO CONTINUE
CQDR01IM  CQC10I                                05/25/00   11:33
```

Date: 05/25/2000 Time: 12:34:14 PM

STP 001210