

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WESTPORT INSURANCE CORPORATION,)
                           )
          Plaintiff,        )
      vs.               )   Civil Action No.: AMD-02-1774
                           )
ST. PAUL FIRE & MARINE INSURANCE  )
COMPANY,                   )
                           )
         Defendant.      )
_____)

## DEFENDANT'S ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendant St. Paul Fire & Marine Insurance Company ("St. Paul"), by and through

its attorneys, Ross, Dixon & Bell, LLP, for its Answers, pursuant to Federal Rules of Civil

Procedure, Rule 33 answers as follows:

## INTERROGATORIES

1.    Please identify the name, current address, employer and job title of the
person signing these Interrogatories on behalf of ST. PAUL FIRE & MARINE
INSURANCE COMPANY ("St. Paul"), and for each Interrogatory, identify each person
who was consulted or contributed to fomulating its answer.

**ANSWER:** These persons are as follows:

Joseph Schmitt, Esq.
Professional E&O Claim Attorney
St. Paul Fire & Marine Insurance Company
385 Washington Street
St. Paul, MN  55102-1396

2.    Identify and describe in detail any and all documents reviewed or referred to
by you and/or any person assisting you in the preparation of St. Paul's responses to these
Interrogatories.

**ANSWER:** Joseph Schmitt reviewed the claim file for this matter in preparing a

response to these Interrogatories. Attorneys for St. Paul reviewed the claim file and their

own files on this matter in preparing a response to these Interrogatories.

EXHIBIT

3.    Identify and describe in detail the date and manner in which you first became aware of any claims against Irving Cohn arising from his alleged mishandling of the Shapiro Trusts.

**ANSWER:** St. Paul believes it first became aware of claims against Irving Cohn arising from his alleged mishandling of the Shapiro Trusts during the course of a phone conversation with Phil C. Smith of Hearne & Bailey, P.A. on or about May 31, 2000. Around this same time, St. Paul received a copy of a letter written by Phil C. Smith to David Cohen of the Harry Cohen Insurance Agency concerning these allegations.

4.    Describe manner in which you first received notice of the Waller Lawsuit, including but not limited to the date of said notice, whether said notice was oral or written, and the content of any written instrument accompanying said notice.

**ANSWER:** St. Paul first received a copy of the Waller Lawsuit from Westport's coverage counsel on April 6, 2001, when it was handed by Michelle M. Bracke of Bollinger, Ruberry & Garvey to Kristi A. Gleim of Ross, Dixon & Bell, LLP.

5.    Identify and describe and describe in detail any communication, if any, you had with anyone, including the date, nature and substance thereof, that occurred <u>prior</u> to receiving notice of the existence of the Waller lawsuit, in which there was a discussion indicating that you were aware of the existence of claims against Irving Cohn arising from his alleged mishandling of the Shapiro Trusts.

**ANSWER:** In addition to the communications discussed in the Answer to Interrogatory #3, the following communications occurred prior to St. Paul having received notice of the existence of the Waller lawsuit and indicate that St. Paul was aware of the existence of claims against Irving Cohn arising from his alleged mishandling of the Shapiro Trusts:

- June 1, 2000 letter from Phil C. Smith of Hearne & Bailey, P.A. to Joseph Schmitt discussing their phone conversation of May 31, 2000 and enclosing a copy of a draft Complaint;

- May 31, 2000 phone conversation between Phil C. Smith of Hearne & Bailey, P.A. and Joseph Schmitt on or about May 31, 2000.

- May 26, 2000 fax from David Cohen of the Harry Cohen Insurance Agency, Inc. to Joseph Schmitt enclosing a copy of policy no. 619NA0039;

- May 25, 2000 series of e-mails between Karen Cherelstein, Kerry Evensen and Joseph Schmitt at St. Paul discussing the potential claim stemming from allegations of Irving Cohn's potential malpractice in the administration of a trust;

- May 25, 2000 fax from David Cohen of the Harry Cohen Insurance Agency, Inc. to Melva Turner of St. Paul enclosing a copy of policy no. 619NA0039 and correspondence;

St. Paul further answers that it had various conversations with the broker of the policy.

6.    Identify and describe the nature, substance and outcome of any investigation, if any, you undertook with respect to claims against Irving Cohn arising from his alleged mishandling of the Shapiro Trusts prior to receiving notice of the existence of the Waller lawsuit.

**ANSWER:** *See* answer to Interrogatory 5.

7.    Identify and describe in detail what, if any, action(s) you undertook to defend Irving Cohn against claims arising from his alleged mishandling of the Shapiro Trusts prior to receiving notice of the existence of the Waller lawsuit.

**ANSWER:** Pursuant to the terms and conditions of the relevant policy, there is no duty to defend prior receipt of an actual complaint. Accordingly, St. Paul did not have an obligation to provide a defense at least until tender of an actual lawsuit.

8.    Identify and describe the nature, substance and outcome of any investigation, if any, you undertook with respect to claims against Irving Cohn arising from his alleged mishandling of the Shapiro Trusts after receiving notice of the existence of the Waller lawsuit.

**ANSWER:** St. Paul refers to Joseph Schmitt's May 3, 2001 letter to Phil C. Smith and Chris Davis of Hearne & Bailey, P.A., which describes the nature, substance and outcome of its investigation with respect to claims against Irving Cohn arising from his

alleged mishandling of the Shapiro Trusts after receiving notice of the existence of the

Waller lawsuit.

     9.    Identify and describe in detail what, if any, action(s) you undertook to defend
Irving Cohn against claims arising from his alleged mishandling of the Shapiro Trusts <u>after</u>
receiving notice of the existence of the Waller lawsuit.

    **ANSWER:** St. Paul refers to Joseph Schmitt's May 3, 2001 letter to Phil C. Smith

and Chris Davis of Hearne & Bailey, P.A., which describes the nature, substance and

outcome of its investigation with respect to claims against Irving Cohn arising from his

alleged mishandling of the Shapiro Trusts after receiving notice of the existence of the

Waller lawsuit. St. Paul also refers to bills submitted by counsel appointed to defend Irving

Cohn in the Waller lawsuit.

     10.    State whether St. Paul engaged counsel on behalf of Irving Cohn to provide
him with a defense to the Waller lawsuit. If your answer is the affirmative please:

          (a)    Identify the name of law firm(s) or attorney(s) retained to provide
such a defense;

          (b)    Identify the dates between which the law firm(s) or attorney(s)
identified in sub-part (a) of this interrogatory undertook such a
defense;

          (c)    State the total amount of legal fees and/or expenses charged to St.
Paul by the law firm(s) or attorney(s) identified in sub-part (a) of this
interrogatory for its defense of Irving Cohn in the Waller lawsuit; and

          (d)    State, if know, the total amount of legal fees and/or expenses incurred
by the law firm(s) or attorney(s) identified in sub-part (a) of this
interrogatory for its defense of Irving Cohn in the Waller lawsuit.

    **ANSWER:** St. Paul has not engaged counsel on behalf of Irving Cohn to provide

him with a defense to the Waller lawsuit.

     11.    State whether St. Paul incurred any fees, expenses and/or costs in providing
Irving Cohn with a defense to the Waller lawsuit that were not identified in the previous
interrogatory. If your answer is in the affirmative:

929955 v1

4

    (a)      Identify the total amount of such fees, expenses and/or costs;

    (b)      Identify the name of each entity or individual conducting the activity for which St. Paul was charged such a fee, expense or cost; and

    (c)      Describe the nature of each activity performed for which a fee, expense and/or cost was incurred.

**ANSWER:** St. Paul has paid more than $90,000 in the defense of claims against

Irving Cohn. St. Paul refers to bills submitted by counsel appointed to defend Irving Cohn

in the Waller lawsuit.

12.     Identify and describe in detail any and all damages that you are claiming in Counts I and II of your Counterclaim against Westport not identified or described in Interrogatory numbers 10 and/or 11.

**ANSWER:** Other than the approximately $90,000 that St. Paul has expended in the

defense of the claims against Irving Cohn, St. Paul only seeks attorneys' fees, the costs of

this current action and any further relief the court deems appropriate. St. Paul refers to bills

submitted by counsel appointed to defend Irving Cohn in the Waller lawsuit.

13.     Identify and describe in detail the basis or bases for, any and all facts which allegedly support Count I of your Counterclaim against Westport, as set forth in your Answer and Counterclaim.

**ANSWER:** St. Paul refers to the documents provided in response to Westport's First

Set of Requests to Produce.

14.     Identify and describe in detail the basis or bases for, any and all facts which allegedly support Count II of your Counterclaim against Westport, as set forth in your Answer and Counterclaim.

**ANSWER:** St. Paul refers to the documents provided in response to Westport's First

Set of Requests to Produce.

15.     If you are asserting any affirmative defenses to Westport's Complaint, please identify and describe in detail the basis or bases therefore and any and all facts which allegedly support such affirmative defenses.

929955 v1

**ANSWER:** St. Paul refers to the documents provided in response to Westport's First

Set of Requests to Produce.

16.    Identify each document you have destroyed, lost, misplaced or otherwise no longer have in your possession, custody or control, if such document is sought in Plaintiff's First Set of Requests for Production propounded on you.

**ANSWER:** St. Paul refers to the documents provided in response to Westport's First

Set of Requests to Produce.

17.    Identify and describe each and every communication, oral or written, between you and Irving Cohn related to any claims against him arising out of his alleged mismanagement of the Shapiro Trusts during the period of May 1, 2000 to April 6, 2001.

**ANSWER:** There are none.

18.    If your answer to any request in Plaintiff's First Set of Requests for Admission is anything other than an unqualified admission please:

    (a)    State the basis or bases for each denial;

    (b)    Identify any and all facts which allegedly support each denial; and

    (c)    Identify and describe any documents that support each denial.

**ANSWER:** St. Paul answers that its Answer to Plaintiff's First Request for

Admission speaks for itself, and no further answer is required.

Respectfully submitted,

ROSS, DIXON & BELL, LLP

Dated:  September 3, 2004

By *Richard A. Simpson (with permission RDB)*
Richard A. Simpson
Maryland Federal Bar No. 014714
2001 K Street, N.W.
Washington, D.C. 20006-1040
Phone: (202) 662-2035
Facsimile: (202) 662-2190

*Attorneys for Defendant St. Paul Insurance Company*

929955 v1

6

Of Counsel:

Michael P. Tone
Ross, Dixon & Bell, LLP
Three First National Plaza, Suite 525
Chicago, IL 60602
Phone – 312-759-1920
Facsimile – 312-759-1939

## VERIFICATION

The undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters, the undersigned certifies as aforesaid that she verily believes the same to be true.

_____
Joseph W.F. Schmitt

Subscribed to and sworn to before me
this  3rd  day of ~~August~~, 2004.
                    September

_____
Notary Public

SARAH A. TEPLEY
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2006

929955 v1

8

## CERTIFICATE OF SERVICE

I certify that on this _3rd_ day of September, 2004, service of a true and complete copy of the above and forgoing pleading was made upon the following by depositing in the U.S. Mail, postage prepaid:

| Paul Cottrell<br>Tighe, Cottrell & Logan, P.A.<br>First Federal Plaza, Suite 500<br>P.O. Box 1031<br>Wilmington, DE 19899 | Michelle M. Bracke, Esq.<br>Bollinger Ruberry & Garvey<br>500 W. Madison Street, Suite 2300<br>Chicago, Illinois 60661-2511 |
|---|---|

_Kimberly E. Blair_
Kimberly E. Blair



385 Washington Street
St Paul, Minnesota 55102-1396
651-310-7911

May 3, 2001

Philip C. Smith, Esq.
Christopher F. Davis, Esq.
Hearne & Bailey, P.A.
Colonial Building
126 E. Main Street
Salisbury, MD 21801

|  |  |  |
|---|---|---|
| Re: | Insured: | **Irving F. Cohn/Burke, Gerber & Wilen** |
|  | Claimant: | **Eric Waller** |
|  | Potential Claimants: | **Roberta and Jeffrey Borenstein** |
|  | Policy No.: | **619NA0039** |
|  | Claim No.: | **0619NA0039-09T001** |

Dear Messrs. Smith and Davis:

By correspondence dated May 23, 2000, St. Paul Fire and Marine Insurance Company
("St. Paul") was advised of circumstances relative to Irving F. Cohn's involvement as Trustee of
the so-called Shapiro Flex Trusts (the "Trusts"). On June 1, 2000, St. Paul was provided a copy
of a draft complaint, entitled <u>Roberta Borenstein, et al. v. Blum, Yumkas, Mailman, Gutman &
Denick, P.A., et al.</u>. We understand that, to date, the <u>Borenstein</u> complaint has not been filed.

We also recently received a copy of a complaint filed in the Circuit Court for Baltimore
City, Maryland, entitled <u>Eric F. Waller v. Blum, Yumkas, Mailman, Gutman & Denick, P.A., et
al.</u>. We understand that although independent counsel has been offered to Mr. Cohn at the
expense of Westport Insurance Company ("Westport"), Mr. Cohn has chosen you to defend this
matter on his behalf at Westport's expense. We understand that you are proceeding to prepare a
responsive pleading to the <u>Waller</u> Complaint on behalf of Mr. Cohn accordingly. In light of the
fact that Mr. Cohn is being represented by counsel with respect to the <u>Waller</u> lawsuit, we direct
this correspondence to you on Mr. Cohn's behalf and request that you provide a copy of this
letter to Mr. Cohn for his review.

As we confirmed with Chris Davis on April 18, 2001, we understand that the <u>Waller</u>
Complaint has not yet been tendered for defense and/or indemnity to St. Paul. Please notify us
immediately should Mr. Cohn choose to tender the <u>Waller</u> Complaint to St. Paul for defense
and/or indemnity. At this time, St. Paul reserves the right to challenge coverage for pre-tender
defense fees, and reserves its right to allocate any defense fees and costs incurred as well.

Philip C. Smith, Esq.
Christopher F. Davis, Esq.
May 3, 2001
Page 2


Although no Complaint has yet been tendered to St. Paul for defense and/or indemnity, we would like to proceed to explain to you the provisions of the above-captioned Policy. We hope you can appreciate that by calling these provisions of the Policy to your attention, we do not mean to imply that the allegations made concerning Mr. Cohn have any merit whatsoever. We also hope you can appreciate that by directing your attention to these coverage concerns, we do not mean to waive any other coverage concerns which may come to our attention as further-developed facts so warrant.

We enclose a copy of the Policy for your review. The Policy, issued to named Insured Burke, Gerber & Wilen, contains several Sections, one of which is entitled "Lawyers Professional Liability", found at Section II of the Policy. The Lawyers Professional Liability Policy effective date is April 1, 1972, at which time the Policy contained a limit of liability of $100,000 each occurrence with a deductible amount of $2,500. The Policy continued through April 1, 1974, at which time the deductible amount was changed to $500. The Policy terminated on April 1, 1975.

As to the policy period, Paragraph 6.C. of the Policy provides as follows:

> C.    Policy Period; Territory. This Insuring Agreement applies within the United States of America, its territories or possessions or Canada to professional services performed for others (1) during the period of this Insuring Agreement (2) prior to the effective date of this Insuring Agreement if claim is made or suit is brought during the period of this Insuring Agreement and providing the Insured had no knowledge or could not have reasonably foreseen any circumstances which might result in a claim or suit at the effective date of this Insuring Agreement. With respect to an Insured who becomes an Insured under this Insuring Agreement subsequent to its effective date, the Insuring Agreement period under (1) and (2) shall begin as of that effective date.

St. Paul reserves its rights as to whether the Policy requires that a claim be made or suit be brought during the policy period in order for coverage to apply.

Pursuant to Paragraph 4 of the Policy, the $100,000 each occurrence limit of liability is the limit of St. Paul's liability for all damages arising out of the same professional services regardless of the number of claims or claimants. Therefore, to the extent that claims and claimants may make allegations against Mr. Cohn alleging damages arising out of the same professional services, the $100,000 each occurrence limit of liability is the limit of St. Paul's liability.

**STP 000073**

Philip C. Smith, Esq.
Christopher F. Davis, Esq.
May 3, 2001
Page 3

Amounts payable under the Policy are also subject to the Policy deductible. Paragraph 3 of the Policy, entitled "Deductible", provides as follows:

> It is agreed that in the event of a claim the amount indicated in the Schedule shall be deducted from the total amount resulting from each occurrence and the Company shall be liable only for the difference between such deductible amount and the amount of insurance otherwise applicable to each claim. Such deductible amount shall not apply to the coverage provided under General Condition 32, Defense, Settlement, Supplementary Payments of this Policy or Special Condition C of this Insuring Agreement.

The Policy provides the following relative to defense of Insureds at Paragraph 6.A. of the Policy:

> A.   Defense, Settlement, Supplementary Payments. As respects such insurance as is afforded by the other terms of this Insuring Agreement the Company shall (a) defend in his name and behalf any suit against the Insured alleging damages, even if such suit is groundless, false, or fraudulent; but the Company shall have the right to make such investigation and negotiation of any claim or suit as may be deemed expedient by the Company. The Company, however, shall not make settlement or compromise any claim or suit without the written consent of the Insured.

Paragraph 32 of the Policy then continues:

> The Company will pay, in addition to the applicable limit of liability:
>
> (B)   All expenses incurred by the Company, all costs taxed against the Insured in any suit defended by the Company and all interest on the entire amount of any judgment therein which does not exceed the limit of the Company's liability thereon;
>
> (C)   Premiums on appeal bonds required in any such suit, premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this Policy, and the cost of bail bonds required of the Insured because of accident or traffic law violation

STP 000074

Philip C. Smith, Esq.
Christopher F. Davis, Esq.
May 3, 2001
Page 4

> arising out of the use of any vehicle to which this Policy
> applies, but the Company shall have no obligation to apply
> for or furnish any such bonds;

> (D)   Expenses incurred by the Insured for first aid to others at
>       the time of an accident, for bodily injury to which this
>       Policy applies;

> (E)   Reasonable expenses incurred by the Insured at the
>       Company's request, including actual loss of wages or
>       salary (but not loss of other income) not to exceed $25 per
>       day because of his attendance at hearings or trials at such
>       request.

St. Paul reserves its rights relative to whether defense fees and costs incurred on behalf of
Insureds would deplete the Policy's limit of liability.

The "Coverage" portion of the Policy, contained at Paragraph 2, provides as follows:

> The Company agrees to pay on behalf of the Insured all sums
> which the Insured shall become legally obligated to pay as
> damages arising out of the performance of professional services for
> others in the Insured's capacity as a lawyer and caused by the
> Insured, or any other person for whose acts the Insured is legally
> liable. (The performance of professional services shall be deemed
> to include the Insured's acts as an administrator, conservator,
> executor, guardian, trustee or any similar fiduciary capacity, but
> only to the extent for which in the usual attorney-client relationship
> the Insured would be legally responsible as attorney for a
> fiduciary.)

St. Paul reserves its rights as to whether Mr. Cohn was acting in the performance of professional
services for others in his capacity as a lawyer. St. Paul also reserves its rights to the extent any
claimants request injunctive relief against Mr. Cohn, rather than damages, and as to whether Mr.
Cohn has become legally obligated to pay as damages any amounts under the Policy to date.

We also bring to your attention Exclusion 5.A. of the Policy which provides that the
Policy does not apply "to any dishonest, fraudulent, criminal, malicious act or omission of the
Insured ...". St. Paul reserves its rights concerning this Policy exclusion as well and reserves its
rights as to whether Maryland law allows the insurability of intentional acts and/or punitive
damages.

STP 000075

Philip C. Smith, Esq.
Christopher F. Davis, Esq.
May 3, 2001
Page 5

We also bring to your attention Paragraph 30 of the Policy which provides as follows:

INSURED'S DUTIES IN THE EVENT OF LOSS,
OCCURRENCE, CLAIM OR SUIT

(A)    Upon the occurrence of any casualty or event for which
coverage is afforded by this Policy, written notice
containing particulars sufficient to identify the Insured and
also reasonably obtainable information with respect to the
time, place and circumstances thereof, and the names and
addresses of the injured and of available witnesses, shall be
given by or for the Insured to the Company or any of its
authorized agents as soon as practicable.  The Named
Insured shall promptly take at his expense all reasonable
steps to prevent other bodily injury or property damage
from arising out of the same or similar conditions, but such
expense shall not be recoverable under this Policy.

(B)    If claim is made or suit is brought against the Insured, the
Insured shall immediately forward to the Company every
demand, notice summons or other process received by him
or his representative.

(C)    The Insured shall cooperate with the Company and, upon
the Company's request, assist in making settlements, in the
conduct of suits and in enforcing any right of contribution
or indemnity against any person or organization who may
be liable to the Insured because of bodily injury or property
damage with respect to which insurance is afforded under
this Policy; and the Insured shall attend hearings and trial
sand assist in securing and giving evidence and obtaining
the attendance of witnesses.  The Insured shall not, except
at his own cost, voluntarily make any payment, assume any
obligation or incur any expense other than for first aid to
others at the time of accident.

(D)    Upon request of the Company the Insured shall, within a
reasonable time after determining the amount of any loss
submit to the Company an itemized proof of loss, duly
sworn to.

904230 v1                                              **STP 000076**

Philip C. Smith, Esq.
Christopher F. Davis, Esq.
May 3, 2001
Page 6

Moreover, St. Paul reserves its rights with regard to Paragraph 31 of the Policy, which provides as follows:

> ASSISTANCE AND COOPERATION OF THE INSURED
>
> The Insured shall cooperate (except in a pecuniary manner) with the Company and, at the Company's request and expense, shall attend hearings and trials and shall assist in effecting settlements, securing and given evidence, obtaining the attendance of witnesses and in the conduct of suits. The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of the casualty or event.

We bring to your attention Paragraph 37 of the Policy which provides as follows:

> FRAUD AND MISREPRESENTATION.
>
> This Policy and its Insuring Agreements shall be void if the Insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or in case of any fraud, attempted fraud or false swearing by the Insured pertaining to this insurance or the subject thereof, whether before or after a loss. However, unintentional errors or omissions on the part of the Insured shall not operate to prejudice the rights of the Insured under this Policy and its Insuring Agreements.

Paragraph 40 of the Policy provides as follows:

> DECLARATIONS. By acceptance of this Policy, the Named Insured agrees that the statements in the Declarations are his agreements and representations, that this Policy is issued in reliance upon the truth of such representations and that this Policy embodies all agreements existing between himself and the Company or any of its agents relating to this Policy.

St. Paul reserves its rights as to whether Mr. Cohn has complied with these notice and cooperation clauses of the Policy and as to whether St. Paul maintains a right to rescind the Policy pursuant to these Policy provisions and the common law of the State of Maryland. St. Paul also reserves its rights relative to the common law doctrines of expected/intended loss,

904230 v1

STP 000077

Philip C. Smith, Esq.
Christopher F. Davis, Esq.
May 3, 2001
Page 7

known loss, and as to the prior acts and/or knowledge of Mr. Cohn and his firm before inception of the Policy.

The Policy's "Other Insurance" provision, contained at Paragraph 4.D. of the Policy, provides as follows:

> D.    Other Insurance. If the Insured has other insurance against a loss covered by this Insuring Agreement, the Company shall not be liable under this Insuring Agreement for a greater proportion of such loss than the applicable limit of liability stated in the Schedule bears to the total limit of liability of all valid and collectible insurance against such loss. However, with respect to professional services rendered prior to the effective date of this Insuring Agreement the insurance hereunder shall apply only as excess insurance over any other valid and collectible insurance and shall then apply only if the amount by which the applicable limit of liability of this Insuring Agreement exceeds the sum of the applicable limits of liability of all such other insurance.

At your earliest convenience, please provide us with all information concerning other insurance which may be available for these matters, including copies of your letters of notice to such insurers and these other insurers' responses to said notice, along with copies of the other insurers' policies.

Again, please notify us immediately if you wish to tender the defense of the Waller Complaint to St. Paul. Should such tender be made, Mr. Cohn is entitled to retain independent counsel to represent him in the Waller matter at the expense of St. Paul, consistent with Maryland law. Mr. Cohn's right to independent counsel arises as a result of actual conflicts of interest which may arise due to the rights St. Paul will likely reserve under the Policy in the event the Waller lawsuit is tendered. At this time, St. Paul reserves the right to appoint panel counsel to participate with Mr. Cohn's independent counsel in representing Mr. Cohn's interests in the Waller lawsuit and further reserves the right to review the relevant experience and billing rates of Mr Cohn's chosen counsel.

We hope that you can appreciate that we are acting under a complete reservation of St. Paul's rights, remedies and defenses under the Policy and under applicable law. We look forward to your providing the requested information to us at your earliest convenience. Of course, in the interim, should you have any questions or concerns, please do not hesitate to call the undersigned.

904230 v1

**STP 000078**

Philip C. Smith, Esq.
Christopher F. Davis, Esq.
May 3, 2001
Page 8

Very truly yours,

By _____

Joseph W.E. Schmitt
Professional E&O Claim Attorney

JS:mld

Enclosure

904230 v1                                    **STP 000079**