

# BOLLINGER, RUBERRY & GARVEY

### ATTORNEYS AT LAW

2050 BURNETT PLAZA
801 CHERRY STREET
FORT WORTH, TEXAS 76102-6898
(817) 878-2967
FACSIMILE (817) 878-6048

CITICORP CENTER
SUITE 2300
500 WEST MADISON STREET
CHICAGO, ILLINOIS 60661-2511
(312) 466-8000
FACSIMILE (312) 466-8001

PLAZA II, SUITE 1500
354 EISENHOWER PARKWAY
LIVINGSTON, NEW JERSEY 07039-1023
(973) 597-9577
FACSIMILE (973) 994-2767

JEFFREY A. GOLDWATER
WRITER'S DIRECT DIAL NUMBER

(312) 466-7224
(312) 466-7232

May 23, 2000

**VIA FACSIMILE & REGULAR MAIL:**
Blum, Yumkas, Mailman,
  Gutman & Denick, P.A.
2 Hopkins Plaza
Suite 1200
Baltimore, MD 21201

Attn:  Max S. Stadfeld, Esq.

RE:    *Shapiro v. Cohn, et al.*
       *Borenstein v. Cohn, et al.*
       Insured:        **Blum, Yumkas, Gutman & Denick, P.A.**
       Claim No.:      **432600**
       Our File No.:   **02919-531 MAIL**

Dear Mr. Stadfeld:

We represent Westport Insurance Corporation ("Westport") with reference to insurance coverage for this claim. This letter is to advise of coverage issues concerning this claim and the allegations made against Irving Cohn ("Cohn") and Blum, Yumkas, Mailman, Gutman & Denick, P.A. ("Blum, Yumkas"). As detailed below, this letter supplements Westport's previous reservation of rights dated November 1, 1999 (a copy of which is enclosed), and requests additional information to evaluate the claim and Westport's potential obligations to Mr. Cohn and Blum, Yumkas with respect to this matter.

We understand that no formal litigation has been filed against Cohn or Blum, Yumkas. However, on January 7, 2000, counsel for Roberta and Jeffrey Borenstein forwarded a draft complaint to Blum, Yumkas. The draft complaint asserts five counts against the Insureds: Accounting (Count I); Breach of Fiduciary Duty Against Cohn (Count II); Breach of Fiduciary Duty Against Blum, Yumkas (Count III); Negligence Against Cohn (Count IV); and Negligence Against Blum, Yumkas (Count V). The complaint generally alleges that over a period of twenty years, Cohn failed to account for and manage the prudent investment of trust assets. Further, Cohn failed to terminate the trust until eight years after he was required to do so (once the Borensteins turned 35 years of age).

EXHIBIT

BOLLINGER, RUBERRY & GARVEY

Blum, Yumkas, Mailman,
 Gutman & Denick, P.A.
May 23, 2000
Page 2

Based on the complaint, and defense counsel's investigation, it appears that the following allegations have been raised against Cohn and Blum, Yumkas: failure to account; commingling of trust assets; allowing an escheat to the state; failure to invest many funds at all; failing to keep accurate and precise records; and failing to make investments that were reasonably prudent.

First, the Borensteins allege that the assets of the various trusts were commingled with each other, rendering it difficult to determine what assets belong to which particular trust. Particularly, the assets of Trusts No. 8 (Shapiro) and No. 9 were apparently intertwined. At present, there remains a dispute as to what portion belonged to No. 9, and what portion actually belonged to No. 8.

Second, the Borensteins also allege that Blum, Yumkas refused to provide them with an accounting, and interfered with their attempts to obtain the documentation independently.

Third, in 1992, monies belonging to the Shapiro-Flex Trusts escheated to the state of Maryland. The money was subsequently recovered by Cohn, however, for a three year period, the money earned no interest.

Fourth, Shapiro-Flex Trusts monies were also apparently abandoned in bank accounts, and have not been invested since the 1970s. While these funds were apparently returned to the beneficiaries, they claim that they are entitled to recover the lost interest that would have been earned had these funds been properly invested.

As to the Shapiro, the October 14, 1999 letter from Sam Shapiro to Denick questions the accounting, record keeping, the true assets of Trust No. 8, and the escheat to the State. The letter also cites Cohn's alleged breach of fiduciary duty, and his alleged mishandling of the trusts.

Additionally, it has been discovered that Cohn had previously been named as a defendant in his capacity as trustee for the various trusts and beneficiaries in an action brought by the United States Government. The action consisted of Summonses filed by the United States Internal Revenue Service, dated September 16, 1997, and issued to Irving Cohn, as trustee of the various Shapiro-Flex Trusts. The summonses sought all documents and records in Cohn's possession regarding income received by those Trusts from 1986-1995, and stated that the "IRS will use this information to prepare a federal income tax return for the following year(s) when you didn't file a return: 1986, 1987, 1988, 1989, 1990, 1991, 1992, 1993, 1994, 1995."

On August 3, 1998, the United States filed a Petition to Enforce Internal Revenue Service Summons, alleging that Cohn did not respond to the September summonses, and requesting compliance. On August 6, 1998, the United States filed an Order to Show Cause for failure to comply with the Internal Revenue Services summonses dated September 18, 1997. On January 22, 1999, the matter was dismissed and it was stated on the Order that "the Respondent in the

BOLLINGER, RUBERRY & GARVEY

Blum, Yumkas, Mailman,
  Gutman & Denick, P.A.
May 23, 2000
Page 3

above-captioned case complied with the Internal Revenue Administrative Summons issued on September 18, 1997. . ." According to information received to date, Cohn previously filed extensions and paid estimated federal tax payments due. After Cohn filed in excess of 300 federal tax returns, the action was dismissed. Those tax returns have been audited, and the IRS has advised that approximately $47,000 in additional tax, interest and penalties is due, and has also disallowed $272,000 of refunds because of the failure to timely seek them. Moreover, Cohn never filed state tax returns on behalf of the beneficiaries and, as a result, there is approximately another $80,000 in taxes, interest, and penalties, and disallowed deductions, likely due.

Finally, it has also apparently been discovered that there are boxes of unnegotiated checks dating back into the 1970s and 1980s that were never negotiated on behalf of the Trusts. These checks apparently total in the thousands of dollars.

Westport Insurance Corporation issued Customized Practice Coverage Policy No. MDL-022344-3 to Blum Yumkas Mailman Gutman & Denick, P.A. for the policy period of January 1, 1999 to January 1, 2000. The Policy has limits of liability of $5 million per claim and in the aggregate, subject to a $15,000 per claim deductible.

The Policy contains the following Insuring Agreement

    I.    INSURING AGREEMENTS

    A.    The Company shall pay on behalf of any Insured all Loss in excess of the deductible which any Insured becomes legally obligated to pay as a result of Claims first made against any Insured during the Policy period and reported to the Company in writing during the Policy Period or within sixty (60) days thereafter, by reason of any Wrongful Act occurring on or after the Retroactive Date, if any;

***

The Policy also contains the following provision concerning reporting of potential claims:

***

If, during the Policy Period, any Insured first becomes aware of a Potential Claim and gives written notice of such Potential Claim during the Policy Period, any Claims subsequently made against any Insured arising from the Potential Claim shall be considered to have been made during the Policy Period.

The Insured(s) shall include within any notice of Claim or Potential Claim a description of the Claim or Potential Claim, the alleged Wrongful Act

BOLLINGER, RUBERRY & GARVEY

Blum, Yumkas, Mailman,
  Gutman & Denick, P.A.
May 23, 2000
Page 4

> including date(s) it was committed, a summary of the facts upon which the Claim or Potential Claim is based, the alleged or potential damage that may result, the names of actual or potential claimants, the names of Insured(s) against whom the Claim was or may be made, and the date and circumstances by which the Insured(s) first became aware of the Claim or Potential Claim.

This matter was first reported to Westport as a potential claim on September 29, 1999. Therefore, any claims subsequently made against Blum, Yumkas by these claimants will be deemed made within the 1999-2000 Policy year, subject to the terms, provisions, conditions and exclusions contained in the Policy.

The Policy also contains the following provision regarding multiple insureds, claims and claimants:

X.    MULTIPLE INSUREDS, CLAIMS AND CLAIMANTS

> The inclusion of more than one Insured in any Claim or the making of Claims by more than one person or organization shall not increase the limits of liability or the deductible. Two or more Claims arising out of a single Wrongful Act, as defined in each of the attached Coverage Units, or a series of related or continuing Wrongful Acts, shall be a single Claim. All such Claims whenever made shall be considered first made on the date on which the earliest Claim was first made arising out of such Wrongful Act, as defined in the applicable Coverage Unit, and all such Claims are subject to one "Per Claim Limit of Liability" and deductible.

"Wrongful Act" is defined as:

> Any act, error, omission, circumstance or Personal Injury or breach of duty in the rendition of legal services for others in the Insured's capacity as a lawyer, and arising out of the conduct of the Insured's profession as a lawyer, . . . When an Insured acts as an administrator, conservator, executor, guardian, trustee, escrow agent, receiver or other court-appointed fiduciary, the Insured's wrongful acts in such capacity shall be deemed to be the rendition of legal services for others in the Insured's capacity as a Lawyer.

Any claims made by the Shapiro-Flex Trust beneficiaries would be based upon a "series of related or continuing Wrongful Acts" under the Westport Policy. Accordingly, these claims would be treated as one "Claim" for purposes of limits of liability, deductibles, which will be deemed to be made in the 1999-2000 policy period.

## BOLLINGER, RUBERRY & GARVEY

Blum, Yumkas, Mailman,
 Gutman & Denick, P.A.
May 23, 2000
Page 5

The Policy also contains various limitations and exclusions. The "Limitation of Individual Prior Acts" Endorsement provides that "The Policy does not apply to any Claim based upon, arising out of, attributable to, or directly or indirectly resulting from an act, error, omission, circumstance or Personal Injury committed by the following Insured(s) prior to the corresponding Retroactive Date(s):

            I.F. Cohn              07/01/88


                                    ***


Westport has received information indicating that the Shapiro-Flex Trust beneficiaries allegations include the alleged commission of Wrongful Acts by Cohn prior to July 1, 1988. Please be advised that Westport reserves its right to decline to indemnify Cohn or Blum, Yumkas for any judgment, settlement or award based upon Wrongful Acts occurring prior to July 1, 1988, pursuant to the Limitation of Individual Prior Acts Endorsement.

The Policy also contains various Exclusions. In addition to Exclusions A and L (detailed more fully in Westport's prior reservation of rights dated November 1, 1999), the Policy also contains Exclusion B. Exclusion B provides that the Policy shall not apply to any Claim based upon, arising out of, attributable to, or directly or indirectly resulting from:

> B.    Any act, error, omission, circumstance or Personal Injury occurring prior to the effective date of this Policy if any Insured at the effective date knew or could have reasonably foreseen that such act, error, omission, circumstance or Personal Injury might be the basis of a Claim;

Exclusion B applies to preclude coverage for any claims based on acts, errors, omissions or circumstances which, prior to January 1, 1999, Cohn and/or Blum, Yumkas subjectively knew, or could have objectively foreseen, might be the basis of a claim.

Prior to January 1, 1999, Cohn received the summonses regarding his failure to file tax returns and therefore, was placed on subjective and/or objective notice of a potential claim. Westport must therefore reserve its right to decline to indemnify Cohn or Blum, Yumkas for any judgment, settlement or award based upon Cohn's failure to file tax returns.

Additionally, based upon information received to date, it appears that Cohn and/or Blum, Yumkas may have subjectively or objectively foreseen that other conduct alleged might be expected to be the basis of a claim or suit. Accordingly, Westport also reserves its right to assert Exclusion B as a defense to any obligation to defend or indemnify Cohn or Blum, Yumkas for the claims made by the Shapiro-Flex Trust beneficiaries.

BOLLINGER, RUBERRY & GARVEY

Blum, Yumkas, Mailman,
  Gutman & Denick, P.A.
May 23, 2000
Page 6

Please also be advised that Westport is currently investigating the representations made to Westport in the application process. In the application, signed by Blum, Yumkas and dated November 13, 1998, Blum, Yumkas answered Question 11 in the negative. Question 11 inquired as follows:

11. Is the Applicant, its predecessor firms, or <u>any</u> individual proposed for this insurance aware of any circumstance, act, error, omission or personal injury which <u>might be expected</u> to be the basis of a legal malpractice claim or suit that has <u>not</u> previously been reported to the firm's insurance carrier; or has there been any breach of duty to a client or third party which has not yet resulted in a claim or suit?

Prior to the firm's completion of the renewal application, Cohn and/or Blum, Yumkas became aware that Cohn had failed to file tax returns on behalf of the Shapiro-Flex Trusts. Additionally, it also appears that Cohn and/or Blum, Yumkas may have subjectively or objectively foreseen that other conduct now alleged might be expected to be the basis of a claim or suit. Accordingly, Westport reserves the right to rescind any the policies issued to Blum, Yumkas, if it determines that material misrepresentations were made on any of the applications, in response to Question 11, or to any other inquiry.

Despite the foregoing, Westport will continue to provide for your defense, subject to this supplemental reservation of rights, and its previous reservation dated November 1, 1999. Currently, you are being defended by counsel of your choice, Alvin I. Frederick, Esq. Of Eccleston & Wolf, Baltimore, Maryland.

However, to fully evaluate the claim and coverage, we need to review all pleadings, documents, memoranda, correspondence and other documents maintained at Blum, Yumkas with respect to the Shapiro-Flex trusts. We therefore request that you advise of the earliest opportunity for us to review Blum, Yumkas' files for this documentation and information as soon as possible so that Westport may promptly provide a more definite position with respect to this claim.

Please also be advised that nothing herein constitutes a waiver of any rights or defenses of Westport, and that Westport reserves all of its rights and defenses -- whether or not stated herein. This includes, but is not limited to, the right to supplement this reservation of rights, if additional information warrants, to withdraw from the defense of this matter, to seek reimbursement of defense costs, or to file a declaratory action to determine Westport's obligations, if any, with respect to this claim.

## BOLLINGER, RUBERRY & GARVEY

Blum, Yumkas, Mailman,
  Gutman & Denick, P.A.
May 23, 2000
Page 7

   We look forward to your prompt response.  Thank you for your attention and anticipated cooperation.

           Very truly yours,

           Jeffrey A. Goldwater

           Michelle M. Bracke

JAG:MMB:mag

cc:  Alvin I. Frederick, Esq.
   Eccleston and Wolf

   Christopher F. Davis, Esq.
   Hearne & Bailey, P.A.

   Kristina Miller
   Westport Insurance Corporation
   Claim no.: 432600

*Westport*

R. JOHNSON

NOV 0 1 1999

November 1, 1999

Bernard Denick
Blum, Yumkas, Mailman, Gutman & Denick
1200 Mercantile Bank & Trust Building
Two Hopkins Plaza
Baltimore, MD 21201

K. MILLER

NOV 0 2 1999

**CERTIFIED MAIL - RETURN RECEIPT REQUESTED**

Re:   Insured:   Blum, Yumkas, Mailman, Gutman & Denick
      Claim No.:   432600
      Claimant:   Shapiro

Dear Ms. Denick:

This will confirm our conversation of October 29, 1999 and receipt of Max Stadfeld's correspondence dated September 29, 1999 regarding the above claim.

Blum, Yumkas, Mailman, Gutman & Denick, P.A. was issued a Customized Practice Coverage Insurance Policy No. MDL-022344-3 by Westport Insurance Corporation. This is a claims made and reported policy which incepted on January 1, 1999 and expires January 1, 2000. The Lawyers Professional Liability Coverage Unit has a limit of liability of $5,000,000 per claim and in the aggregate for the policy period. The deductible is $15,000 per claim and applies to claims expenses and damages. Claims expenses are in addition to the limit of liability.

You advised that you spoke with Sam Shapiro, counsel representing Ronald, Kenneth and Susan Shapiro. Mr. Shapiro agreed to hold off on any action with regard to this potential claim until 12/30/99. Your firm would be providing Mr. Shapiro with an accounting of all transactions relating to the trust.

You believe that Mr. Shapiro's letter contained some misstatements and Mr. Shapiro is unaware that some of the money in the trust went to a niece and sister-in-law.

*Westport*

The attorney who is handling this trust. Irving Cohen, has had some recent personal tragedies and health problems.  You anticipate that Mr. Cohen will be back in your office in early November.  You and Mr. Cohen will obtain the information Mr. Shapiro is seeking and forward it on to him.  You are confident that the forthcoming will be satisfactory to Mr. Shapiro.  Every penny in the trust can be accounted for.  As we discussed. please forward a copy of the letter you send to Mr. Shapiro regarding the accounting of the trust.

Please provide any clarifications to these facts.

Mr. Shapiro has raised some questions where the money in the trust is, what happened to certain stock or dividends.

Please refer to your policy's LAWYERS PROFESSIONAL LIABILITY COVERAGE UNIT, which provides at I. COVERAGE:

> I. COVERAGE- PROFESSIONAL LIABILITY
>
> > A.  The Company will pay on behalf of any INSURED all LOSS in excess of the deductible which the INSURED becomes legally obligated to pay as a result of CLAIMS first made against any INSURED during the POLICY PERIOD and reported to the Company in writing during the POLICY PERIOD or within sixty (60) days thereafter, by reason of any WRONGFUL ACT occurring on or after the RETROACTIVE DATE, if any;

The General Terms & Conditions of the policy provide:

> XIV. EXCLUSIONS
>
> > This POLICY shall not apply to any CLAIM based upon, arising out of, attributable to, or directly or indirectly resulting from:
> >
> > A.  any criminal, dishonest, malicious or fraudulent act. error, omission or PERSONAL INJURY committed by an INSURED.  This exclusion does not apply to any INSURED  who is not so adjudged;

While we give no credence to the plaintiff's allegations. we must advise you that if a court determines that you engaged in any criminal. dishonest. malicious or fraudulent acts. the

*Westport*

policy would not provide any indemnification to any award based thereon.

Please refer to the policy's LAWYERS PROFESSIONAL LIABILITY COVERAGE UNIT, which provides at VI. EXCLUSIONS.

> In addition to those Exclusions contained in Section XIV of the GENERAL TERMS & CONDITIONS, this COVERAGE UNIT shall not apply to any CLAIM based upon, arising out of, attributable to, or directly or indirectly resulting from:
>
> > L. any conversion, misappropriation or improper commingling of funds;

Based upon Exclusion L of the Lawyers Professional Liability Coverage Unit, the policy would not provide indemnification to you for any claim based upon, arising out of or attributable to conversion.

The complaint seeks an unspecified amount of damages. Your policy's Lawyers Professional Liability Coverage Unit has a $1,000,000 limit of liability per claim. Because there is an exposure to you beyond your $1,000,000 policy limits, you may wish to retain counsel, at your own expense, to protect this uninsured exposure.

As we discussed, we will continue to monitor the developments on this potential claim. If your firm's letter providing for the trust accounting is satisfactory to Mr. Shapiro and no claim is pursued, this file will be closed. However, if a claim is pursued, it will be necessary for you to forward a complete copy of your file on this matter.

This letter is not intended to waive or invalidate any coverage defenses which may become apparent after further investigation into this potential claim or after receipt and review of the requested information, or receipt and review of any additional litigation or Complaint which may be filed against you in this matter.

Feel free to contact me at 312/849-5474 if you have any questions or comments regarding the above.

Very truly yours,

Kristina J. Miller
/kjm
cc:    Debbie Holbrook, Administration Associates, Inc. via fax 202/347-3463