IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WESTPORT INSURANCE CORPORATION, )
          )
    Plaintiff, )
vs. ) Civil Action No.: AMD-02-1774
          )
ST. PAUL FIRE & MARINE INSURANCE )
COMPANY, )
          )
    Defendant. )
          )

**DEFENDANT ST. PAUL FIRE & MARINE INSURANCE COMPANY'S
REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND
RESPONSE TO WESTPORT'S CROSS MOTION FOR SUMMARY JUDGMENT**

Defendant St. Paul Fire & Marine Insurance Company ("St. Paul"), by and through its attorneys Ross, Dixon & Bell, LLP, for its Reply in Support of its Motion for Summary Judgment and Response to Westport's Cross Motion for Summary Judgment, states as follows:

**I.**     **INTRODUCTION**

This is an insurance coverage declaratory judgment action by which the parties seek determinations as to their respective obligations pursuant to the terms of the policies they issued. Westport argues that St. Paul breached its duty to defend their common insured, Irving Cohn, and that St. Paul must therefore reimburse Westport.

It is undisputed that the policy issued by St. Paul states, in pertinent part, that "the Company shall (a) defend in his name and behalf any *suit* against the Insured alleging damages, even if such *suit* is groundless, false, or fraudulent..." (emphasis added). Despite this clear language, Westport unpersuasively argues that St. Paul had a duty to defend claims that were not suits. Westport urges the Court to ignore the language of the policy, and if it will not, to adopt a non-sensical definition of the word "suit."

310494 v1

As the undisputed materials facts demonstrate, in the one instance in which a "suit" was actually filed and pursued, St. Paul provided a defense in conjunction with Westport. Westport seeks to absolve itself of its duty to defend the suit, and argues that St. Paul should bear primary responsibility to pay all defense costs incurred in the suit.

Westport's cross-motion for summary judgment should be denied because St. Paul has abided by the clear terms of the policy it issued, and therefore is not responsible to reimburse Westport for claims that did not constitute "suits," or to assume sole responsibility for defense expenses in the one actual suit filed against the insured.

## II. STATEMENT OF FACTS

Please refer to the statement of undisputed facts set forth in St. Paul's Motion for Summary Judgment. To the extent Westport advances material facts inconsistent with St. Paul's undisputed facts, they are denied.

## III. ARGUMENT

### A. St. Paul Had A Duty To Defend Cohn Only With Respect To The Waller Suit Because Of The Clear Language Of The St. Paul Policy.

It is well-settled that the interpretation of insurance policies to determine the scope and limitations of coverage begins with the actual language of the policy. *Mamsi Life & Health Ins. Co. v. Callaway*, 825, A.2d 995, 1005 (Md. 2003). The terms of an insurance policy should be accorded their "customary, ordinary, and accepted meaning." *Id.* It is undisputed that the St. Paul Policy states, in pertinent part, that "the Company shall (a) defend in his name and behalf any *suit* against the Insured alleging damages, even if such *suit* is groundless, false, or fraudulent..." (emphasis added). The word "suit" means "any proceeding by one person or persons against another or others *in a court of law* in which the plaintiff pursues, *in such court,* the remedy which the law affords him for the redress of an

injury or the enforcement of a right, whether at law or in equity." Black's Law Dictionary, 6th ed., at p.1434 (emphasis added). It is, therefore, not surprising that under Maryland law, it is a condition precedent to the duty to defend that an actual suit be filed where the policy provides coverage for "any suit against the insured." *Haines v. St. Paul Fire and Marine Ins. Co.*, 428 F.Supp. 435, 438-39 (D.Md. 1977) (construing provision in St. Paul policy nearly identical to provision at issue in the case at bar).

In this case, it is undisputed that the only suit filed against Cohn was the Waller suit, which St. Paul defended in concert with Westport. The Borenstein complaint was neither filed in court nor pursued in court. Therefore, it was not a "suit" according to the customary and ordinary meaning of the word. Similarly, the claims of Marion Smith and Christine Geer were never filed or pursued in court, and therefore were not "suits."

In its cross-motion, Westport engages in extraordinary linguistic, logical, and legal gymnastics in order to circumvent the clear language of the St. Paul Policy. The foundation of Westport's argument simply ignores the requirement that a *suit* exist in order to trigger St. Paul's defense obligation. Indeed, Westport presents six pages of legal argument before quoting the actual St. Paul Policy language at issue. Westport argues that St. Paul had a duty to defend because there was a potential for coverage. However, in every Maryland case Westport cites in support of its argument, a lawsuit had been filed by underlying claimants against an insured. *See, e.g., Sherwood Brands, Inc. v. Hartford Accident & Indemnity Co.*, 347 Md. 32, 35, 698 A.2d 1078, 1079 (Ct. App. 1997); *Teletronics Int'l Inc. v. CNA Ins.*, 302 F. Supp. 442, 445 (D. Md. 2004); *Utica Mutual Ins. Co. v. Miller*, 130 Md. App. 373, 379, 746 A.2d 935, 938 (2000); *Mutual Benefit Group v. Wise M. Bolt Co.*, 227 F.

Supp. 2d 469, 472 (D. Md. 2002); *Walk v. Hartford Cas. Ins. Co.*, 382 Md. 1, 7-8, 852 A.2d 98, 101-02 (2004). These cases are simply inapposite.

To the extent that Westport relies on the St. Paul Policy language, it seeks an extraordinarily expansive application of the word "suit." Westport argues that "the term 'suit' without more, should be construed to provide a form of 'litigation insurance' that will protect against any and all attempts to assess liability against the insured which are based on covered activities." *See* Cross Motion at p. 16. Essentially, Westport seeks to define "suit" as a dispute that is not a suit, but could potentially become a suit. This definition is clearly not customary or ordinary, and should be rejected. Westport's definition of "suit" is further inappropriate as this Court has recognized that litigation insurance "protect[s] the insured from the expense of <u>defending suits</u> brought against him." *Applied Signal & Image Technology, Inc. v. Harleysville Mut. Ins. Co.*, 252 F. Supp. 2d 215 (D. Md. 2003) (*quoting Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 347 A.2d 842, 851 (1975)(emphasis added)).

Westport also argues that St. Paul had a duty to defend prior to the <u>Waller</u> suit because these claims were never filed due to a Tolling Agreement and a "gentlemen's agreement." *See* Cross-Motion at 16 (stating that St. Paul "had an obligation to defend Cohn and all claims because it was clear that lawsuits were imminent and were only prevented because of the actions of defense counsel, and the tolling agreement executed by the parties."). It does not matter <u>why</u> complaints were never filed and suits were not pursued, but only <u>whether</u> complaints were filed and suits were pursued. In *Maryland Casualty Company v. Armco, Inc.*, 822 F.2d 1348, 1353 (4th Cir. 1987) (applying Maryland

law), the Fourth Circuit denied that an insurer is obligated to pay for "prophylactic measures" which the insurer had not contracted to cover. The court stated:

> The appellant does argue, as a matter of judicial policy, that the insurer ought to be liable where the insured takes steps to mitigate the damages which would be chargeable to the insurer. Such an interpretation would suffer from the same difficulties attendant in construing [the insurer] liable for [the insured]'s ... employment of prophylactic measures: the insurer would be uncertain of the extent of its liability in the absence of a requirement for an injury, the insured would have the tendency to over-utilize the "free" resource, and the judicial system would be faced with the impossible task of attempting to define the limitations on the necessity for the costs incurred in preventing future harm. We find this argument unpersuasive.

822 F.2d at 1355.

In this case, the Waller suit is the only suit at issue, and pursuant to the clear language of the St. Paul Policy, St. Paul had no duty to defend claims that are not "suits," as that term is customarily and ordinarily defined.

Having first ignored the language of the St. Paul Policy, Westport next ignores applicable Maryland law. Instead, Westport relies on the laws of two other states and the District of Columbia in support of its argument that the word "suit" means something other than a "proceeding...in a court of law." However, this Court has considered a St. Paul policy containing language nearly identical to the language of the St. Paul Policy at issue in the case at bar.[1] *See Haines* 428 F.Supp. at 438-39. In *Haines*, this Court stated that "[u]nder [the defense provision], a condition precedent to the assumption by [St. Paul] of a defense is the existence of a suit alleging damages against the insured." Based upon its application of the policy language, the Court found that an SEC action seeking injunctive

---

[1] The applicable language differs only in that the St. Paul Policy at issue in the case at bar states that the Company "shall defend," whereas the policy in *Haines* stated that "the
(continued on the next page)

310494 v1

relief did not allege damages. Similarly, the Fourth Circuit's decision in *Provident Bank of Maryland v. Travelers Property Cas. Corp.*, 236 F.3d 138 (4th Cir. 2000) (applying Maryland law) bolsters St. Paul's position, as the court explained that an insurer's duty to defend "is triggered only when a claim **in a lawsuit** is made against [the insured] that, if resolved adversely to the [the insured], would potentially require [the insurer] to indemnify [the insured] for the loss." 236 F.3d at 145 (emphasis added).

Ignoring Maryland law which clearly contradicts its position (as stated above), Westport instead cites to *Continental Cas. Co. v. Cole*, 809 F.2d 891 (D.D.C. 1987). In *Cole*, the Court of Appeals for the District of Columbia considered the "peculiar circumstances" where a third-party filed a motion to vacate the remand of a case which had been prosecuted on its behalf. As the *Cole* court explained, "although [the third-party] was proceeding by means of a motion to vacate the remand, the thrust of his demands and actions was that he wanted the district court to render judgment against [the insured] for its conduct in [the litigation]." 809 F.2d at 899. Therefore, according to the *Cole* court, the third-party's "action had all the trappings of a suit against the insured, including adversaries who were before the court as well as a dispute over which the court presumably had authority because of its retention of jurisdiction." *Id.* Westport's attempt to compare the present matter to the "peculiar circumstances" in *Cole* is unavailing. There simply was no matter pending against Cohn before a judge that could be called a "suit," as Cohn was not facing adversaries before a court.

---

(continued from the previous page)

Company shall have the right and duty to defend"; the language of this part of the defense provisions is otherwise identical.

Westport's citation to *Ryan v. Royal Ins. Co. of America*, 916 F.2d 731 (1990) is similarly unavailing. In fact, the *Ryan* court rejected the argument that a letter received from New York's Department of Environmental Conservation constituted the functional equivalent of a "suit" sufficient to trigger to duty to defend under a liability policy. As the *Ryan* court noted, with "the absence of any suit or formal administrative proceeding," this argument "bends the policy language well past the breaking point." *Id*. Further, the *Ryan* Court limited its opinion to the context of pollution coverage. 916 F.2d at 740.

The St. Paul Policy clearly obliges St. Paul to provide a defense only for a suit against the Insured. Applying the customary and ordinary definition of the term "suit," it is clear that in this matter, the only "suit" was the Waller suit, in which St. Paul shared in the defense. Accordingly, St. Paul did not breach its duty to defend, and Westport is not entitled to recover pre-suit fees, whether legal or accounting. St. Paul respectfully requests that this Court deny Westport's cross-motion, and grant summary judgment in its favor and hold that St. Paul had a duty to defend Cohn only with respect to the Waller suit.

### B.  St. Paul Is Not Liable For Pre-Tender Defense Expenses.

St. Paul has no obligation to pay pre-tender defense expenses unless it breached a duty to defend. As explained above, the plain language of the St. Paul Policy demonstrates that St. Paul had a duty to defend "suits," not disputes that could potentially become "suits." The only actual suit was the Waller suit, for which St. Paul provided a defense, albeit in conjunction with Westport.

Westport's argument that St. Paul is responsible for pre-tender defense expenses is based on the premise that St. Paul breached its duty to defend, but Westport cannot support its premise. In the absence of a breach, Maryland law finds that pre-tender fees and costs are not reimbursable. For example, in *Sherwood Brands, supra*, the Maryland Court of

Appeals, after noting that an insurer is not liable for costs and fees incurred by an insured prior to notice of a suit, explained that "[i]t follows logically that there would be no obligation to pay for litigation expenses incurred by an insured during a time when the insurer had no duty to defend and therefore no duty to assume litigation expenses." 347 Md. At 47-48, 698 A.2d at 1085.

Westport presents tortured arguments for ignoring the actual terms of the St. Paul Policy, and based upon these tortured arguments demands that St. Paul pay pre-tender defense expenses. St. Paul respectfully requests that this Court deny Westport's cross-motion for summary judgment, and grant summary judgment in its favor because St. Paul has no obligation to pay for defense or accounting fees incurred prior to the filing of the Waller suit.

### C. St. Paul Is Entitled To An Apportionment Of Defense Costs Expended In The Waller Suit Which Were Incurred After The Waller Suit Was Tendered To St. Paul.

St. Paul provided a defense, in conjunction with Westport, in the Waller suit, the only suit filed against the insured. The occurrence-based St. Paul Policy covered the policy period from 1972 to 1975 – not even 7% of an approximately 45 year span during which the insured, Irving Cohn, was alleged to have mismanaged the Shapiro trust. St. Paul reasserts its position that a pro-rata allocation of defense costs between the insurers would serve to provide an equitable result with respect to the apportionment of post-tender defenses costs expended in the Waller suit. The only case so far cited by either party that considers allocation between a triggered occurrence-based policy and a claims-made policy indicates that, at worst for St. Paul, a 50/50 split of defense fees between St. Paul and Westport would be appropriate. *St. Paul Fire & Marine Ins. Co. v. Vigilant Ins. Co.*, 919 F.2d 235 (4th Cir. 1990) (applying North Carolina law).

310494 v1

Westport appears to argue that, pursuant to Maryland law, "other insurance" clauses do not only apply when coverage is concurrent. This argument is contrary to Maryland caselaw, which states that "[w]here an excess clause from one policy conflicts with a *pro rata* clause from a **concurrently** effective policy, we disregard the *pro rata* clause in favor of the excess clause." *Nolt v. United States Fidelity and Guaranty Co.*, 329 Md. 52, 60, 617 A.2d 578, 582 (Ct. App. 1993) (emphasis added). Westport proposes instead that "the issue is not whether the time periods coincide, rather, the issue is whether both policies provide overlapping coverage for the same risk involved." Cross-Motion at 25. Importantly, neither of the cases Westport cites for support to this proposition even remotely provide backing for it. *See Consolidated Mutual Ins. Co. v. Bankers Ins. Co. of Pennsylvania*, 244 Md. 392, 223 A.2d 594 (Ct. App. 1966); *National Indemnity Co. v. Continental Ins. Co.*, 61 Md. App. 575, 487 A.2d 1191 (Ct. App. 1985). Both the *Consolidated Mutual* and *National Indemnity* decisions involved concurrent policies. Furthermore, the *Consolidated Mutual* decision explicitly states that it was applying the majority rule for the situation "[w]here an excess clause and a pro-rata clause appear in **concurrently** effective automobile liability policies[.]" 244 Md. At 399, 223 A.2d at 598.

Accordingly, St. Paul respectfully requests that this Court deny Westport's cross-motion for summary judgment, and grant summary judgment in its favor to apportion the post-tender defense costs in the Waller suit.

## IV.     CONCLUSION

WHEREFORE, Defendant St. Paul Fire & Marine Insurance Company, respectfully requests that this Court grant summary judgment in its favor, and deny Westport's cross-motion for summary judgment. A proposed Order is filed herewith.

Respectfully submitted,

ROSS, DIXON & BELL, LLP

Dated:  November 8, 2004                                 By:_____/s/_____
                                                                          Richard A. Simpson
                                                                          Maryland Federal Bar No. 014714
                                                                          2001 K Street, N.W.
                                                                          Washington, D.C. 20006-1040
                                                                          Phone: (202) 662-2035
                                                                          Facsimile: (202) 662-2190

                                                                          *Attorneys for Defendant St. Paul Insurance Company*

Of Counsel:

Michael P. Tone
Ross, Dixon & Bell, LLP
Three First National Plaza, Suite 525
Chicago, IL 60602
Phone – 312-759-1920
Facsimile – 312-759-1939

310494 v1

## **CERTIFICATE OF SERVICE**

     I certify that on this <u>8th</u> day of November, 2004, service of a true and complete copy of the above and forgoing pleading was made upon the following by depositing in the U.S. Mail, postage prepaid:

| | |
|---|---|
| Paul Cottrell<br>Tighe, Cottrell & Logan, P.A.<br>First Federal Plaza, Suite 500<br>P.O. Box 1031<br>Wilmington, DE 19899 | Michelle M. Bracke, Esq.<br>Bollinger Ruberry & Garvey<br>500 W. Madison Street, Suite 2300<br>Chicago, Illinois 60661-2511 |

                                                                                   /s/_____
                                                              Richard A. Simpson

310494 v1