IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WESTPORT INSURANCE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. AMD-02-1774 |
| | ) | |
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF WESTPORT INSURANCE CORPORATION'S REPLY IN SUPPORT OF ITS CROSS MOTION FOR SUMMARY JUDGMENT**

Westport Insurance Corporation, for its Reply In Support Of Its Cross-Motion for Summary Judgment, states as follows:

**I.      INTRODUCTION**

The factual stipulations entered into by the parties, and the Memoranda of Law submitted in support of the parties' respective cross-motions for summary judgment, make it clear that there are only two real issues before this Court: (1) whether Westport's "excess" clause trumps St. Paul's "pro rata" clause under Maryland law, rendering the Westport Policy excess; and (2) whether St. Paul had an obligation to defend Cohn against the imminent legal action threatened against him.

As detailed below, and in Westport's principal Memorandum, Maryland courts have consistently held that a "pro rata" clause is always disregarded in favor of an "excess" clause, rendering the Westport Policy excess to the St. Paul Policy as a matter of law. Contrary to St. Paul's arguments on this issue, there is simply no room for debate that any other allocation methodology is appropriate or applicable in this case.

1

Likewise, Maryland law does not support St. Paul's assertion that it was under no obligation to defend Cohn against the suits that were about to be filed against him, which suits were only temporarily abated by reason of Westport's defense. Where, as here, "suits" were imminent, Maryland precedent supports the conclusion that St. Paul's defense obligation was triggered. Westport further asserts that the St. Paul Policy itself interchangeably utilizes the terms "claim" and "suit," which, under Maryland law, also supports the conclusion that St. Paul's obligation to defend was triggered.

Accordingly, as the parties' joint stipulations support, and Maryland law confirms: (1) St. Paul was the primary insurer; (2) St. Paul had an obligation to defend; and (3) St. Paul breached its duty to defend. As such, Westport is entitled to judgment as a matter of law that St. Paul is obligated to reimburse Westport for all of the fees, costs and expenses incurred by Westport in defending against the underlying claims asserted against Cohn.

**I.   ARGUMENT**

    **A.   Maryland Law Is Clear That The Excess "Other Insurance" Clause Contained In The Westport Policy Always Prevails Over The Pro Rata "Other Insurance Clause" Contained In The St. Paul Policy.**

The parties agree that the Westport Policy contains an "excess" "other insurance" clause, and the St. Paul Policy contains a "pro rata" "other insurance clause. *See Joint Stipulation, ¶9.* Under Maryland law, when an "excess" clause in one policy conflicts with a "pro rata" clause contained in another policy, the policy with the "pro rata" clause becomes primary coverage, and the policy with the "excess" clause is deemed to be "excess" coverage.

St. Paul argues that the "other insurance" clauses are not applicable here because the policies are not "concurrent." However, St. Paul misstates the clearly applicable litmus test. Under Maryland law, the standard for determining whether "other insurance" clauses are applicable is whether there is "double" or "overlapping" coverage, *i.e.,* whether there is more than one policy covering a claim[1]. *See, e.g., National Indemnity Co. v. Continental Ins. Co.*, 61 Md. App. 575, 487 A.2d 1191, 1193 (Ct. App. 1985). *See also Nolt v. USF&G*, 329 Md. 52, 617 A.2d 578, 581 (1993); *Universal Underwriters Ins. Co. v. Allstate Ins. Co.*, 99 Md.App. 595, 638 A.2d 1220, 1222 (1994) ("Double or overlapping insurance" exists when more than one policy covers a claim . . ."); and *Consolidated Mut. Ins. Co. v. Bankers Ins. Co. of Pennsylvania*, 244 Md. 392, 223 A.2d 594 (1966) ("in cases where two or more of these 'other insurance' clauses conflict, most courts resolve the problem of double coverage by attempting to reconcile the conflicting clauses).

The analysis of what constitutes "double" coverage was clearly and unequivocally enumerated by the appellate court in *National Indemnity*, when it stated as follows:

> Double coverage exists when more than one insurance policy covers a claim. [*citation omitted*]. Often the policies contain clauses that limit the insurer's liability based on the availability of other coverage. These 'other insurance' clauses indicate the allocation of responsibility among the insurance companies involved.

487 A.2d at 1193.

***

---

[1] It is true that in each of these cases the policies provided coverage for the same time period. However, the deciding courts did not hold that this fact was the standard for determining whether the clauses applied. Rather, the courts held that the 'other insurance" clauses are applicable whenever there is "double" or "overlapping" coverage – which is clearly the case here.

Indeed, if St. Paul is arguing that the clauses would only apply if two "occurrence" policies were issued to Cohn for the same policy year and/or that "double" coverage only exists in such a context, then this would render the clause superfluous, because there is no logical reason why an insured would buy two policies to cover him for the same year.

> In a situation involving double coverage, a court attempts 'to reconcile the conflicting clauses' . . . Preliminarily, this evaluation requires a determination of the type of other insurance involved – excess, escape, or pro rata. After making this characterization, this conflict is resolved as follows:
>
> (1) An excess clause always prevails over an escape or pro rata clause. In effect, the policy with either of the latter two clauses becomes primary coverage, and the excess insurer becomes secondarily liable.
>
> ***

487 A.2d at 1193-94.

Thus, it is clear that in Maryland, when two policies potentially provide coverage for the same claim, "other insurance" clauses are applied to determine the insurers' respective obligations to the insured party. This is consistent with the Westport policy language, which does not reference "concurrent" coverage, but instead states that the clause applies "if a Prior Firm has other insurance applicable to a claim against the Insured covered by this Coverage Unit." *Joint Stipulation, ¶8. See, e.g., Harford County v. Harford Mut. Ins. Co.*, 327 Md. 418, 610 A.2d 286, 293 (1992) (the primary principle of construction of any insurance contract is to apply the terms of the insurance contract). Similarly, and significantly, the St. Paul Policy also does not use the term "concurrent." *Joint Stipulation, ¶7.*

The decision in *Vigilante*, cited by St. Paul, is irrelevant here, because that case was decided under North Carolina law, and not Maryland law. The *Vigilante* court was obliged to follow the decision of the North Carolina appellate court in *Ames v. Continental Cas. Co.*, 79 N.C.App. 530, 340 S.E.2d 479 (1986), wherein the court held that when one insurer breaches its duty to defend, it waives any defenses to coverage. 919 F.2d at 241.

Notably, in *Vigilante,* St. Paul, the breaching insurer, argued that the court should apply the "other insurance" clauses to hold the carriers equally liable. However, the court concluded that this would be contrary to the holding in *Ames.* On this point, the reviewing court stated " . . . even if we felt that the other insurance provisions could apply, a holding that the court should refer to Vigilante policy provisions would be inconsistent with the major holding in *Ames*. . . To hold that having breached its duty to defend, Vigilante is estopped to rely on its policy provisions to avoid coverage, requires us, we think to hold also that it may not rely on its 'other insurance' clause to reduce its liability." 919 F.2d at 242.

Here, there is no dispute that the underlying claims were potentially covered by both policies. The underlying claimants asserted conduct by Cohn that was alleged to have occurred, in part, during the St. Paul Policy period, and such claims were alleged to be first made during the Westport Policy period. *See Joint Stipulations, ¶12.* As the St. Paul Policy covers claims based on acts, errors or omission that occurred during its policy period (*¶2)*, and Westport covers claims first made during its policy period (*¶4)*, both policies were potentially triggered. As such, the policies are "double" or "overlapping," as Maryland courts define that term.

It is undisputed that the Westport policy contains an "excess" other insurance clause and that the St. Paul policy contains a "pro rata" clause. *see Joint Stipulations, ¶9.* Under Maryland law, this renders the St. Paul Policy primary, and the Westport Policy excess. *See, e.g., National Indemnity; Centennial Ins. Co. v. State Farm Mut. Ins. Co.*, 71 Md.App. 152, 524 A.2d 110, 113 (1987); *Allstate Ins. Co. v. Federal Ins. Co.*, 23 Md.App. 105, 326 A.2d 29, 38 (1974) (excess clause will always prevail over a pro rata

clause). As an excess insurer, Westport is only secondarily liable for the costs of Cohn's defense, and is therefore entitled to reimbursement of all defense fees, costs and expenses incurred in defending Cohn. *See, e.g., Utica Mut. Ins. Co. v. Miller,* 130 Md.App. 373, 746 A.2d 935, 946-47 (2000).

Although St. Paul alternatively argues for a "50/50" approach,[2] such approach is unsupported by any Maryland case. Moreover, such a construct would have the effect of applying St. Paul's "pro rata" clause, and ignoring Westport's "excess" clause – which is in direct contradiction to Maryland precedent, and the respective policies' language.

> **B.    St. Paul Had An Obligation To Defend The Claims Asserted Against Cohn Because The Claims Asserted Against Cohn Were The Equivalent Of "Suits" Under Maryland Law And Because The St. Paul Policy Also Provided St. Paul With Control Over "Claims"**

There is no factual dispute that St. Paul was on notice of claims potentially covered by the St. Paul Policy, and that St. Paul refused to defend such claims[3]. Thus, the only disputed legal issue is whether St. Paul had an obligation to defend Cohn. Westport submits that where an insured has been threatened with imminent litigation, which litigation is tolled only by reason of an insurer's agreement to defend, such

---

[2] St. Paul alternatively argues for a "time on the risk" type allocation. Contrary to St. Paul's assertion, however, Westport did not provide coverage to Cohn for thirteen years, rather, Westport provided coverage for one year - January 1, 1999 to 2000. St. Paul, on the other hand, provided Cohn with coverage for any acts, errors or omissions that occurred during the three-year period of April 1, 1972 through April 1, 1975. Thus, even if a "time on the risk" allocation were appropriate – which Westport continues to contend is not by reason of the "other insurance clauses" – the analysis would result in a split of $3/4^{th}$ St. Paul, and $1/4^{th}$ Westport.

[3] The parties stipulated that beginning in 1999, the beneficiaries of the Shapiro trusts contacted Cohn threatening litigation for Cohn's conduct, which conduct was alleged to have occurred during the St. Paul Policy Period. *See Joint Stipulations, ¶12-13.* On May 31 2000, Cohn's counsel provided St. Paul with a notice of these matters. *Joint Stipulations, ¶18, 20.* The letter from Borensteins' counsel that enclosed the complaint advised that damages were in excess of $4 million, and that if Cohn did not agree to pay $800,000 in settlement within the next 7 days, the lawsuit would be filed in circuit court. *Joint Stipulations, ¶15.* Additionally, on May 29, 2001, Westport provided St. Paul with further information regarding all the pending claims against Cohn. *Joint Stipulations, ¶26-28.* It is also agreed that, despite receipt of notice, St. Paul at first failed to respond, and then denied, and continues to deny its obligation to defend Cohn against these matters. *See Joint Stipulations, ¶¶21,24,29.*

circumstances invoke the defense provision contained in the St. Policy.  Moreover, even if no "suit" were filed, whether the St. Paul Policy covers "suits" or "claims" should be resolved against the drafter, St. Paul.

Maryland law, not Westport, dictates that St. Paul had a duty to defend all claims brought against Cohn by the Trust Beneficiaries.  Maryland courts hold that the usual and ordinary meaning of the term "suit," when left undefined in the policy, includes claims that evidence probable and imminent legal action seeking damages. *see, e.g., , Bausch & Lomb v. Utica Mutual Ins. Co.,* 330 Md. 758,  625 A.2d 1021, 1027-28 (Ct. App. 1993), *aff'd in part, rev'd in part on unrelated grounds*, 355 Md. 566, 735 A.2d 1081 (1999).

In *Bausch & Lomb*, the primary question presented to the Maryland Court of Appeals was whether the insurer, Utica, was obligated to defend or indemnify Bausch & Lomb as a consequence of groundwater contamination discovered at an industrial site. 625 A.2d at 1024. Like the St. Paul Policy, the policy at issue obligated the insurer to defend only "suits."  *Id.* Shortly after the contamination was discovered, the State of Maryland was notified and placed the site on its master list of potentially hazardous sites, which required that the State approve all clean up efforts and enforce such clean up by the issuance of an injunction or other appropriate legal action. At  about the same time, an adjacent landowner threatened to sue Bausch & Lomb for contamination of property he intended to develop. *Id.* at 1025.

The trial court agreed that, despite the lack of formal litigation, Utica had a duty to defend and indemnify Bausch and Lomb. *Id.* at 1028.  The Court stated, in relevant part:

> There is no question in my mind but that the total circumstances constitute the sufficient coerciveness and adverseness of an administrative body . . . and a degree of definiteness which indicates that this was in fact a suit, a demand for damages and money, to a certain extent, that the State had the right to require to be paid . . .
>
> ***
>
> With regard to the [adjacent developer's] claim, that was sufficient to show a demand and was specifically keyed for 'my property is hurt because of hazardous waste on your property,' and that certainly constitutes sufficiency as far as a suit. . .

*Id*. at 1028.

The  intermediate appellate court disagreed,  but  the Maryland Court of Appeals reversed on this issue, holding that the tacit threat of state intervention and/or legal action invoked the insurer's duty to defend, despite the lack of any formal lawsuit. 1031-32. The Court ultimately found that the Utica policy did not apply, however,  the Court's

7

opinion was not based on the argument that no "suit" was filed. *Id*. Rather, as in the authority cited by St. Paul, the Court found that the State's claims did not seek "damages because of property damage" as required by the policy at issue. *Id*. *Accord Haines v. St. Paul Fire & Marine Ins. Co.*, 428 F.Supp. 435, 440-41 (D.Md. 1977); *Provident Bk. of Maryland v. Travelers Prop. & Cas. Co.*, 236 F.3d 138, 145 (4th Cir. 2000); *Maryland Cas. Co. v. Armco,* 822 F.2d 1348, 1349 (4th Cir. 1987).

Accordingly, and contrary to St. Paul's arguments, where a claimant seeks "damages" potentially covered under an insurance policy, a threat of probable and imminent litigation or even financial consequences is the equivalent of a "suit" for purposes of the duty to defend. *See Bausch & Lomb*; *See also Continental Cas. Co. v. Cole*[4], 809 F.2d 891, 896 (D.D.C. 1987); and *Ryan v. Royal Ins. Co.*, 916 F.2d 731, 737 (1st Cir. 1990) ("we are unprepared to say that the cryptic phrase "any suit" . . . necessarily requires . . . that a civil case be commenced in a court of law before the duty to defend arises"). As such, St. Paul's citation to Blacks Legal Dictionary is misplaced, given that Maryland has already interpreted the meaning of the term "suit" as it relates to an insurer's duty to defend.

Additionally, even if these matters did not constitute "suits," the St. Paul Policy creates obligations with regard to "claims" and not just "suits. Under Maryland law, St. Paul's obligation to defend was triggered as soon as St. Paul had a right to exercise "control" over the claims. *Sherwood Brands, Inc. v. Hartford Acc. & Indem. Co.*, 347

---

[4] In *Cole*, wherein this Court's sister court recognized that "in order for there to be a 'suit' against the insured, the insured need not be an actual party to a suit," citing, *e.g., Alderman v. Hanover Ins.* Group, 169 Conn. 603, 363 A.2d 1102 (1975) (holding that a duty to defend clause required the insurer to pay expenses incurred by the insured in a pre-suit settlement when a suit was threatened but not filed)

Md. 32, 698 A.2d 1078, 1080, 1083-84 (1996). Based upon this language, this right attached from the moment claims were asserted. *Id.*

Under Maryland law, insurance contracts are construed as a whole, to ascertain the parties intentions. *See, e.g., Simkins Industries, Inc. Lexington Ins. Co*., 42 Md. App. 396, 401 A.2d 181, 186 (Ct.App. 1979) (particular provisions of the policy are not to be read in isolation, but rather the document is to be read as a whole to discover its true import). *See also Mutual Benefit Group v. Wise M. Bolt Co.*, 227 F.Supp.2d 469, 475 (D.Md. 2002) (in the context of the duty to defend, "any doubt as to whether there is a potentiality of coverage under an insurance policy is to be resolved in favor of the insured"); *Walk v. Hartford Cas. Ins. Co.*, 382 Md. 1, 852 A.2d 98, 106-07 (2004) ("an insurance company has a duty to defend its insured for all claims that are potentially covered under the policy. . . if there is any doubt as to whether there is a duty to defend, it is resolved in favor of the insured").

In its "Defense, Settlement and Supplementary Payment" section, the St. Paul Policy states that St. Paul "shall have the right to make such investigation, negotiation, and settlement of any *claim or suit* as may deemed expedient by the Company. " *See Joint Stipulations, ¶3.* Thus, the St. Paul Policy gives St. Paul "control" over claims, and not just "suits[5]." As stated, faced with a policy containing virtually identical language, the Maryland Court of Appeals held that "under the kind of language used in the Hartford policies in this case, the duty to defend arises when an insured claim is filed or insured occurrence happens. . ." *Sherwood Brands*, 698 A.2d at 1084.

---

[5] St. Paul's own claim representative was unclear as to St. Paul's defense obligations. In his May 3, 2001 letter to Cohn, he reserved St. Paul's rights as to whether the Policy requires that a claim be made *or* suit be brought during the policy period in order for coverage to apply. *Joint Stipulations, ¶24*.

Based on the foregoing, Westport submits that the circumstances in which the Trust Beneficiaries' claims were raised and ultimately resolved evidences that there were in fact "suits" pending against Cohn[6]. Various beneficiaries contacted Cohn, threatening litigation for Cohn's alleged mishandling of the trust, and requested accountings. *Joint Stipulations, ¶12*. The Borensteins sent Cohn a copy of a draft complaint, and advised him that if he did not pay $800,000 in settlement funds within seven days, they would file the suit. *Joint Stipulations, ¶15*. The only reason they did not do so, and entered into Tolling Agreements, was because Westport retained counsel, who retained an accountant to investigate the allegations. *Joint Stipulations, ¶16, 17*. This is equally true of the Geer/Smith claimants, unrelated to Shapiro Flex, who agreed to hold off filing their suit only because Westport was defending. *Joint Stipulations, ¶28.* Lastly, even as to the Waller matter, which did culminate in an actual suit, St. Paul never completely accepted its obligation to defend, and only agreed first, to pay 20% of fees, and ultimately, 50%. *Joint Stipulations, ¶¶29,30.*

Alternatively, even if such claims were not "suits," Maryland courts, construing language identical to St. Paul's, have held that an

---

[6] St. Paul asserts that "There simply was no matter pending against Cohn before a judge that could be called a 'suit,' as Cohn was not facing adversaries before a Court." *See St.Paul Response Brief, pg. 5*   However, the claims of all the beneficiaries, including Waller, were brought before this Court in the context of Westport's "suit," and the proceeding was certainly adversarial.

insurer's obligation to defend is also invoked "when a claim is filed or insured occurrence happens," which was undisputedly the case here.

Under *Sherwood Brands,* St. Paul's refusal to defend these potentially covered claims is a breach of St. Paul's duty to defend, and renders St. Paul liable for *all* defense costs incurred, including those incurred both before and after notice was given to St. Paul. *See also Teletronics Int'l Inc. v. CNA Ins. Co.*, 302 F.Supp. 442, 449 (D.Md. 2004).

WHEREFORE, for all the foregoing reasons, and those contained in its principal Memorandum, Westport Insurance Corporation respectfully requests that this Court grant summary judgment in its favor and against St. Paul Fire & Marine Insurance Company.

Respectfully Submitted:

WESTPORT INSURANCE CORPORATION

By: /s/  Paul Cottrell, Esquire

Paul Cottrell, Esq.
MD I.D. No. 06364
Tighe, Cottrell & Logan
704 North King Street, Suite 500
Wilmington, Delaware 19801
(302) 658-6400

*Of Counsel*:
Michelle M. Bracke, Esq.,
Bollinger, Ruberry & Garvey
500 West Madison Street, Suite 2300
Chicago, IL  60661
Telephone:  (312) 466-8000