LAW OFFICES
# HEARNE & BAILEY, P. A.

FREDERIC E. WIERMAN
CHARLES R. DASHIELL, JR.
CHRISTOPHER F. DAVIS
PHILIP C. SMITH

CHARLES E. HEARNE, JR. (1909 - 1996)
JAMES P. BAILEY (1922 - 1987)

COLONIAL BUILDING
128 EAST MAIN STREET
SALISBURY, MD 21801

PLEASE REPLY TO:

P. O. BOX 138
SALISBURY, MD 21803-0138

TELEPHONE: (410) 749-5144
FAX NO:    (410) 749-3273
e-mail:
psmith@shore.intercom.net

May 23, 2000

Mr. David H. Cohen
Harry Cohen Insurance Agency, Inc.
2209 Maryland Avenue
Baltimore, MD 21218

RE:  My Client:     Irving F. Cohn, Esq.
     Policy No.:    619NA0039

Dear Mr. Cohen:

   As you know, we represent Irving F. Cohn. The purpose of this letter is to request insurance coverage for Mr. Cohn in response to allegations that Mr. Cohn has committed professional malpractice.

   I have reviewed a stack of Insuring Agreements in which your company appears to be the agent. There is an Agreement that covers the effective year beginning April 1, 1972, and an Agreement that covers the effective year beginning April 1, 1974. It appears to me from reviewing these Insuring Agreements that this Agreement provides occurrence-type coverage. It appears from the facts in this case that Mr. Cohn is alleged to have malpracticed during the years of 1972 and 1974. I do not have the Insuring Agreement for 1973, but I would assume that it would be the same company and coverage. I request that you please check your files to see if there is also coverage for the year 1973 on the same policy. If you will note, the policy for 1972 and 1974 is the same number. If there is a policy for the year 1973, then we hereby make a claim against the 1972, 1973 and 1974 policy for insurance coverage. I have attached a copy of the Insuring Agreement for 1972 and 1974, to this letter. At the time the Insurance Agreement was issued, you will notice that Burke, Gerber and Wilen employed Mr. Cohn. Mr. Cohn is listed on the Insuring Agreement as a lawyer who is insured by that Agreement.

   The allegations against Mr. Cohn stem from his involvement in several trusts set up for the Shapiro Family. It appears that Mr. Cohn, while at Burke, Gerber and Wilen, supervised the creation of these trusts. There were twelve trusts set up with thirty-one beneficiaries. Mr. Cohn served as the only trustee on these trusts.

00090

Mr. David H. Cohen, Esq.
May 23, 2000
Page 2

### A. SUMMARY OF THE FACTS OF THE CASE

The case, although not filed in Court, would, according to potential Plaintiffs' counsel be filed in Maryland's Federal District Court or the Circuit Court for Baltimore City. Potential Plaintiffs Roberta Borenstein and Jeffrey Borenstein (hereinafter "Plaintiffs"), are residents of Connecticut and Massachusetts respectively. Jeffrey Borenstein is the brother of Roberta Borenstein. Plaintiffs seek damages from Irving F. Cohn (hereinafter "Cohn"), who is an individual residing in Baltimore, Maryland, a member of the Maryland Bar Association, as well as a Certified Public Accountant. Mr. Cohn is the sole remaining Trustee of and Plaintiffs are the beneficiaries under the Trust Agreement (hereinafter "Trust Agreement") dated April 28, 1957, between D. Anne Borenstein, Grantor, and Arthur C. Strasburger, Gunther R. Borris and Irving F. Cohn, Trustees. Co-Defendant, Blum, Yumkas, is a professional corporation organized and operating its principal place of business in Baltimore, Maryland. Mr. Cohn has been a principal of the firm since he joined in July of 1987.

Trust Formation:

In 1957, the children and spouses of the Shapiro Brothers, who owned a well-established Maryland Corporation known as Maryland Cup, established twelve irrevocable trusts, the primary beneficiaries of which were the Grantors' children. The Plaintiffs herein are two of the children of the original Grantors (grandchildren of the Shapiro Brothers). Gunther Borris withdrew as a Trustee soon after the establishment of the Trusts and Arthur Strasburger died in 1987. Thus, Irving F. Cohn is the sole surviving Trustee of the Flex Trusts. Jeffrey and Anne Borenstein are the sole beneficiaries of Shapiro Flex Trust No. 9. The Trust Agreement provided that when the beneficiaries reached 21 years of age, the Trustee **could**, in his discretion, distribute to the beneficiaries' portions of principal. At age 35, the Trustee "shall pay over and deliver absolutely unto the primary beneficiary, any remaining balance of the share of the Trust, freed of any further Trust."

It is alleged that Mr. Cohn failed to comply with the mandatory age 35 distribution, failed to file numerous tax returns that resulted in funds escheating to the estate of approximately $500,000.00 of which approximately $27,000.00 will allegedly belong to Sharpiro Flex Trust No. 9. It is alleged that Mr. Cohn failed in his fiduciary obligation to identify accounts and manage them with a reasonable degree of care and prudence, as he is required to do under Maryland Law.

Having reviewed all of the documents pertaining to the claim, it appears that the claims fall into two basic catagories. The first category is a claim pertaining to the distribution made to the Borensteins in April of 1999, in the amount of $111,222.00. Plaintiffs claim that, of that distribution, $27,000.00 of the funds are proceeds of an account that was abandoned by Mr. Cohn, escheated to the State of Maryland, and were finally recovered and distributed to the Borensteins in 1999. The remainder of the funds allegedly came from bank accounts in which the funds allegedly sat in for "years" earning little or no interest. Plaintiffs allege that in this part of the claim, Mr. Cohn failed to exercise his duty to manage the investments of the Trust in a reasonably prudent manner and that their damages in relation to that claim, total $4,777,537.00. This damage calculation is based upon Plaintiffs' claim that the funds would have been invested in publicly-traded stocks or equity mutual funds. In measuring the lost appreciation, they used a benchmark of the S & P 500 Index and provided a lost appreciation schedule, said schedule being attached to this letter showing how they calculated the loss.

00091

Mr. David H. Cohen
May 23, 2000
Page 3

      The second segment of claims relates to uncashed, undeposited, unnegotiated checks, which were found in Mr. Cohn's office in January and February of the year 2000. My initial meeting in the law offices of Blum, Yumkas, with Al Frederick, counsel for Blum, and Andrew Graham, counsel for Blum, revealed the existence of these checks, which I understand have been turned over to accountants in Chicago so that a full accounting can be made as to what the total amount is of the checks that weren't negotiated or deposited. I can report that from my own personal inspection of the checks, there were probably thousands of checks that were bundled together. A random sampling of these checks revealed checks dated back into the 1970s through the 1980s and possibly the 1990s. I do not believe that Plaintiffs are aware of the scope of the checks that have been discovered and have no way of reporting to you at this point, what the potential claims or damages may be in relation to those checks.

      At this time, there has not been any suits filed. However, it will only be a matter of time because of the checks in Mr. Cohn's possession, which date through 1972, 1973 and 1974. Please contact me as to whether you will provide coverage for these claims on the undeposited checks dated in 1972, 1973 and 1974.

                                     Very truly yours,

                                       Philip C. Smith

PCS/sdf

F:\Users\SF\34237M

00092