FILE COPY

**BRINGER, RUBERRY & GARVE**

ATTORNEYS AT LAW
CITICORP CENTER
SUITE 2300
500 WEST MADISON STREET
CHICAGO, ILLINOIS 60661-2511
(312) 466-8000
FACSIMILE (312) 466-8001

MICHELLE M. BRACKE
WRITER'S DIRECT DIAL NUMBER
(312) 466-7232

May 29, 2001

**VIA FACSIMILE & REGULAR MAIL:**

Andrew J. Graham, Esq.
Kramon & Graham, P.A.
One South Street
Suite 2600
Baltimore, Maryland 21202-3201

   RE: **Waller v. Blum, Yumkas, et al.**
      Claim Nos.: 469976; 469637; 432600
      Our File No.: 02919-539 MAIL

Dear Mr. Graham:

  As coverage counsel for Westport Insurance Corporation ("Westport"), we have reviewed the lawsuit filed in April by Eric Waller against Irving F. Cohn, Westport, and your client, Blum, Yumkas, Mailman, Gutman & Denick, P.A. This letter provides Westport's coverage position with respect to the matter. As explained below, Westport will agree to pay reasonable fees and costs to defend Blum, Yumkas against this matter, subject to the foregoing reservation of rights.

  In April of 2001, Eric F. Waller filed civil action no. 24-C-01-001471 against Irving F. Cohn; Blum, Yumkas, Mailman, Gutman & Denick, P.A.; and Westport Insurance Corporation. Waller asserts four causes of action against Blum, Yumkas: Breach of Trust—Equitable Claim (Count I); Breach of Contract (Count II); Negligence/Malpractice (Count III); and Conspiracy (Count IV).

  Waller alleges that during 1957 and 1960, Anne Shapiro Waller, plaintiff's mother, executed trust instruments for the Shapiro Flex Trust No. 3; the Eric F. Waller 1960 Trust; and the Susan P. Waller 1960 Trust. Waller alleges that he is the beneficiary of the first two trusts, and personal representative for his deceased sister, Susan Phyllis Waller, who was the beneficiary of the third trust.

  As to Shapiro Flex Trust No. 3, Waller alleges that Cohn (and/or Blum, Yumkas) failed to appoint a successor trustee, as required by the trust document, after Borris resigned in 1961, and Strasberger died prior to 1988. Waller also alleges that Cohn failed to pay over the balance of the trust to Susan Waller in 1975, when she turned 35 or, in 1984, when Eric Waller turned 35.

00102

BOLLINGER, RUBERRY & GARVEY

Andrew J. Graham, Esq.
May 29, 2001
Page 2

Waller alleges that records pertaining to the trust were incomplete; that tax returns were not filed, resulting in unpaid taxes, penalties and lost refunds; that Flex Trust assets were commingled; that substantial amounts due to the various Flex Trusts went unclaimed and escheated to the state of Maryland; and that substantial trust assets had not been fully invested.

As to the Eric F. Waller and Susan P. Waller 1960 Trusts, Waller alleges that shares of stock were redeemed in 1988, but all of the proceeds were not paid to the Wallers. Waller alleges that the Blum, Yumkas firm has advised him that he is owed the principal amount of approximately $13,000, but that only about $2,800 is on deposit. Waller alleges that the firm has failed to pay him any of these amounts.

Waller further alleges that in the year 2000, Blum, Yumkas became the "de factor trustee" of the three trusts. Waller alleges that Blum, Yumkas refused to produce records because they were in the custody of Westport, and "suddenly" advised Waller that Westport and/or American Express has discontinued the audits of the Flex trusts, and had not undertaken a review of the other trusts. Waller further alleges that Blum, Yumkas has notified beneficiaries of the Shapiro Flex trusts, including Waller, that it will not compensate beneficiaries for losses.

In Count I, Breach of Trust, Waller alleges that Blum, Yumkas breached its fiduciary duty to the trust beneficiaries. Waller seeks court-supervised accountings of the trusts; removal of Cohn as trustee; the appointment of a receiver; payment of the trust corpus and income to plaintiff; an accounting of the firm's legal fees; payment of all excess tax payments, penalties, and escheated trust assets; and a money judgment in the amount of $2 million plus interest and costs.

In Count II, Breach of Contract, Waller alleges that Blum, Yumkas' alleged conduct was a breach of its duty as trustee and, in Count III, Waller alleges that Blum Yumkas' alleged conduct constituted negligence and/or malpractice. Waller seeks compensatory damages, plus interest and costs.

In Count IV, Waller alleges that Blum, Yumkas, together with Cohn and Westport, conspired to breach their contractual obligations to Waller, breach their duties as trustee, and to conceal the alleged breaches from Waller. Waller seeks compensatory damages, plus interest and costs.

Westport Insurance Corporation issued Customized Practice Coverage Policy No. MDL-022344-3 to Blum, Yumkas, Mailman, Gutman & Denick, P.A. for the policy period of January 1, 1999 to January 1, 2000. The Policy has limits of liability of $5 million per claim and in the aggregate, subject to a $15,000 per claim deductible.

Westport also issued Customized Practice Coverage Policy No. MDL-022512-6 to Blum, Yumkas, Mailman, Gutman & Denick, P.A. for the policy period of January 1, 2000 to January 1,

00103

BOLLINGER, RUBERRY & GARVEY

Andrew J. Graham, Esq.
May 29, 2001
Page 3

2001. The Policy has limits of liability of $5 million per claim and, in the aggregate, subject to a $15,000 per claim deductible.

    The Policies each contain the following Insuring Agreement

        I.     INSURING AGREEMENTS

        A.    The Company shall pay on behalf of any Insured all Loss in excess of the deductible which any Insured becomes legally obligated to pay as a result of Claims first made against any Insured during the Policy period and reported to the Company in writing during the Policy Period or within sixty (60) days thereafter, by reason of any Wrongful Act occurring on or after the Retroactive Date, if any;

\*\*\*

The Policies also contain the following provision concerning reporting of potential claims:

\*\*\*

    If, during the Policy Period, any Insured first becomes aware of a Potential Claim and gives written notice of such Potential Claim during the Policy Period, any Claims subsequently made against any Insured arising from the Potential Claim shall be considered to have been made during the Policy Period.

    The Insured(s) shall include within any notice of Claim or Potential Claim a description of the Claim or Potential Claim, the alleged Wrongful Act including date(s) it was committed, a summary of the facts upon which the Claim or Potential Claim is based, the alleged or potential damage that may result, the names of actual or potential claimants, the names of Insured(s) against whom the Claim was or may be made, and the date and circumstances by which the Insured(s) first became aware of the Claim or Potential Claim.

    The Policies also contain the following provision regarding multiple insureds, claims and claimants:

        X.    MULTIPLE INSUREDS, CLAIMS AND CLAIMANTS

The inclusion of more than one Insured in any Claim or the making of Claims by more than one person or organization shall not increase the limits of liability or the deductible. Two or more Claims arising out of a single Wrongful Act, as defined in each of the attached

00104

BOLLINGER, RUBERRY & GARVEY

Andrew J. Graham, Esq.
May 29, 2001
Page 4

> Coverage Units, or a series of related or continuing Wrongful Acts, shall be a single Claim. All such Claims whenever made shall be considered first made on the date on which the earliest Claim was first made arising out of such Wrongful Act, as defined in the applicable Coverage Unit, and all such Claims are subject to one "Per Claim Limit of Liability" and deductible.

Based upon the Policy language, the Insureds must pay one deductible per "claim." Two or more "claims" arising out of a single Wrongful Act, or a series of related or continuing Wrongful Acts, shall be deemed a single "claim," subject to the one deductible and one limit of liability. The "claim" will be deemed made on the date the earliest "claim" was reported under one of the Westport policies.

The Policy provides coverage only for "loss" any Insured becomes legally obligated to pay. "Loss" is defined as:

> the monetary and compensatory portion of any judgment, award or settlement, provided always that Loss shall not include:
>
> 1.  civil or criminal fines, penalties, fees or sanctions;
>
> 2.  punitive or exemplary damages, including the multiplied portion of any multiple damages;
>
> 3.  the return by any Insured of any fees or remuneration paid to any insured; or
>
> 4.  any form of non-monetary relief.

In the complaint, Waller seeks non-monetary relief, including accountings, and the appointment of a receiver. Waller also seeks an accounting of the firm's legal fees, and payment of excess tax payments and penalties. Please be advised that Westport will not indemnify Blum, Yumkas for any amounts that are not encompassed within the definition of "loss" contained in the Westport Policy.

The Policy also contains various limitations and exclusions. The "Limitation of Individual Prior Acts" Endorsement provides that "The Policy does not apply to any Claim based upon, arising out of, attributable to, or directly or indirectly resulting from an act, error, omission, circumstance or Personal Injury committed by the following Insured(s) prior to the corresponding Retroactive Date(s):

    I.F. Cohn          07/01/88

00105

BOLLINGER, RUBERRY & GARVEY

Andrew J. Graham, Esq.
May 29, 2001
Page 5

  Waller alleges conduct by Mr. Cohn that occurred prior his employment with the Blum, Yumkas firm. Waller alleges that Cohn failed to appoint successor trustees to replace Borris and Strasberg after they died (both prior to 1988), and that Cohn failed to terminate the trusts when the Wallers each turned 35 years of age, in 1975, and 1984. Waller also alleges that Cohn failed to file tax returns, commingled assets, allowed funds to escheat, and failed to invest trust assets. Waller does not provide specific dates when this alleged conduct occurred. Please be advised that Westport reserves its right to decline to indemnify Blum, Yumkas for any judgment, settlement or award based upon Wrongful Acts occurring prior to July 1, 1988, pursuant to the Limitation of Individual Prior Acts Endorsement.

  The Policy also contains various Exclusions. Exclusion E provides that the Policy shall not apply to any Claim based upon, arising out of, attributable to, or directly or indirectly resulting from:

> E.  any Insured having gained in fact any personal profit or advantage to which he or she is not legally entitled.

  Waller alleges that shares of stock belonging to one or more of the trusts were redeemed, but the proceeds were not paid to the Wallers. Waller further alleges that certain amounts allegedly owed to the trusts are either not available, or are not being paid to Waller. Westport therefore reserves its right to assert Exclusion E as a defense to coverage for this matter.

  Exclusion G of the Lawyers Professional Liability Coverage Unit provides that the Coverage Unit shall not apply to any Claim based upon, arising out of, attributable to, or directly or indirectly resulting from:

> G.  any conversion, misappropriation or improper commingling of client funds;

  Waller alleges that Cohn commingled Flex trust assets. Westport therefore reserves its right to assert Exclusion G as a defense to any obligation to defend or indemnify Blum, Yumkas for these allegations.

  The Policy also contains Exclusion B. Exclusion B provides that the Policy shall not apply to any Claim based upon, arising out of, attributable to, or directly or indirectly resulting from:

> B.  Any act, error, omission, circumstance or Personal Injury occurring prior to the effective date of this Policy if any Insured at the effective date knew or

00106

BOLLINGER, RUBERRY & GARVEY

Andrew J. Graham, Esq.
May 29, 2001
Page 6

> could have reasonably foreseen that such act, error, omission, circumstance or Personal Injury might be the basis of a Claim;

Exclusion B applies to preclude coverage for any claims based on acts, errors, omissions or circumstances which, prior to January 1, 1999, Cohn and/or Blum, Yumkas subjectively knew, or could have objectively foreseen, might be the basis of a claim.

Prior to January 1, 1999, Cohn received the summonses regarding his failure to file tax returns and, therefore, was placed on subjective and/or objective notice of a potential claim. Westport must therefore reserve its right to decline to indemnify Blum, Yumkas for any judgment, settlement or award based upon Cohn's failure to file tax returns.

Additionally, based upon information received to date, it appears that Cohn and/or Blum, Yumkas may have subjectively or objectively foreseen that other conduct alleged might be expected to be the basis of a claim or suit. Accordingly, Westport also reserves its right to assert Exclusion B as a defense to any obligation to defend or indemnify Blum, Yumkas for this matter.

Additionally, in the application, signed by Blum, Yumkas and dated November 13, 1998, Blum, Yumkas answered Question 11 in the negative. Question 11 inquired as follows:

> 11. Is the Applicant, its predecessor firms, or _any_ individual proposed for this insurance aware of any circumstance, act, error, omission or personal injury which <u>might be expected</u> to be the basis of a legal malpractice claim or suit that has <u>not</u> previously been reported to the firm's insurance carrier; or has there been any breach of duty to a client or third party which has not yet resulted in a claim or suit?

Prior to the firm's completion of the renewal application, Cohn and/or Blum, Yumkas became aware that Cohn had failed to file tax returns on behalf of the Shapiro-Flex Trusts. Additionally, it also appears that Cohn and/or Blum, Yumkas may have subjectively or objectively foreseen that other conduct now alleged might be expected to be the basis of a claim or suit. Accordingly, Westport reserves the right to rescind any the policies issued to Blum, Yumkas, if it determines that material misrepresentations were made on any of the applications, in response to Question 11, or to any other inquiry.

Despite the foregoing, Westport will provide for Blum, Yumkas' defense, subject to this reservation of rights, and subject to the pending declaratory action filed by Westport in the United States District Court for the District of Maryland.

00107

BOLLINGER, RUBERRY & GARVEY

Andrew J. Graham, Esq.
May 29, 2001
Page 7

      Under Maryland law, Blum, Yumkas is entitled to independent counsel only if an actual conflict of interest exists with respect to the defense. In this particular case, we do not believe that a conflict exists which requires Westport's consent. However, in light of the pending action for rescission and declaratory relief, Westport will agree to pay the reasonable costs and expenses of independent counsel, at the rate customarily paid by Westport for the defense of claims. Counsel must also provide Westport with full information, documentation and cooperation with respect to the defense, investigation and settlement of this claim.

      Previously, Blum, Yumkas advised Westport that it would prefer that Alvin Frederick, Esq. provide for its defense. Westport will agree to allow Mr. Frederick to continue his defense of Blum, Yumkas with respect to these matters, subject to the foregoing conditions.

      Please also be advised that nothing herein constitutes a waiver of any rights or defenses of Westport, and that Westport reserves all of its rights and defenses, whether or not stated herein. This includes, but is not limited to, the right to supplement this reservation of rights, if additional information warrants, to withdraw from the defense of this matter, or to seek reimbursement of defense costs.

      Should you have any questions, or wish to further discuss the issues, please call.

      Very truly yours,

      *Michelle M. Bracke*

      Michelle M. Bracke

MMB/sgb

cc:    Kristina Miller, Westport Insurance Corporation
       David B. Applefeld, Esq.

00108