**ROSS, DIXON & BELL,** L.L.P.

WASHINGTON, D C ■ IRVINE ■ SAN DIEGO ■ CHICAGO

THREE FIRST NATIONAL PLAZA
70 WEST MADISON STREET
SUITE 525
CHICAGO, ILLINOIS 60602-4261
(312) 759-1920
FACSIMILE (312) 759-1939

KRISTI A. GLEIM
TELEPHONE: (312) 759-1923
EMAIL: KGLEIM@RDBLAW.COM

July 12, 2001

VIA MESSENGER

Michelle M. Bracke, Esq.
Bollinger Ruberry & Garvey
500 W. Madison Street, Suite 2300
Chicago, IL 60661

Re:  Insured:    Irving F. Cohn/Burke, Gerber & Wilen
     Claimants:  Roberta and Jeffrey Borenstein
     Policy No.: 619NA0039
     Claim No.:  0619NA0039-09T001
     Our File No.: 00493.0140

Dear Ms. Bracke:

Now that your client, Westport Insurance Corporation ("Westport") has returned the waiver of conflict form I sent you, I can proceed to respond to your May 29, 2001 correspondence. I thought it might be helpful to begin with a recitation of the actual facts underlying the issues discussed in your May 29, 2001 correspondence.

As you correctly point out in your letter, on or about June 1, 2000, St. Paul was provided a copy of a draft complaint involving Roberta and Jeffrey Borenstein, beneficiaries of Shapiro-Flex Trust 9. I think it is a fact that the draft Borenstein complaint has never been filed or served. Please correct me if I am wrong.

On April 6, 2001, Joe Schmitt of St. Paul and I met with you in your offices, at which time you handed Mr. Schmitt a copy of a lawsuit filed on or about March 27, 2001 in the Circuit Court for Baltimore City, Maryland, entitled Eric F. Waller v. Blum, Yumkas, Mailman, Gutman & Denick, P.A., et al.. You informed us that the Waller lawsuit had not yet been served on Irving Cohn. You further informed us that Chris Davis, an attorney your client, Westport, hired to protect Mr. Cohn's interests, was prepared to represent Mr. Cohn's interests in the Waller Complaint, should he be served. You also informed Mr. Schmitt and me that Westport had instituted a declaratory judgment action against Mr. Cohn and that Mr. Cohn was being represented by Andrew Radding and David Applefeld of Adelberg, Dorf & Hendler, LLC, in that action.

00117

905948 v1



ROSS, DIXON & BELL, L.L.P.

Michelle M. Bracke, Esq.
July 12, 2001
Page 2

On April 18, 2001, I finally was able to reach Chris Davis, who confirmed that he had been hired by Westport to represent Mr. Cohn's interests. Mr. Davis confirmed that the Borenstein complaint had not been filed or served. Mr. Davis further informed me in this conversation that Mr. Cohn had been served with the Waller Complaint but had not yet taken a position regarding whether Mr. Cohn wanted to tender the Waller lawsuit to St. Paul. This conversation was confirmed in correspondence dated May 3, 2001 to Messrs. Smith and Davis of Hearne & Bailey, P.A., from Joe Schmitt of St. Paul. In the May 3, 2001 correspondence, Mr. Schmitt specifically states: "We understand that the Waller Complaint has not yet been tendered for defense and/or indemnity to St. Paul. Please notify us immediately should Mr. Cohn choose to tender the Waller Complaint to St. Paul for defense and/or indemnity."

By correspondence dated May 14, 2001, Mr. Smith, for the first time, purported to tender the defense of the Waller lawsuit, by way of correspondence to Joe Schmitt of St. Paul. As you know, St. Paul has expressed a willingness to provide a defense to Mr. Cohn for the Waller lawsuit pursuant to a full reservation of its rights, remedies and defenses under the Policy and under applicable law.

In sum, St. Paul is aware of one lawsuit involving Mr. Cohn under the above-captioned Policy: the Waller lawsuit. Chris Davis, counsel for Mr. Cohn, specifically informed the undersigned that Mr. Cohn did not choose to tender the Waller lawsuit to St. Paul for a defense or indemnity. This position was unchanged until Mr. Smith's correspondence dated May 14, 2001, at which time the Waller lawsuit was tendered for a defense and indemnity, which defense St. Paul accepted pursuant to a reservation of rights.

I do not recall you or any other of Westport's agents tendering the Waller lawsuit to St. Paul for defense or indemnity on behalf of Mr. Cohn. Your assertion now that you did is inconsistent with the fact that when we met on April 6, 2001, you informed us that Mr. Cohn had not even been served with the Waller Complaint. Moreover, it is inconsistent with Mr. Cohn's own counsel's representation on April 18, 2001, that Mr. Cohn did not intend to tender the defense of the Waller Complaint to St. Paul. I find it strange that you now state you tendered the Waller Complaint to St. Paul "on behalf of" Mr. Cohn at a time you concurrently informed Mr. Schmitt and me that you had sued Mr. Cohn on behalf of Westport. I do not understand how you were ethically able to do anything "on behalf of" Mr. Cohn once your client, Westport, sued him.

I have reviewed Scottsdale Ins. Co. v. American Empire Surplus Lines Ins. Co., 791 F.Supp. 1079 (1992), which, as you note, has been overruled by Sherwood Brands v. Hartford Accident and Indemnity Co., 347 Md. 32, 698 A.2d 1078, 1084 (Md. 1997). In Sherwood, the Court held that the duty to defend arises "when an insured claim is filed ... but that that duty is not breached ... until the insurer is apprised of the claim or occurrence and thereafter, without legal justification, fails to undertake a defense in accordance with its obligation." Id. at 1085. St. Paul has most certainly not breached the duty to defend when no claim or occurrence existed until the filing of the Waller lawsuit and where Mr. Cohn's own counsel, upon my affirmative inquiry, denied that Mr. Cohn wanted to tender the Waller Complaint for defense. Once Mr.

Michelle M. Bracke, Esq.
July 12, 2001
Page 3

Smith's correspondence dated May 14, 2001 was received, St. Paul timely responded to, and accepted, Mr. Cohn's tender.

Perhaps the most prudent thing for you to do at this point is to speak to Mr. Davis to clarify what actually happened relative to tender of the Waller lawsuit.

In your May 29, 2001 correspondence, you go on to reference a letter dated October 25, 1999 from Sam Shapiro to Irving Cohn. This matter has not been reported to or tendered to St. Paul. You also advise that "the 1960 Waller trusts are distinct from the Shapiro-Flex Trusts." While I appreciate your personal opinion in that regard, St. Paul does not agree with your opinion that the trusts are unrelated.

You also inform in your May 29, 2001 correspondence that counsel for Marion Smith provided notice to Blum, Yumkas of a claim against Irving Cohn in May, 2000. St. Paul has not been provided this notice. You further state that on October 5, 2000, counsel for Christine Geer (nee Burton) provided similar notice, and that an attorney variously described in your letter as Ms. "Oppenhein", Ms. "Oppenheim", and Ms. "Oppenheimer", apparently now deceased, had some involvement with Ms. Burton's trust. St. Paul has not been advised of this notice either, nor has it been tendered this matter.

Please clarify whether it is Westport's position that none of these matters are resolved by way of Westport's $800,000 contribution to attempted settlement. In light of the complete lack of knowledge St. Paul has concerning all of these "new" matters discussed in your May 29, 2001 correspondence, St. Paul reserves its rights, remedies and defenses under the Policy and under applicable law with regard to these matters, including concerns relative to late and insufficient notice, and breach of the cooperation clause of the Policy. Obviously, if Mr. Cohn intends to provide notice of these matters to St. Paul, Mr. Cohn or one of his representatives should immediately provide all information relative to these matters to St. Paul. As you will note, I have carbon copied Mr. Cohn's counsel accordingly.

I also find it curious that you complain that St. Paul has failed to produce a copy of its Policy to Westport and yet you then go on to cite the terms of the St. Paul Policy. St. Paul has no legal obligation to provide you with a copy of the St. Paul Policy. In this regard, I note that by correspondence dated May 16, 2001, I provided a copy of the Policy to Mr. Cohn's counsel, David Applefeld. You yourself admit that Mr. Cohn's counsel and insurance agent have a copy of the St. Paul Policy. You state that "despite the representations" contained in my letter, St. Paul has not produced a copy of the Policy to Irving Cohn's counsel. Please tell me what representations of mine to which you are referring.

As regards my request to you for a copy of Westport's policy, which you have thus far failed to provide, I note that I only obtained a copy of the Westport DJ Complaint against Mr. Cohn and purported copies of the Westport policies attached thereto as Exhibits by requesting them directly from the clerk of court, as you previously refused to provide them to me despite the fact that they are publicly-filed documents.

ROSS, DIXON & BELL, L.L.P.

Michelle M. Bracke, Esq.
July 12, 2001
Page 4

I find your legal analysis concerning whether a suit must be filed in order for a duty to defend to arise to be wrong. Under Maryland law, it is a condition precedent to the duty to defend that an actual suit be filed where the insurance policy provides the duty to defend "any suit against the Insured alleging damages", as does the instant St. Paul Policy. See Haines v. St. Paul Fire and Marine Ins. Co., 428 F.Supp. 435 (D. Md. 1977). See also, Provident Bank of Maryland v. Travelers Property Casualty Corp., 236 F.3d 138 (4th Cir. 2000). The St. Paul Policy does not provide for a duty to defend until a suit alleging damages against the Insured is lodged.[1]

While I further appreciate your opinion that the Borensteins did not file suit because Blum, Yumkas retained counsel and an accountant to attempt to identify what, if any, funds were due to the Borensteins, I personally (and St. Paul) have/has no idea why the Borensteins agreed to not bring suit.

I obviously cannot counsel your client as to whether the Waller lawsuit triggers its duty to defend. However, I would note that in Maryland, the duty to defend an insured is broader than the duty to indemnify. Utica Mutual Ins. Co. v. Miller, 746 A.2d 935 (Md. 2000) (citations omitted). In St. Paul Fire and Marine Ins. Co. v. Pryseski, 438 A.2d 282 (Md. 1981), the Court articulated the following test:

> In determining whether a liability insurer has a duty to provide its insured with a defense in a tort suit, two ... questions ordinarily must be answered: (1) What is the coverage and what are the defenses under the terms and requirements of the insurance policy? (2) Do the allegations in the tort action potentially bring the tort claim within the policy's coverage?

438 A.2d 282. To answer these questions, a court "must ascertain the scope and limitations of coverage under the ... insurance policies and then determine whether the allegations in the [underlying] action would potentially be covered under those policies." Aetna Casualty and Surety Co. v. Cochran, 651 A.2d 859 (Md. 1995).

Under the second part of the Pryseski test, it must be determined whether the lawsuit at issue alleges an action which is potentially covered under the insurance policy. Sullins v. Allstate Ins. Co., 667 A.2d 617 (Md. 1995). Generally, Maryland courts look to the allegations made in the complaint to determine whether claims may potentially be covered. Additionally, a court may look toward extrinsic evidence to determine whether a lawsuit alleges an action that is potentially covered because "allowing an insured the opportunity to establish a defense to tort

---

[1] While I appreciate your citation to out-of-state caselaw, Continental Cas. Co. v. Cole, 809 F.2d 891 (D.D.C. 1987), Alderman v. Hanover Ins. Group, 169 Conn. 603, 363 A.2d 1102 (Conn. 1975), and Ryan v. Royal Ins. Co. of America, 916 F.2d 731 (1st Cir. 1990) (applying New York law), these cases do not discuss or apply Maryland law.

905948 v1

00120

Michelle M. Bracke, Esq.
July 12, 2001
Page 5

allegations which may provide a potentiality of coverage under an insurance policy ... is precisely what the insured bargained for under the insurance contract." Cochran, 651 A.2d 859.

Furthermore, under Maryland law, if any claims potentially come within the policy coverage, the insurer is obligated to defend all claims, "notwithstanding alternative allegations outside the policy's coverage, until such time ... that the claims have been limited to ones outside the policy coverage." Southern Maryland Agricultural Assoc., Inc. v. Bituminious Casualty Corp., 539 F.Supp. 1295, 1299 (D. Md. 1982) (citations omitted). Doubt as to whether an allegation indicates the possibility of coverage should be resolved in the insured's favor. See, United States Fidelity and Guaranty Co. v. National Paving and Contracting Co., 178 A.2d 872 (Md. 1962)

As in other states, where a doubt exists as to whether the duty to defend is owed, the safest course is to provide a defense and file a declaratory judgment action to determine whether a defense is truly owed. Nationwide Mutual Ins. Co. v. Regional Electric Contractors, Inc., 680 A.2d 547 (Md. App. 1996). It is my understanding that Westport has instituted such a declaratory judgment action but that no ruling has yet issued relieving Westport of the duty to defend.

As regards your analysis of St. Paul's and Westport's respective "other insurance" clauses, I think it unlikely that in attempting to allocate defense fees for the Waller lawsuit a Maryland court would turn to an analysis of the "other insurance" clauses. As discussed in Utica Mutual Ins. Co. v. Miller, 746 A.2d 935 (Md. App. 2000), "excess" or "other insurance" clauses have been recognized as not applying to the duty to defend because, unless stated otherwise, that obligation is independent of liability and any limitations thereon. 746 A.2d at 946 (citations omitted). Moreover, such "other insurance" clauses apply only when coverage is concurrent. St. Paul Fire and Marine Ins. Co. v. Vigilant Ins. Co., 919 F.2d 235 (4th Cir. 1990). Where, as here, the policy periods do not overlap at all, and where, as here, St. Paul and Westport do not even insure identical interests, such "other insurance" clauses are simply not applicable.

We believe a more appropriate inquiry would be to examine what allocation of the defense fees and costs should appropriately be made as between St. Paul and Westport. Mr. Cohn is alleged to have mismanaged the Shapiro trusts for approximately 43 years, from 1957 to 2000. St. Paul's Policy, an occurrence-type policy, provides coverage only for professional services performed for others during the policy period from 1972 to 1975. Westport's policies appear to be triggered for claims made during its policy period by reason of wrongful acts occurring on or after July 1, 1988.

With respect to defense and indemnity obligations where multiple policies with co-primary defense obligations are triggered by a series of wrongful acts that occur over time, Maryland courts generally apply an "injury-in-fact" pro rata allocation of liability for indemnity and defense, following the Sixth Circuit decision in Insurance Co. of North America v. Forty-Eight Insulations, Inc., 633 F.2d 1212 (6th Cir. 1980) In Nationwide Mutual Ins. Co. v. LaFarge Corp., 910 F.Supp. 1104 (D. Md. 1996), aff'd, 121 F.3d 699 (4th Cir. 1997), the court adopted

ROSS, DIXON & BELL, L.L.P.

Michelle M. Bracke, Esq.
July 12, 2001
Page 6

the Forty-Eight Insulations allocation methodology concerning defense expenses for liability that occurred over a period of years and triggered numerous policies.

The LaFarge court rejected the argument that the duty to defend is an absolute duty to defend the entire action, joint and severable among the insurers, indicating instead that where allocation was possible this was the preferred outcome. The LaFarge court earlier cited Forty-Eight Insulations for the proposition that an insurer must bear the full expense of the defense only where there is no reasonable way to apportion defense costs. Nationwide Mutual Ins. Co. v. LaFarge Corp., 1994 WL 706538 at 10 (D. Md. June 22, 1994); See also, Southern Maryland, 539 F.Supp. 1295.

The court in Southern Maryland suggested that an allocation should take into consideration what liability-producing acts occurred in which years to determine which policies should indemnify for which liabilities. The Southern Maryland court cited with approval Loewenthal v. Security Ins. Co., 436 A.2d 493 (Md. 1981), wherein an earlier Maryland court held that where a reasonable means of prorating the cost of defense between covered and uncovered items exists, defense costs should be apportioned. In Southern Maryland, the court distinguished this holding of Loewenthal from those cases that have rejected apportionment of defense costs where the insurer wrongfully refused to defend a suit involving covered and non-covered claims. 539 F.Supp. at 1304.

It is St. Paul's position that St. Paul should pay only for defense costs attributable to professional services occurring from April 1, 1972 to April 1, 1975, and that Westport should pay for wrongful acts occurring during the 13 years arguably covered by its policies. This leaves 27 years for which Mr. Cohn and his firms have no available insurance coverage, which risk, according to Forty-Eight Insulations, 633 F.2d 1212, should be borne by Mr. Cohn and/or his firms. Due to the harshness of this result, as we understand that Mr. Cohn and his firms have no resources with which to pay for Mr. Cohn's defense, St. Paul agrees to bear 20 percent of Mr. Cohn's defense costs and expenses on a going-forward basis, with Westport to bear the remaining 80 percent. This allocation is consistent with the indemnity allocation Westport has already established and agreed to with St. Paul.

We are searching our records to determine whether there is a previous St. Paul Policy, Policy No. 681NA0511. I would note we are searching for policies issued over 35 years ago, unlike the Westport policies, which were issued in the late 1990s. In turn, I would appreciate your advising whether there is predecessor policy issued by Westport to Blum, Yumkas to those attached to the Westport DJ complaint. In this regard, I note that Exhibit A to the Westport DJ complaint, the 1999-2000 Westport policy, attaches a "Lawyers Professional Liability Insurance Renewal Application," executed on November 13, 1998 by Blum, Yumkas. This indicates the 1999-2000 Westport policy may have been the renewal of a predecessor policy.

Moreover, I note that the Declarations page of the 1999-2000 Westport policy references a Policy Number MDL-022139-1 although, oddly, only the words "... of Policy" appear on the Declarations Page in the upper right hand corner: the word "Renewal", which should appear in

905948 v1

00122

ROSS, DIXON & BELL, L.L.P.

Michelle M. Bracke, Esq.
July 12, 2001
Page 7

front of the words "... of Policy" on the Declarations Page (as it does on the 2000-2001 Westport policy Declaration Page), has apparently been redacted by Westport.

I would also appreciate your confirming that you and/or others have searched the Insureds' and Westport's records and have been unable to find any other policies issued to Blum, Yumkas, Burke, Gerber & Wilen or Irving Cohn by Westport, or others. As to Westport's policies, we request a notarized affidavit from an appropriate Westport representative that no other Westport policies issued to Burke, Gerber & Wilen, Blum, Yumkas or Iving Cohn. I would also appreciate your providing me with copies of your correspondence to Mr. Cohn and/or Blum, Yumkas relative to Westport's coverage position vis a vis Mr. Cohn. I would further appreciate your searching Westport's underwriting materials as it is likely that the application for the first policy issued by Westport to Blum, Yumkas reflects the identity of the predecessor insurer. St. Paul has been unable to date to discover any underwriting information in its files concerning the Policies issued to Burke, Gerber & Wilen.

Finally, you have enclosed with your correspondence "many of the bills generated by defense counsel for all of the foregoing matters." As I earlier indicated, St. Paul would prefer that we all concentrate at this time on protecting Mr. Cohn's interests by attempting to settle these matters through the efforts of Al Frederick, leaving these past fees and costs issues for a later date. From my cursory review of the bills you have provided, I would simply note at this time that Al Frederick has confirmed to me in correspondence dated May 17, 2001, that he represents only the Blum, Yumkas firm. St. Paul does not insure the Blum, Yumkas firm. Moreover, as discussed above, it appears these costs and fees were incurred prior to the filing of any lawsuit and I am not aware that St. Paul was advised of or consented to the incurrence of these costs and fees. Your assertion that Westport is not obligated to pay any costs and fees on behalf of Mr. Cohn until St. Paul "exhausts" its Policy actually supports the notion that Westport incurred these costs and fees as a volunteer. St. Paul certainly reserves its rights as to whether these costs and fees are reasonable as well.

Again, we would prefer to "table" this dispute until the outcome of our attempt to settle these matters is known.

Nothing in your May 29, 2001 correspondence has altered the position taken in St. Paul's previously-stated reservation of rights. St. Paul expressly incorporates herein its previously-stated reservation of rights, which should not be construed to constitute a waiver of any further rights it may reserve in the future. St. Paul expressly reserves all such rights, remedies and defenses under the Policy and under applicable law herein, including the right to amend, supplement or alter its coverage position based upon later-discovered facts.

We look forward to hearing from you concerning Westport's position on defending the Waller lawsuit by July 23, 2001. Should I hear nothing from you by July 23, 2001, St. Paul will proceed to protect its and Mr. Cohn's rights accordingly.

905946 v1

00123

ROSS, DIXON & BELL, L.L.P.

Michelle M. Bracke, Esq.
July 12, 2001
Page 8

                Very truly yours,

                ROSS, DIXON & BELL, L.L.P.

                By_____
                   Kristi A. Gleim

KAG:mld

cc:    Andrew J. Graham, Esq.
       Kramon & Graham, P.A.
       One South Street, Suite 2600
       Baltimore, Maryland 21202-3201

       David B. Applefeld, Esq.
       Adelberg, Rudow, Dorf & Hendler, LLC
       600 Mercantile Bank & Trust Building, 2 Hopkins Plaza
       Baltimore, MD 21201-2927

       Christopher F. Davis, Esq.
       Hearne & Bailey, P.A.
       Colonial Building
       126 E. Main Street
       Salisbury, MD 21801

905948 v1                                      00124