IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WESTPORT INSURANCE CORPORATION,           )
                                          )
            Plaintiff,                    )
                                          )
       v.                                 )    Civil Action No.:
                                          )
ST. PAUL FIRE & MARINE                    )
INSURANCE COMPANY,                        )
                                          )
            Defendant.                    )

## COMPLAINT

Westport Insurance Corporation ("Westport"), for its Complaint against St. Paul Fire & Marine Insurance Company ("St. Paul"), states as follows:

### VENUE AND JURISDICTION

1.  Jurisdiction in this matter is based upon diversity of citizenship pursuant to 28 U.S.C. §1332(a)(1). The amount in controversy exceeds $75,000, exclusive of interest and costs.

2.  Venue is appropriate under 28 U.S.C. §1391 because the events or omissions giving rise to the claim occurred, in part, in this judicial district.

### PARTIES

3.  Westport is a Missouri corporation with its principal place of business in Overland Park, Kansas.

4.  St. Paul is a Minnesota corporation with a principal place of business in Minnesota.

00127

## THE ST. PAUL POLICIES

5.  St. Paul issued Policy no. 619NA0039 to Burke, Gerber & Wilen for the policy period of April 1, 1972 to April 1, 1975 ("the St. Paul Policy").

6.  The St. Paul Policy is a renewal. St. Paul states, on the face of the St. Paul Policy, that the "former policy no." was 681NA0511. Accordingly, upon information and belief, St. Paul also provided coverage to Burke, Gerber & Wilen for prior policy period(s).

## THE WESTPORT POLICY

7.  Westport Insurance Corporation issued to Blum, Yumkas claims-made lawyers professional liability policy no. MDL-022344-3 for the policy period of January 1, 1999 to January 1, 2000 ("The Westport Policy").

## FACTS

8.  In the late 1950s, the Shapiro family, owners of the Maryland Cup Company, formed various trusts for their children and grandchildren. In 1960, numerous other trusts were created by members of the Shapiro family. Irving Cohn, ("Cohn") while a partner in the firm of Burke, Gerber & Wilen, was the Trustee for all of these numerous trusts.

9.  Cohn continued in his capacity as Trustee for many years, including the years of 1970 to 1975. In 1988, Burke, Gerber dissolved and Cohn became associated with the firm of Blum, Yumkas, Gutman & Denick, P.A.

10. On October 25, 1999, Sam Shapiro, an uncle of one of the beneficiaries, wrote to Irving Cohn and advised him that it was his intention to bring legal action against Cohn and the law firm of Blum, Yumkas for alleged violation of his fiduciary responsibilities and mismanagement of assets regarding certain of the Shapiro trusts.

2

00128

11.  On January 7, 2000, two beneficiaries of these trusts, Robert and Jeffrey Borenstein, wrote to Cohn and Blum, Yumkas, and enclosed a draft complaint. The draft complaint asserted five counts against Cohn and Blum for alleging mishandling of the trusts by Cohn: Accounting (Count I); Breach of Fiduciary Duty against Cohn (Count II); Breach of Fiduciary Duty against Blum, Yumkas (Count III); Negligence Against Cohn (Count IV); and Negligence against Blum, Yumkas (Count V).

12.  The beneficiaries generally allege that Cohn, over a period of many years, failed to account for trust assets, commingled assets, allowed an escheat to the state, failed to invest funds, and failed to make investments that were reasonably prudent.

13.  On March and October 2000, respectively, two more beneficiaries, Marshall Waller and Eric Waller, requested accountings of certain trusts to which they were beneficiaries. In that same year, Blum, Yumkas discovered numerous uncashed checks dating back to the 1970s, that may have belonged to these trusts.

14.  Additional claims have been against Irving Cohn, and against Catherine Oppenheim, a former partner in Burke, Gerber, now deceased.

15.  Notice of these claims was provided to Westport in May of 2000. According to the claimants, Marion Smith, and Christine Geer (nee Burton) in 1973, Oppenheim and Cohn became trustees of a Trust Agreement executed by Christine O. Burton. Presently, the parties allege potential mismanagement of the trust from the time period of 1973-1999.

16.  Each of these parties allege conduct that occurred during the St. Paul policy period(s). The parties reached tolling agreements and other "gentlemen" agreements, to refrain from filing suit against Cohn and Blum, Yumkas, in exchange for Cohn's and Blum, Yumkas' continued agreements to investigate the negligence allegations, and attempt to audit the trusts.

17. Pursuant to its policy, and subject to a full reservation of rights, Westport agreed to defend Cohn and Blum, Yumkas against these matters.

18. In May of 2000, Cohn's counsel discovered that St. Paul had issued policies to Burke, Gerber which provide coverage to Cohn and/or Oppenheim for these matters.

19. Cohn's counsel tendered the matters for defense to St. Paul in May of 2000. On May 31, 2000, St. Paul received and acknowledged notice of these matters. The Borenstein draft complaint was also forwarded to St. Paul on or about June 1, 2000.

20. In response, St. Paul advised Cohn's counsel that it was "reviewing the file for coverage" and would provide Cohn with is position.

21. Upon information and belief, St. Paul did not request any additional information or documentation from Cohn or Cohn's counsel regarding these matters. St. Paul also never provided any written response to the tender.

22. Westport has incurred substantial expenses and costs in providing Cohn and Blum, Yumkas with a defense to these matters, including attorneys fees, accounting fees, and other costs and expenses. On May 24, 2001, Westport provided St. Paul with a detailed written explanation of St. Paul's obligations, and the pending matters. Despite Westport's request for reimbursement, and its tender of expenses, St. Paul has consistently refused to accept the tender, or to otherwise pay these fees and costs.

23. On April 2, 2001, Eric Waller filed civil action no. 24-C-01-001471 against Irving Cohn, Blum, Yumkas and Westport in the Circuit Court of Baltimore County, Maryland. The complaint was tendered to St. Paul on or about April 6, 2001.

24. Despite St. Paul's obligation to defend, St. Paul has refused to accept its obligation to fully defend and indemnify Cohn for the Waller claim. As a result, Westport has agreed to pay

50% of Cohn's defense costs for this matter, subject to numerous reservations, including the right to seek reimbursement from St. Paul.

25. St. Paul has refused to provide copies of its policies to Westport. However, Westport has obtained copies of all or some of the St. Paul policy(ies) from Cohn.

26. Westport contends that St. Paul has the primary obligation to defend and indemnify Cohn for these matters. St. Paul has denied this obligation. Therefore, an actual and immediate controversy exists between the parties.

## COUNT I

## INDEMNIFICATION

27. Westport realleges paragraphs 1-26 above, as though fully set forth herein as paragraph 27 of this Count I.

28. The St. Paul Policy contains the following "Other Insurance" clause:

> 35. OTHER INSURANCE. The insurance afforded by this Policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the Insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the Company's liability under this Policy shall not be reduced by the existence of such other insurance.
>
> When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the Company shall not be liable under this Policy for a greater proportion of the loss than that stated in the applicable contribution provision below:
> ***

29. The Westport Policy contains the following "other insurance" clause:

5

00131

VI.  OTHER INSURANCE OF A PRIOR LAW FIRM

If a Prior Firm has other insurance applicable to a Claim against the Insured(s) covered by this Coverage Unit, this Policy is specifically issued as excess insurance over and above the applicable limits of liability of all such other insurance regardless of whether such other insurance is written as primary, contributory, excess, contingent or otherwise.

30. "Prior firm" is defined in the Policy as any law firm or professional corporation engaged in the private practice of law for which any lawyer listed in the application was a partner, officer, director, stockholder, shareholder, or employee prior to such lawyer joining the Named Insured."

31. Burke, Gerber & Wilen, St. Paul's "insured," is a "prior firm" as defined in the Westport Policy.

32. Pursuant to these clauses, St. Paul has the primary obligation to defend and indemnify Irving Cohn for the claims asserted against him. Despite St. Paul's primary obligations, Westport agreed to pay costs to defend, and has made offers to indemnify Cohn for these claims.

33. Westport is entitled to indemnity from St. Paul for the amounts it has paid to defend and/or indemnify Irving Cohn.

## COUNT II

## CONTRIBUTION

34. Westport realleges paragraphs 1-33 above, as though fully set forth herein as paragraph 34 of this Count II.

35. Westport has provided a defense to the claims asserted against Irving Cohn, despite St. Paul's obligations under its own policy(ies).

36. St. Paul has a primary and/or coextensive obligation to provide a defense and/or indemnity to Irving Cohn for these matters.

37. As an alternative to full indemnification, Westport is entitled to contribution from St. Paul for its portion of defense and/or indemnity for these matters.

WHEREFORE, Westport Insurance Company prays that this Court enter judgment in its favor and against St. Paul for indemnification and/or contribution for the amounts Westport has paid to defend and/or indemnify Irving Cohn in amount not less than $800,000, and that the court further issue an order for any such other relief as this Court deems just and appropriate, including the award of Westport's costs.

TIGHE, COTTRELL & LOGAN, P.A.

By: *[signature]*
Paul Cottrell
Bar No. 06364
First Federal Plaza, Suite 500
P.O. Box 1031
Wilmington, DE 19899
(302) 658-6400
Attorney for Plaintiff

Dated: May 22, 2002

00133